**Civil Rights Complaint to USDOE Office of Civil Rights against
New York City Schools (NYC DOE)
Pursuant to Retaliatory Discrimination under ADAAA & The Rehabilitation Act
For:
-Responsive to my Filing legitimate State Special Education Complaints
-For my asserting rights of students, parents and myself
-Foe my refusal to participate in Substandard Professional & Employment policies which undermine student FAPE rights
& Due to NYC DOE's:
-Systemic and Intentional Interference with providing services and assistance to children with special needs
-Systematic abuse of Employee status, using Misclassification to subvert meeting student IEPs, force conscientious employees to Suffer to Work without compensation, and to deprive Employees of Due Process of Law, and Civil Rights**

**Part I. Introductory Information and Summary on Complaint**

**Background:** I am a 69 year old and highly skilled occupational therapist, with credentials in school psychology and education, and extensive experience in clinical and higher education settings; who has, since September, 2012; been attempting to provide meaningful, high quality services to New York City's children; in public, private and parochial schools; in all Manhattan Districts, and in 3 Bronx Districts; despite the grossly substandard procedures endemic to New York City Schools DOE; and especially to those promulgated by the Office of Related Services; as a Misclassified and abused employee.

My NYC DOE Employee ID is #5710077. Due to NYC DOEs refusal to allow me to work at the beginning of each school year, they have forced me to receive Unemployment Compensation, and the New York State Department of Labor has repeatedly found me to be a Misclassified Employee. NYC DOE has never disputed this.

NYCDOE behavior towards me has been micromanaging and harassing, such as demanding that I pick up additional students, when my caseload is full, and where additional students will make it impossible for my existing students to benefit from services; while also demanding that I perform additional tasks for which there is no way to be compensated, such as in doing screenings, gathering data for Compliance, and assisting in the Medicaid medical prescription process.

While this is an individual Complaint, on my own behalf, once it is in order with OCR I intend to bring forward one or more Class complaints on behalf of the students, citywide, who are being systemically deprived and defrauded of mandated services.

**General Statement on the Retaliatory, Adverse Employment and Discriminatory Actions** against myself; and Actions taken which interfered with Protected Rights, of myself, and of children in special education programs, and their parents:

- Use of public tax funds to wage a 7 year long, causeless and absurd vendetta, while simultaneously depriving over one hundred students of mandated occupational therapy, and terminating therapy services for close to 200 students I had started serving.
- Secret Blacklisting and Abusive use of Investigative Process to Retaliate, Harass, Intimidate and Defame; responsive to Protected Whistleblowing and other Protected Activities; taken on behalf of Special Education Students. The first instance was in 2013, when I was charged, literally, with "Advocating for a student".

- Filing internal complaints, alleging that what are Protected Actions were wrongdoing, such as advocacy for students and filing State Special Education Complaints;
- Filing internal complaints with nothing to support, for the sole purpose of harassment and retaliation;
- Taking severe and precipitous adverse employment and other actions with no basis to support, followed by investigations seeking a basis to support administrative wrongdoing and violation of civil rights and laws.
- Abusive application of NYS FOIL [Freedom on Information Law], not to provide information, but instead to harass and refuse personal personnel file content;
- Use of NYCDOE Special Commissioner on Investigations (SCI) to harass Whistleblowers, whereas it is their duty to protect; while simultaneously refusing to investigate actual wrongdoing by NYCDOE personnel; Commissioner's refusal to respond to any FOIL requests, including even dates complaints received;
- Use of NYCDOE Office of Special Investigations (OSI), not to investigate and correct real wrongdoing, but instead to justify administrative wrongdoing; while simultaneously refusing to investigate actual wrongdoing by NYCDOE personnel.

***Note**: I have been intentionally denied knowledge of and access about actions against myself, resulting in large discrepancies, of over many years, between the dates given on when facts were revealed; versus when the actions occurred. This is further and substantively harmful retaliatory action in and of itself. Time limits can be subject to Equitable tolling when, as in this case, a person is intentionally deprived of knowledge of facts.*

***At this time, I continue to be deprived of the documents and facts pertaining to many actions of wrongdoing against me.***

### Part II. Filing State Special Education Complaints

This Complainant has successfully filed State Special Education Complaints, to the New York State Department of Education, Special Education Quality Assurance (NYSED SEQA), which investigated, and which were followed by significant Corrective Action Plans (CAP); with no personal gain, due to occupational therapists not being compensated for so assisting students and parents.

**Formal State Special Education Complaints made to the New York State Education Department:          [NYSED SEQA]**

| Date Filed | Date Validated / Decision & CAPs Issued |
|---|---|
| **Years 2014-2015** | |
| August 11, 2014 | October 9, 2014 |
| October 22, 2014 | December 17, 2014 |
| October 31, 2014 | December 30, 2014 |
| January 16, 2015 | March 16, 2015 |
| **Year 2019** | |
| March 19, 2019 | May 17, 2019 |
| July 11, 2019 | September 9, 2019 |

This history alone, having successfully submit and received validation, on six State Special Education Complaints; establishes assumed "causal" relationships with subsequent NYCDOE actions.

That has not been the limit of my advocacy and petitioning on behalf of special education students, their parents, Medicaid Compliance, for program & professional integrity, such as stopping the use of assessments which are invalid; for correcting the intentional falsification of student records, which is pervasive; and for proper supervision so that all occupational therapy services provided are focused and useful.

There has been extensive petitioning across all levels of NYC Schools, including to the current Chancellor and his 2 successors; and beyond, including the New York City Office of the Public Advocate, the Comptroller for New York City, and numerous advocacy groups.

**Part III. Personnel Involved in the listed and other discriminatory frauds:**  [Partial Listing]
Proofs to be provided.
Ilene Altschul, Superintendent, Manhattan District 3
Joseph A. Baranello, Deputy Counsel & Chief Privacy Officer
Samantha Biletsky, Office of General Counsel, Office of Ethics & Conflicts of Interest
Biscogna, Michael – SCI Chief Investigator
Richard S. Carranza, Chancellor (current)
Anastasia Coleman, Commissioner of the Special Commission for Investigations (SCI)
Suzanne Epstein, Director of Non-Compliance, Office of Related Services ORS
Howard Friedman, General Counsel
Toni Gantz, Executive Deputy Counsel, Employment & General Practice
Jaime Kraybill, Esq., Executive Director, Special Education Policy
Alexis Lantzounis, Supervisor of Occupational Therapy, Manhattan District 3
Ilene Lees, Director, Office of Special Investigations OSI
Josh Morgenstern, Esq., Impartial Hearing Order Implementation Unit; Sr. Adviser of Policy and Strategy; Division of Specialized Instruction and Student Support
Christine Novak, OSI Deputy Director
Katherine G. Rodi, Esq., Executive Director, Office of Employee Relations
Suzanne Sanchez, Senior Director, Therapeutic Services
Daniel Schlachet, First Deputy Commissioner, SCI
Amy Schrank, NYC DOE, former Manhattan District 4 & 6 Occupational Therapy Supervisor
Henry Bluestone Smith, Chief of Staff, Office of General Counsel
Michael van Biema, Executive Director, Office of Related Services
Jaclyn Vargas, former OSI Director
Katherine Witzke, Principal, Manhattan Public Elementary School M009, Sarah Anderson School
Darnell Young, Director, Occupational Therapy, former Supervisor Manhattan District 6

**Part IV. Events, Actions, from January to November, 2019**
To assist OCR in understanding the actions complained about, a Timeline is presented. This is followed by the listing of actions and personnel involved.

**Timeline of Recent Events - January to November, 2019**
-On January 25, 2019, I initiated making FOIL requests for documents in my personnel record. In June, 2018, I had been illegally deprived of clearance to work in NYC Schools, obviously in retaliation, but with no knowledge of how it was done or justified. Almost nothing was released until July 12, 2019. It is believed that the current events are directly related to that and other prior events.

-On March 17, 2019, I submit a formal ***State Special Education Complaint and Therapist's Compliance Audit***, on 17 students I formerly treated; in a Manhattan public elementary school, to NYSED, SEQA (New York State Education Department, Special Education Quality Assurance).

My Complaint and Audit showed how students with mandated Occupational Therapy services were being defrauded both quantitatively and qualitatively. NYCDOE ORS (Office of Related Services) had reported that the students' occupational therapy mandates were 68% in compliance. In fact, actual compliance was only 49%. ORS includes certification of sessions which did not happen. None of the IEPs had been implemented, and the services given were generally worthless.

-On Wednesday, March 20, 2019, as required, a copy of the full complaint and attachments was received by the district Superintendent Irene Altschul. The same day, a courtesy copy was received by Chancellor Richard A. Carranza. Copies were also sent to parents.

-On Friday, March 22, 2019, an unknown administrator filed a complaint with SCI, which screened it out on March 26, and passed it down to OSI, failing to give it whistleblower protection. To the current date, I have not seen the complaint against me.

-On Monday, April 1, 2019, an as yet unidentified administrator entered me in the OPI **Blacklist**, as a "Problem Code" in the OPI (Office of Professional Investigations) data base, prior to investigation. No notice was given to me of this extreme and adverse action.

-On April 30, 2019, I received a "Subject Notice" from OSI, requiring me to appear "on or before **April 8,** 2019", over 3 weeks prior to the date I received it. I was instructed that I was not allowed to have an attorney. They continued to press and harass me, while I claimed protected whistleblower status.

-On May 17, 2019, NYSED SEQA issued Decisions, findings, and CAPs (Corrective Action Plans), which validated my original complaint, showing grossly substandard practices in effect, and a directive to train the occupational therapists in how to write behavioral objectives.

-On May 30, 2019, SCI Commissioner Coleman sent a letter denying WB status, citing nonexistent facts, and failing to notice the truth. Her letter claimed that the Friday, March 22, 2019 complaint against me to SCI, from an undisclosed administrator, happened before they received their copy of the State Complaint on March 20, 2019; and could not have been a causal retaliation. She also alleged that I had not complained to a proper authority, such as to the NYC Public Advocate; which I had, in fact, done in a meeting on November 28, 2018, as well as before and afterwards via phone conversations and emails. There were others as well, such as the NYC Comptroller and the City Council.

-On June 27, 2019, Henry Bluestone Smith, the Chief of Staff for NYCDOE General Counsel, sent a letter, with the intent to further perpetrate the falsehoods, and to further harass and intimidate. He scolded me for being such a bother, claimed that they were in full compliance with FOIL law, and said that "my concerns" were already being addressed. He claimed that the SCI had correctly refused to give me whistleblower protection, and blamed me for all the investigations.

-On July 12, 2019, after 6 months of continual petitioning and multiple appeals, under NYS FOIL, I received redacted documents which showed how prior actions taken against me were overtly retaliatory and malicious. These documents also showed the prior seven years of harassment and blacklisting; and that both SCI and OSI failed to actually investigate the substantive and well documented complaints which I had made.

-On September 23, 2019, Henry Bluestone Smith, COO for the Law Department, NYCDOE, sent a second letter. This time he complained about my making so many FOIL requests, therein blaming me for his harassment of myself. He ignored that it is the NYCDOE's failure to provide documents; preceded by outrageously refusing to even explain prior harsh actions; which is the problem. He indicated that I have no credibility due to having been investigated and complained about so much, and that he had filed a complaint against me to the New York City Human Rights Commission (NYCHRC). There is no indication that he followed through on this threat.

- Continued FOIL Failure: To the current date, NYCDOE FOIL continues to refuse to release personnel file documents. Requests from August, 2019, which were already requested over the prior half year; continue to receive no responsive documents. Instead, the time to respond keeps being extended, now to December 13, 2019 and January 13, 2020, 76 and 89 days after the requests were made.

**Part V. Some Events, Actions, from November, 2017 to December, 2018**
**June, 2018 -**
**NYCDOE Criminalizes Helping Students get Services**

**Time Period:** While this time period is clearly outside of the 180 day limitation, the USDOE, Office of Civil Rights, is asked to include it for the following reasons:

1. Actions which occurred in this earlier time period are directly and causally related to the later events, as one continuous process of my Protected actions being severely retaliated against. The prime focus of NYCDOE personnel, including the entire Law Department and the investigatory divisions; are preoccupied with covering up facts and reality. In the mind of NYCDOE personnel, they had to take action against me in 2019 to support and justify their 2018 and earlier actions; as well as to have an explanation, though false; to give to parents who received copies of the March 2019 Special Education Complaint, to the NYSED SEQA letter stating it will investigate, and the robust results of the NYSED SEQA investigation. They felt they had to claim I violated something in order to justify to parents their dismal performance and the results of the real investigation on themselves.

2. Due to the fact that it is the intentional actions of NYCDOE itself which prevented me from learning the actual facts prior to July 12, 2019; and even now they continue to withhold my documents and thus knowledge.

3. NYCDOE has acted against me in order to conceal the true facts of their abysmal services, which includes systemically defrauding students of mandated services. It is clearly in the Public Interest to investigate and fully reveal the actions of NYCDOE.

4. The comparable NYS law is NYS LL 741, Protection of Health Care Provider Whistleblowers, which has a 2 year statute of limitations, and is applicable to NYCDOE and to myself, as an occupational therapist providing services in a school district.

5. It is through examination of the 2017 to 2018 incidents that one clearly sees the retaliatory actions taken at a later date, such as continue refusal to allow for any means to review the 2018 actions against me.

6. Proof of Misclassified Employee Status: The behavior demonstrated in the 2017-2018 school year, for which there is hard documentation, provides proof that NYCDOE agrees that I am an employee. This is seen clearly in the intensive and invasive supervision and continual demands. An actual independent contractor is not subjected to this type of continual direction and additional duties, without renegotiating the underlying contract.

7. NYCDOE FOIL has refused to release documents even for the year 2019, as well as for 2017-2018, and years 2012 to 2017. Those released have been severely redacted, with whole pages missing, for no apparent reason, forcing repeat appeals and new requests.

Example of Continued FOIL Failure: NYS FOIL law allows 25 days from receipt of the request to provide the documents.

To the current date, NYCDOE FOIL continues to refuse to release personnel file documents. Requests from August, 2019, which were already requested over the prior half year; continue to receive no responsive documents. Instead, the time to respond keeps being extended, now to December 13, 2019 and January 13, 2020, 76 and 89 days after the requests were made.

**Protected Informal Complaints to NYSED SEQA in March and May, 2018**
The continual unrealistic demands and harassment substantively interfered with my ability to provide services to my original students, and I wrote letters to NYSED SEQA explaining the problems, and copied it to NYCDOE personnel, on March 27, 2018, and again on May 2, 2018.

**May 6-7, 2018 - Protected Informal Complaint to NYCDOE Compliance Officers**
Letter was written, describing the problems, and that, since the Compliance notice to M009 in April, I was unfairly and unreasonably being demanded to solve the Compliance problems, including insufficient staffing of the school, that year and previously. They referred me to the Occupational Therapy Supervisor, who did not respond.

**Events & Descriptions:**
On October 30, 2017, Having left the OT position open since the beginning of the school year, the Office of Related Services finally posts the notice seeking an occupational therapist to provide services at M009, sending out a "blast" email to all therapists on the register, stating:

> *03M009 – We are in urgent need of an Occupational Therapy*

They had waited until the NYCDOE could not supply a full employee status therapist, and then went through multiple corporate vendors, instead of opening it to the register in August. This directly caused a loss of 10+ weeks of services for the students, some more, over a quarter of the school year. This is standard procedure. It results in large numbers of student having a loss of services. The students were thus owed Compensatory Services time to make up.

I was working under the RSA system – Related Services Agreements, which are 2 page contracts between the therapist, NYC Schools and the parent, to serve an individual and identified student. The parent is empowered to make decisions about personnel, location and time. RSAs are based on the student's finalized IEP mandates for services. While they require substantive documentation work beyond billable treatment time, there is neither a basis to expect that an RSA therapist would take on any additional tasks, nor is there a means to pay for such services. At this school, ORS directed the principal to continually expect and demand that I take on these tasks.

November 13, 2017 – Due to extensive bureaucratic issues, the first date I was able to see any students was 11/13/2017. I picked up 17 students by the end of November, 4 more in December, and another one each in February and May, for a total of 23 students. With a full caseload, there was no way for me to pick up any additional students without it harming the ones I already had. Further, if students were forced into groups, as is the standard NYCDOE practice, I would have additional documentation duties for them, yet no additional payments for even treating the additional students. Thus it would also be a financial loss to pick up students when the caseload was full. Still the demands continued, and I was forced to repeatedly waste time documenting the caseload, even though I had stated I could not and would not take more student. Still the school kept referring students to me, expecting I would pick them up. I had offered to see students in the afterschool block of time, but was not allowed to do so.

On March 15, 2018, I gave the school information to help them follow through on obtaining services for students I cannot pick up, using RSAs. This was a Protected Activity.

The OT Supervisor writes to me to not help, and, in the context of my refusing to pick up more students, which would mean more RSAs; falsely and absurdly accuses me of doing this for personal financial gain:

> *Unless that is why you are getting involved, because you want the RSA?*

The NYCDOE has problems with identifying students who have mandates for occupational therapy. As a result, many more students surfaced over the school year, and I was continually pressed to pick them up, which would be to the detriment of the students I already had. It appears

that as a direct result of my complaining about this in March 2018, to NYSED SEQA, some improvements were made and instructions to principals and therapy supervisors increased.

**Screening students for Occupational Therapy – 11/17/2017 to 2/12/2018**
From November 17, 2017, the week after I started, through the second week in February, 2018, I was continually pressed to screen students and consult with teachers and parents, which would have taken away from starting up and working with my caseload. There was also no way for me to bill for the time, and so would result in an actual loss of money. While I did one, I repeatedly declined, wrote to the OT supervisor for her to locate someone to do them. She repeatedly insisted that they were only "observations".
By the time Louzantis had given the school a new directive on how to have the screenings done, there were at least 3 students left unscreened for 3 months.

**Medicaid Physician Site Visit Saga 11/28/2017 – 12/4/2017**
Starting in my third week at the school, the OT / PT Medicaid Program contacted Principal Witzke & Louzantis to arrange for the physician's visit. He asks the school for an OT or PT to be the contact person for the doctor at the school, and Witzke says it is me, while the full employment status physical therapist is not.
On 12/3/2017 I send a letter detailing the students, as requested, and schedule and location issues, but am unable to stop seeing students to assist. The PT does not leave a student list for the doctor. I have to take time from students to help.

**SESIS Account Not Working, Much of January into early March, 2018**
My SESIS account kept being shut down, making it impossible for me to access student records and IEPs, do reports, document services; or learn about upcoming IEPs and reports needed. As I could not enter the treatment sessions, I would not bill for the as yet not documented services. When I did have access, other professionals had already entered their times, incorrectly, making it virtually impossible for me to accurately enter the data.
No one would tell me what was happening.
Previously, when NYCDOE personnel did not like my questioning problems with student record integrity, they had shut me out of my SESIS account.
There was no electrical outlet in the closet space used for OT, impeding documentation and resulting in no place to teach students to touch type, which was on IEPs.

***Deluge of IEPs - "Triennials" – Do them, but no list of students***
Between March 13 and 27, when there were multiple snow days, 8 students had IEP meetings and needed new IEPs, which also required at least informal re-evaluations, as the existing documentation was useless.
Starting March 20, 2018, I was directed to prepare "Triennials", IEP Three Year reports, but received no advance notice of any of them. In April I learned that a teacher had done a new IEP for a student, and removed the OT services.
I was told that there was a list of students and dates for them, but the School Psychologist refused to give me one. In May I learned that only DOE therapists are allowed to do them, by ORC policy.

**April, 2018 - NYCDOE Compliance Officer Seeks Information – I am recruited.**
Compliance wrote to Witzke, seeking explanations about 5 student mandates which were not being met. She had no idea how to even do a SESIS search, nor her own school, to figure it out. I agreed to do it for her, and do, but she used this as a reason to start up again on forcing me to pick up more students.

**May 1-4, 2018 - Harassment to pick up more students – NYSED SEQA Letter**

Witzke incorrectly ordered me to see students according to their RSAs, instead of their IEPs. I told Witzke that a number of students had RSAs with group of 8. She did not believe me, and I sent her a copy of the 4 I located.

She wanted me to group more students to make it possible to pick up more, but that was contrary to the IEPs, or the students were known to become disruptive if not seen individually, or to otherwise not benefit. To prove this I had to make a detailed chart on the entire caseload, with details and notes. These activities took me away from providing services, were not billable, and caused a loss of billable time.

**June, 2018 – NYCDOE Criminalizes Helping Students get Services**
**Adverse Blacklisting Action, then Investigation; Investigation yielded nothing, but Blacklisting remained.**

In May and June, 2018, I assisted parents and teachers in enabling the students to access their compensatory services time. A major concern was that for students who had needs for intensive sensory motor work, the school did not have a therapy gym or the required equipment, making the treatment impossible in the school. One parent knew of a therapy gym in the neighborhood, and we arranged for the student to attend during the school year. I ended up suggesting that program for many of the students. As asked, I provided the principal with a list of students and their first session dates to determine eligibility for compensatory services.

As the school year came to a close, I felt badly for these students, knowing that if we had more time together, had I been able to spend more time on services and less on administration, I could have brought them much further along. At the same time, even on the last Friday of the school year, there was no DOE therapist lined up for September. RSAs were not being released to parents for the summer, families had already made summer travel plans, local OT clinics were going to fill up, and the students would not be able to use the time owed them.

To assist the families and students, I wrote a letter to the parents, explaining their options, and telling them how much time their child's compensatory services time was, based on the start of services in November. The OT Therapy gym clinic was described, and I offered to return over the summer if requested, to go to their homes under RSAs. They were put in student backpacks on Thursday, June 21 and on Friday, June 22. Over the month of June I had over 30 emails with parents, assisting them in future planning and services, and copied the Manhattan District 3 Superintendent, Ilene Altschul, seeking assistance for the parents who were getting no help from anyone other than myself.

The last day of school was Wednesday, June 27. On Monday and Tuesday, June 25 and 26, there were some very strange interactions with a few teachers, who suddenly questioned me about what I was doing. Others were awkward, whereas before cordial and productive.

When I returned home on Tuesday, there was an email from Suzanne Epstein, Director of Compliance for the Office of Related Services. It stated that my clearance to work with NYC Schools had been removed. I was shut out of SESIS, as well as my Vendor Portal account. Both of these caused extremely significant problems.

Ms. Epstein refused to give me any information whatsoever about why she took this huge action. I was referred to the OPI, the Office of Professional Investigations, which could not tell me anything, but referred me to SCI, Special Commissioner for Investigation. The only thing they said was that a complaint was made, but had not screened it yet. When they did, it was screened out, but no one told me about it, nor that it had been passed on to OSI, which also screened it out. The Union could not help, partially due to being discombobulated from learning of the decision which stopped requiring school personnel being required to be union members.

**What Happened? What I learned as of July 12, 2019.**

After 6 months of continual FOIL requests and appeals (being forced to do this was additional retaliatory harassment), I finally received many of the documents pertaining to June, 2018, and a few from prior years; None from 2019.

It turns out that second grade teacher Cullen at M009, known for having extremely serious psychological anger problems; stole the letters to parents out of the backpacks of some of my 4 second grade students. She was known to intimidate and yell at students who were merely manifesting symptoms of their disabilities. When I picked up students from her classroom, I had to take treatment time to help them calm down. In her angry and paranoid mind, she believed that the letters were proof that I was illegally billing parents for services. She gave them to Principal Witzke, and, having been primed by Epstein and Lantzounis, they decided that I was charging parents for DOE services, and that this indicated that I was posing a serious risk to the students. There is no explanation why Witzke did not point out to Cullen that she had just stolen Protected documents from the students, and order them returned to the parents.

This is what I learned from the Roster Blacklist:

**Roster Blacklist:**

I became an active and eligible employee as of 10/29/2010, when I first submit security clearance information. My *EmployeeEmail* was listed as the msn.com one I continue to use.

**On September 30, 2014,** I was blacklisted on the DOE Roster, declared "Ineligible (as of 09/30/2014)" across 5 of the 6 categories. That was when the first State Special Education Complaint had been in the works, and NYCDOE realized that they would be forced to finally agree to mediation for a high school student with severe learning disabilities. To date, NYCDOE has refused to release to me any of the documents underlying this.

This explains why all those placement interviews I went to, was almost hired on the spot, and then denied work with no explanation. It might also relate to how my SESIS was shut down at that time, and I could not have my private school students' RSAs approved for months, directly causing them to not be served over that time. No explanation was ever given.

**On Friday, June 22, 2018**, the last possible line for services was declared "**Ineligible (as of 6/22/2018)**", before I had been told anything.

**Katherine Rodi's Problem Code Blacklist:**

On Friday, June 22, at 4:13 p.m., Witzke, as apparently instructed by Suzanne Epstein, made a complaint to SCI, alleging that I had tried to get money from parents, via the June 21 Letter to Parents, and then sent that intake number to the Related Services administrators – van Biema, Sanchez, Young, Gold, Morgenstern, Kraybill and also Katherine Rodi of OPI, who maintains what might be the highest level blacklist, referred to as Problem Coding.

On June 22, 2018, at 4:18 p.m., Rodi, on learning only that a complaint had been filed, and not even screened in or out, let alone actually investigated; sent back that I had been officially Problem Coded, i.e. Blacklisted, giving Epstein a green light to go ahead and have my clearance removed, to terminate all my students from my SESIS caseload, block my access to my SESIS in its entirety, and cancel my ability to use the Vendor Portal for electronic billing, all unknown to me. This precipitated many exceedingly severe and harmful problems, including my inability to complete reports and bill for services. Due to the combined systems problems, it made it impossible for me to reconcile my data with that on line, making it impossible for me to bill, even by the cumbersome way I was instructed to in July.

As of 6/28/2018, SCI had screened out the complaint about the letter. As of 8/20/2018 OSI screened it out, after with Witzke and Epstein continuing to claim that the letter was bad. Epstein falsely alleged that I was soliciting work and it was not permitted, both being false. She claimed

that I violated the 132 page Corporate Vendor Contract, whereas that does not pertain to me. I was not informed of any of these actions.

Epstein, seeing that the first SCI complaint was found unworthy, and seeing that OSI was likely to also conclude No Further Action; made 4 additional complaints, on July 13, 16, 18 and 25, 2018. She kept throwing out things, hoping something would stick. She even submit my complaint to ORS on the Vendor Portal having been corrupted and dysfunctional, making reconciliation impossible. She submit my time cards as evidence of "discrepancies" in my billing, failing to note that I was not required to use the punch time cards, but did so on my own to maintain an accurate record. She had ignored my complaints about inaccuracies in the system, which I only learned in June, 2019, were due to the standard operating procedures which directly defraud students of mandated services, which I identified in my March 2019 Therapist's Audit, but had not realized the extent of the problem at that time.

Part of these documents showed that Epstein had instructed personnel to tell me nothing about what happened.

**November, 2018 -**

**November 29, 2018, Witzke**, having been so ordered, refused to provide me a reference, therein making it impossible for me to obtain employment elsewhere.

I was forcibly retired, early.

## Part VI. Specific Discriminatory Actions taken in Retaliation,

**Discriminatory & Retaliatory Action #1**

By Letter dated May 30, 2019, and from June 22, 2018 through to the current date – **Anastasia Coleman, Commissioner of the Special Commission for Investigations (SCI),** and Daniel Schlachet, First Deputy Commissioner; Richard A. Carranza, Chancellor, General Counsel Howard Friedman; who knew of and failed to act and/or who actively participated; **defrauded me of Protected Whistleblower status; defrauded me of employment rights; caused me to be further subjected to abusive harassment; supported the illegal use of Blacklisting and discriminatory** removal of clearance; violated the SCI Missions to protect and encourage Whistleblowers, and to investigate fraud and enforce Medicaid Compliance; and by so doing violated Federal laws, including the ADAAA and the Rehab. Act, as well as NYCHRL, and New York State Labor Law (NYSLL) 741, Protection of Health Care Whistleblowers.

Other parties who participated in these frauds: Baranello, Biscogna, Epstein, Gantz, Kraybill, Ilene Lees, Director, OSI, Morgenstern, Novak, Rodi, Sanchez, Bluestone Smith, van Biema, Vargas, Young.

**Discriminatory & Retaliatory Action #2**

**March 22, 2019 through the current date; and from June 22, 2018 to the current date. Defrauding me of my Clearance to work in June 2018, absent any Due Process whatsoever, including refusing to disclose the basis for the severe action; Discriminatory and harassing complaints being allowed against my future work; in 2019 by: Ilene Lees, OSI Director, Christine Novak, OSI Deputy Director, Anastasia Coleman, Commissioner for the Special Commissioner of Investigations, Katherine Rodi, Director of OPI, Michael van Biema, Director of the Office of Related Services, Suzanne Epstein,** Director of Compliance and Contract Management for Office of Related Services, **and** Richard S. Carranza, Chancellor, who knew of and failed to act and/or who actively participated in these failures to act according to Federal, State and Local laws pertaining to protection of Whistleblowers, and the ADAAA, the

Rehabilitation Act, Noninterference with assistance for children with disabilities; in orchestration with Baranello, Gantz, Kraybill, Morgenstern, Sanchez.

**And in 2018**, also included: **Alexis Lantzounis, District 3 OT Supervisor,** former OSI Director Jaclyn Vargas, **Kate Witzke, M009 principal, Ms. Cullen, Grade 2 Teacher,** who stole notices sent home to parents, to help them obtain services for their children, from student backpacks; therein directly obstructing service provision; and for which they covered up their actions.

**Discriminatory & Retaliatory Action #3**
**By a letter dated June 27, 2019, and one on September 23, 2019 - Henry Bluestone Smith, Chief of Staff, Office of General Counsel; General Counsel Howard Friedman;** Richard S. Carranza, Chancellor, who knew of and failed to act and/or who actively participated; **participated in the orchestration of discriminatory frauds, to defraud me of protected Whistleblower status and protection; to defraud me of reinstatement of my illegally removed clearance to work; to defraud me of documents needed to take action; in composing and sending letters of false and fraudulent statements and claims; intended to intimidate and harass.**
Additional parties who participated in these frauds: Baranello, Anastasia Coleman, Commissioner, Epstein, Friedman, Gantz, Kraybill, Ilene Lees, Director, OSI, Morgenstern, Novak, Rodi, Sanchez, Schlachet,  van Biema

**Discriminatory & Retaliatory Action #4**
**January, 2019 through the current date – Joseph A. Baranello, Deputy Counsel & Chief Privacy Officer, who supervises the FOIL Unit; Participated in and enabled the frauds, by refusing to timely and completely provide my personnel and other documents requested, starting January 25, 2019, and continuing to the current date;** and which were done with the encouragement and support of General Counsel Howard Friedman, and by OSI's Lees, Nowak, and Office of Related Services Director Michael Van Biema and Director of Non-Compliance, Suzanne Epstein; Richard S. Carranza, Chancellor, who knew of and failed to act and/or who actively participated; in the furtherance of their discriminatory and retaliatory schemes.
Additional Parties who participated in these frauds: Anastasia Coleman, Commissioner, Epstein, Gantz, Kraybill, Lees, Morgenstern, Novak, Rodi, Sanchez, Schlachet, van Biema

**Discriminatory & Retaliatory Action #5**
**Starting in September, 2012, to the current date -  Adverse Employment Actions taken in a campaign of secret Blacklisting and Discriminatory Retaliation to a Conscientious and highly skilled, older Employee; Paired with pervasive substandard working Conditions; Employee Misclassification, Employee Suffered to Work, uncompensated; No Due Process, Intentional Employee Impoverishment & forced Early Retirement. Severe Monetary Impacts of Discrimination**

## NYCDOE Employee ID # 5710077
**Shortened School Year, November, 2017 – June 26, 2018, Net Income $19,103.00.**
Proof of Misclassified Employee Status: The behavior demonstrated in the 2017-2018 school year, for which there is hard documentation, provides proof that NYCDOE agrees that I am an employee. This is seen clearly in the intensive and invasive supervision and continual demands. An actual independent contractor is not subjected to this type of continual direction and additional duties, without renegotiating the underlying contract.
Parties involved: All those listed above, as well as others, unknown due to NYCDOE failure to provide documents: Joseph A. Baranello, Deputy Counsel & Chief Privacy Officer; Anastasia

Coleman, Commissioner of the Special Commission for Investigations (SCI); Suzanne Epstein, Director of Non-Compliance, Office of Related Services ORS; Howard Friedman, General Counsel; Ilene Lees, OSI Director; Christine Novak, OSI Deputy Director; Katherine Rodi, Executive Director, Office of Employee Relations; Daniel Schlachet, First Deputy Commissioner, SCI; Michael van Biema, Director, Office of Related Services ORS; Jaclyn Vargas, former OSI Director; Henry Bluestone Smith, Chief of Staff, Office of General Counsel; and Richard S. Carranza, Chancellor, who knew of and failed to act and/or who actively participated.

Additional Parties who participated in the frauds, discrimination and harassment: Gantz, Kraybill, Lees, Morgenstern, Novak, Sanchez, Young