EEOC Inquiry Number: 520-2019-06057     Lise Rubin, M.Ed., OTR/L    EEOC.Charges.10.19

# EEOC Charges

**The following is the initial Inquiry in the EEOC Charge procedure:**
**From the EEOC Inquiry:**

> Adverse Actions:
> Use of Investigative Process to Retaliate, Harass, Intimidate and Defame; Responsive to Protected Whistleblowing on behalf of Special Education Students.
> On 3/17/2019, I submit a formal State Special Education Complaint and Therapist's Compliance Audit, to NYSED, SEQA (New York State Education Department, Special Education Quality Assurance). On May 17, 2019, NYSED SEQA issued Decisions, findings, and CAPs (Corrective Action Plans), which validated my original complaint. NYCDOE immediately retaliated by filing a secret complaint against me. On 4/30/2019 OSI ordered me to appear, and told me I could not have an attorney.
> SCI refused to validate my Protected Whistleblower status, violating the SCI official mission, to protect Whistleblowers.

*Note*: *As I have been intentionally denied knowledge of and access about actions against me, there are large discrepancies, of over many years, between the dates given on when facts were revealed; versus when the actions occurred. Time limits can be subject to Equitable tolling when, as in this case, a person is intentionally deprived of knowledge of facts.*

This Complainant has successfully filed State Special Education Complaints, to the New York State Department of Education, Special Education Quality Assurance (NYSED SEQA), which investigated, and which were followed by significant Corrective Action Plans (CAP); with no personal gain, due to occupational therapists not being compensated for so assisting students and parents.

**Formal State Special Education Complaints made to the New York State Education Department:                 [NYSED SEQA]**
Date Filed                           Date Validated / Decision & CAPs Issued
**Years  2014-2015**
    August 11, 2014              October 9, 2014
    October 22, 2014            December 17, 2014
    October 31, 2014            December 30, 2014
    January 16, 2015            March 16, 2015
**Year   2019**
    March 19, 2019              May 17, 2019
    July 11, 2019                 September 9, 2019

This history alone, having successfully submit and received validation, on six State Special Education Complaints; establishes assumed "causal" relationships with subsequent NYCDOE actions.
That has not been the limit of my advocacy and petitioning on behalf of special education students, their parents, Medicaid Compliance, for program & professional integrity, such as stopping the use of assessments which are invalid; for correcting the intentional falsification of student records, which is pervasive; and for proper supervision so that all occupational therapy services provided are focused and useful.

There has been extensive petitioning across all levels of NYC Schools, including to the current Chancellor and his 2 successors; and beyond, including the New York City Office of the Public Advocate, the Comptroller for New York City, and numerous advocacy groups.

**Basic Facts: NYC's Special Education Students are Being Systematically Defrauded of Services. NYC DOE Retaliates, instead of Correction.**

On March 20, 2019, copies of my ***State Special Education Complaint and Therapist's Compliance Audit,*** were received by NYCDOE, via both Manhattan District 3 Superintendent Irene Altschul, and Chancellor Richard A. Carranza.

My Audit showed how SESIS, the data management system, has been rigged to include a student's missed sessions in the total count of sessions which supposedly happened. This directly defrauds students of the mandated sessions. For example, if a therapist evaluates a new student, she bills that time to the mandated time of students already in her caseload. If she or the student were out, she still certifies that the services were completed, on the student's calendar. This lost time is never made up.

Over the months of September through December, 2018, my prior students were owed 420 mandated occupational therapy sessions, but only actually received 204. The compliance data from SESIS gave a total of 284 sessions. Actual compliance was only 49%; SESIS reported 68%. A 68% compliance rate is bad enough, but these highly inflated figures are also used in reporting compliance, giving the false impression that NYCDOE is providing 39% more services then is true. This does not include that the services provided were not individualized, were grossly substandard and close to useless. This has been validated by NYSED SEQA Decisions and CAPs.

On Friday, March 22, a retaliatory Complaint was made to SCI, #2019-2436, which SCI speedily screened out, and passed it on to OSI, on Tuesday, March 26, where it was entered as OSI 19-04068x. I was not informed of either action, and only knew about it when I received an April 30, 2019 Notice and demand that I appear by OSI. However, the letter, postmarked April 30, 2019, required that I appear ***on or before 4-8-19.*** , over 3 weeks prior to the Notice.

In the interim, on April 1, 2019, with no investigation, no Notice and no Due Process whatsoever, I was again secretly blacklisted. I only learned this after July 12, 2019, when a FOIL request from January 25, 2019, was finally partially complied with.

To this date, I do not know who made the complaint to SCI, nor have I seen it, nor the information which OSI holds, but have been told it is about the State Complaint. It took weeks of effort to be given any information on the accusation, and all I was told was it was about the State Complaint. Having been denied a reference on November 29, 2018, by Principal Kate Witzke, of M 009, secondary to prior severe discriminatory harassment, I was not able to get work elsewhere. Witzke stated that she is only permitted to confirm that I worked there. She did not tell me who gave this order to her.

In prior years, due to NYCDOE's discriminatory practices, which cause students the loss of mandated services and keep occupational therapists unemployed; work was not available until November.

I started to make FOIL requests to NYC DOE on January 25, 2019, and to be discriminatorily denied employment personnel records to this day. See below for recent incidents.

### Section II. Responses to Item 5.

**Incident / Issue A. The following is the initial Inquiry in the EEOC Charge procedure:**
**From the EEOC Inquiry:**

> Adverse Actions:
> Use of Investigative Process to Retaliate, Harass, Intimidate and Defame; Responsive to Protected Whistleblowing on behalf of Special Education Students.
> On 3/17/2019, I submit a formal State Special Education Complaint and Therapist's Compliance Audit, to NYSED, SEQA (New York State Education Department, Special Education Quality Assurance). On May 17, 2019, NYSED SEQA issued Decisions, findings, and CAPs (Corrective Action Plans), which validated my original complaint. NYCDOE immediately retaliated by filing a secret complaint against me. On 4/30/2019 OSI ordered me to appear, and told me I could not have an attorney.
> SCI refused to validate my Protected Whistleblower status, violating the SCI official mission, to protect Whistleblowers.

Since writing the Inquiry, I have found that on April 1, 2019, 2 weeks after the NYCDOE received their copies of the NYSED SEQA Special Education Complaint, I was again "Problem coded", on of the NYCDOE codes for Blacklisting; absent any investigative or Due process. NYCDOE has refused to release to me the underlying record of that major event. I have been deprived of, not only substantive information about false accusations made against me; but even the dates of events, such as when complaints were made to SCI and OSI, or when, with NFA Memos (No Further Action Memorandum), SCI screened it out and passed it down to OSI.

It was not until July 12, 2019, when I received the results of a FOIL appeal on a prior FOIL appeal, that I learned that a Complaint was made against me to SCI on 3/22/2019; and immediately screened out, NFA Memo, as not being actionable or criminal, on 3/26/2019. OSI received it on that date, 3/26/2019. A new Problem Code was entered on 4/1/2019, absent any investigation. NYCDOE continues to withhold all information about this from me, such as who made the complaint, and with whom it was shared.

A month later, on April 30, 2019, when OSI began to demand my appearance, Ilene Lees, Director of OSI, working in tandem with Christina Nowak, insisted that the investigation and its outcome, as well as other investigations, such as those pertaining to my complaints of wrong doing; would be handled in a fair and unbiased manner. This has not happened. On the contrary.

This is only one of many retaliatory and discriminatory incidents over a seven year history.

**Incident / Issue B. By Letter dated May 30, 2019, and from June 22, 2018 through to the current date – Anastasia Coleman, Commissioner of the Special Commission for Investigations (SCI),** and Daniel Schlachet, First Deputy Commissioner; Richard A. Carranza, Chancellor, who knew of and failed to act and/or who actively participated; **defrauded me of Protected Whistleblower status; defrauded me of employment rights; supported the illegal use of Blacklisting and discriminatory** removal of clearance; violated the SCI Missions to protect and encourage Whistleblowers, and to investigate fraud and enforce Medicaid Compliance; and by so doing violated EEOC laws, including those related to ADA, the Rehab. Act, as well as NYCHRL, NYSLL 741, Protection of Health Care Whistleblowers.

Other parties who participated in these frauds: Baranello, Biscogna, Epstein, Friedman, Gantz, Kraybill, Ilene Lees, Director, OSI, Morgenstern, Novak, Rodi, Sanchez, Bluestone Smith,  van Biema, Vargas, Young

EEOC Inquiry Number: 520-2019-06057    Lise Rubin, M.Ed., OTR/L    EEOC.Charges.10.19

On May 30, 2019, Anastasia Coleman, Commissioner of the Special Commission for Investigations (SCI); harassed and discriminated against me for advocacy for special education students, including my making formal State Special Education Complaints to the New York State Education Department, Special Education Quality Assurance. She directly defrauded me of the protective benefits of Whistle Blower Status, and refused to assist in rectifying prior harm caused by retaliatory false accusations.

Further, she has received administrators' complaints which are clearly retaliation against whistleblowing, and also direct interference with Protected Rights; and thus open violations of State, Federal and Local laws, yet she continued the frauds, passing them on to OSI, instead of ending the harassment and taking investigatory and enforcement actions against the perpetrating administrators. This should have been applied to each of the complaints against me, yet Commissioner Coleman preferred to personally violate the Federal, State and Local laws. The prior SCI Commissioner behaved similarly.

Commissioner Coleman did this both personally and directly, and also through a letter from her First Deputy Commissioner, Daniel Schlacet, who dishonestly made up facts which are not based in reality, to support the premade adverse decision. This discriminatory letter intended to harass, intimidate and silence. He did not even use the correct dates for items he included. When provided with corrections, he refused to act.

At the same time, Commissioner Coleman refused to even log in my complaints related to the State Complaints, and prior discrimination against myself, accompanied by substantive supporting data. Instead she logged in and numbered a specific request for assistance in re-instatement, as I have been directed to do by the Office of Professional Investigation. In so doing, Commissioner Coleman violated her missions to protect whistleblowers, to uncover fraud, and to enforce Medicaid Compliance. Instead she became an active participant in numerous coverups.

**Instead of Protection, Retaliatory Harassment from SCI – May 30, 2019**

On May 30, 2019, apparently to clear any impediments to my being further harassed, the Special Commissioner of Investigation, Anastasia Coleman, wrongfully refused to grant me Protected Whistle Blower status. She did this by email letter dated May 30, 2019, through her First Deputy Commissioner, Daniel Schlachet, who appears to have made up his own facts, while ignoring the truth. He did not even get basic dates correct.

He incorrectly summarized:

> In summary, your complaint of wrongdoing to NYSED did not trigger the City Statutes as: 1) NYSED is not a designated agency; 2) the actions you claimed were retaliatory took place prior to your report of wrongdoing; and 3) the actions you claimed were retaliatory were not the direct result of your report. Therefore, the Statutes are not the appropriate vehicle for your request for relief. If you have further questions, feel free to respond in kind.

There was no response to my response to him, providing the actual facts.

He ignored these facts:

1. The events which the Commissioner cites in #2 are not the ones to which I have referred. Instead, there is a direct temporal, causal and retaliatory relationship between NYCDOE's receipt of the State Complaint having been received on 3/20/2019, and, in under 2 days, on 3/22/2019, the NYCDOE filing a complaint against me; and directly because of the State Complaint having been submit. Thus the Commissioner's #2 is incorrect.
2. **In fact, I had presented the material to "designated" agencies. Repeatedly. As well to NYCDOE.**
   While NYSED is not a "designated agency" in regards the NYCHRL, Commissioner Coleman is ignoring the 7 years prior history, which includes documentation of most of the

4

> State Complaint information having been "complained about" previously and directly to NYCDOE, up to the current and two past Chancellors, allowed designees, as well as to City Counselors, and the law department and even SCI itself.
>
> Neither Commissioner Coleman, Mr. Schlachet, nor anyone from NYCDOE spoke with me, or solicited further information, contrary to how the various complainants against me have been treated, nor how I have been treated as a complainant, a further indication of discrimination.

The Commissioner pretended to not have knowledge of my having presented the State Complaint material to "designated agencies"; to include a meeting with the New York Office of the Public Advocate on 12/4/2018, and communications with the New York City Comptroller, such as on 12/19/2018, both allowed "designees", as well as to the PEP – Panel for Educational Policy, possibly an allowed "designee", on 12/14/2018. The NYC Comptroller has received my prior audits, including 8/31/2014, entitled: ***A Therapist's Audit Results: DOE's Medicaid Failure is a Symptom of Systemic DOE Failure.***

This does not include the petitioning letters directly to the Office of Related Services, including to Director Michael van Biema, Compliance Director Epstein, and others. The Commissioner's #2 is without facts or merits.

Therefore, the 3/22/2019 complaint by as yet unidentified persons, was the linear and direct result of NYCDOE learning of the Complaint to NYSED. Thus Item 3) is false.

And, Therefore, the Commissioner's decision to not allow for Whistle Blower Protection cannot have been correct, but is itself, along with the Deputy Commissioner's letter, further discriminatory harassment, retaliation and intimidation.

**Results:** This sequence of events, of NYCDOE receiving the State Complaint, which is a Protected Action on my part, on March 20; and their filing a formal complaint with SCI 2 days later, on Friday, March 22, 2019, causes a presumption that the 3/22/2019 complaint to SCI was a directly causally related and prohibited retaliation. And it was.

At the same time, SCI and OSI refused to even log in and enter a bonafide complaint I made about falsified records and on students openly defrauded of legally mandated services. This provides further proof of the discriminatory nature of the complaint against myself.

The May 30 letter from Schlachet of SCI constituted further Adverse Employment Action, and was further retaliatory interference, discrimination, harassment and intimidation for my engaging in Protected Activities. His failed justification of denial of protected Whistle Blower status was used to justify further harm, by reference, as seen in a June letter from the NYC Law Department.

On June 27, 2019, responsive to my petitions for redress on the failure to grant Whistle Blower status; for complaints on FOIL failures, and other harm; I received a harassing letter from Henry Bluestone Smith, Chief of Staff, Office of General Counsel. This letter was an attempt at establishing a defensible record, relying not on truth or facts, but according to NYCDOE lore.

Regardless of if I was given WhistleBlower Protection under NYC HRL, my actions were obviously protected actions under Federal and State Law, including NYS LL 741, Protection of Health Care Whistleblowers. Commissioner Coleman refused to recognize the existence of these laws, and her duty to enforce them. Therein she herself and her deputy commissioner violated all 3 levels of law: Local, State and Federal, in their discriminatory fraud against myself.

**Systemic Discriminatory Retaliation from June, 2018, as well as before; continues to manifest**

Multiple secretive, adverse investigatory and employment actions, still on going, have been part of a systemic retaliation to, and in interference with, my advocacy for students with special needs; to my refusal to participate in administrative schemes to defraud special education students of

special education services; and of my continuous efforts to be a positive Change Agent. Instead, Commissioner Coleman actively participated in further organizational coverup of fraud, of my having been illegally defrauded of my security clearance, and thus my employment; on June 22, 2018, by Suzanne Epstein, Director of Compliance for the Office of Related Services; without my ever being given a reason, allowing for no due process, therein forcing me to be unemployed. The underlying facts have partially been revealed over the past few months, due to my persistent efforts in making FOIL requests.

Commissioner Coleman's actions and failures to act, are violations of ADA, The Rehabilitation Act, the New York City Human Rights Law, NYSLL 741, Health Care Whistleblowers Protection Act; as well as two of the central missions of SCI: To protect whistleblowers, and to investigate fraud and wrong-doing.

Further, she and the prior SCI Commissioners have failed to protect whistleblowers and myself previously, despite my having appealed to them. For example, in 2013, I was accused of "Advocating for a student". That, of course, is a federally protected action, but after SCI screened it out, the complaint was allowed to move on to OSI. SCI should have stopped it in its entirety, as in the current issue. To date, NYCDOE has refused to release any documents underlying this matter. Instead that and a following retaliatory complaint were used to blacklist me, with no notice or knowledge of it; and at this time are referenced by NYCDOE as a basis for further harm. As a direct result of the Commissioner's failures, I have been subjected to continued harassment, intimidation, discrimination and unemployment.

**Incident / Issue C. March 26, 2019 through the current date, and from June 28, 2018 to the current date. Defrauding me of my Clearance to work in June 2018; Discriminatory and harassing Complaints being allowed against my future work; by Ilene Lees, OSI Director and Christine Novak, Deputy Director, in 2019**; as well as former OSI Director Jaclyn Vargas in July, 2018; Richard S. Carranza, Chancellor, who knew of and failed to act and/or who actively participated in these failures to act according to Federal, State and Local laws pertaining to protection of Whistleblowers, and EEOC / ADA / Rehabilitation Act, Noninterference with assistance for children with disabilities; in orchestration with Suzanne Epstein, Director, Compliance & Contract Management, Office of Related Services, Friedman, van Biema; and Kate Witzke, Principal, Sarah Anderson School, Manhattan PS 9, or 03M009; and Ms. Cullen, a Grade 2 teacher at PS 9, who stole notices sent home to parents, to help them obtain services for their children, from student backpacks; therein directly obstructing service provision; and for which they covered up their actions.

Additional Parties who participated in these frauds: Baranello, Anastasia Coleman, Commissioner, Gantz, Kraybill, Morgenstern, Rodi, Sanchez, Bluestone Smith

A large portion of the facts about the behavior of Epstein, Witzke, Cullen and the others, was not known to me until July 12, 2019. Some were partially revealed in documents from April and May, 2019. Much information continues to be withheld.

On receiving the screened out Complaint from SCI, on June 28, 2018, Lees and Novak had a duty to end the harassment and interference with parental and child rights. While they also decided No Further Action, they failed to discipline or direct Epstein, Witzke and Cullen, who persisted. They had a duty to investigate, and reverse, the discriminatory and retaliatory removal of my clearance, but failed to do so. They failed to ever allow any Due Process whatsoever.

On June 22, 2018, simultaneous to her having instructed Witzke to file the meritless SCI complaint on 6/22/2018; Epstein blacklisted, or "problem coded", me, with no discussion, either prior to her

6

action, or at any time afterwards. She precipitously removed my clearance to work, terminated my caseload of students in general and in SESIS, and shut down my Vendor Portal account. This was a breach of the RSA contracts and of student rights. It violated numerous NYCDOE policies, including the process for bringing forward problems with vendors.

Without access to SESIS, I could not complete year end reports, nor perform the reconciliation of student data prior to billing. These actions made it impossible for me complete documentation and to bill for services provided, further harassing me. To the extend it was possible, without the Vendor Portal access which Epstein shut down; a tremendous amount of additional work would be required to submit any billings, on top of the already redundant procedures routinely required of "Independent Providers", and the additional ones foist on "Independent Providers".

In one of Epstein's 5 Complaints to SCI / OSI in June to July 2018, she ignored that I had voluntarily used the punch in and out time clock at the school. This showed my honesty, as I wanted the time to be accurately clocked. Instead Epstein made a vague reference to some things not being correct, whereas I had provided documentation of the problems in a lack of functionality of the Vendor Portal.

The removal of clearance, with no warning, no discussion and Due Process; was an unheard of illegal and unjust punishment, not even applied to vendors found to have commit fraud or beaten and otherwise abused children. There was no Due Process allowed. It was discriminatory harassment.

Epstein merely sent me a notice stating that my clearance to work had been removed. In her Complaints to SCI and OSI she repeatedly admitted that she refused to tell me why she took the action, and complained – literally – that I sought why she did this, and she cited personnel who refused to tell me anything as acting admirably.

In the copy of the 6/22/2018 email in which I was Problem Coded, I only received a version with the names and data on July 12, 2019; Epstein had copied the Problem Code to personnel who had previously harassed me and my students over the years 2012 to 2016, and for whom there was no reason to send them a Problem Code notice. It was also only on July 12, 2019, that I saw that Epstein had instructed NYCDOE personnel to refuse to tell me anything about why my clearance was removed. I was only instructed to contact OPI, which in turn only instructed me to contact SCI, and that they, and only they, could reverse the clearance removal. SCI refused to cooperate and give a process, as did OSI.

It was also only on July 12, 2019, that I saw that Epstein had claimed that I violated a 138 page vendor contract, whereas that contract only applies to large corporate vendors, and not to independent providers. All of her other claims were false, slanderous and defamatory. There is no truth whatsoever that what I did was at all wrong. Instead it was Protected Activity, which laws she violated.

In fact, the actions which she claimed worthy of precipitous removal of clearance were affirmative directions from Carmit Gall, of the Committee on Special Education, CSE, in an email sent out on May 16, 2018, ***OT in the Summer,*** soliciting therapists to work over the summer, and directly instructing us that we can see our students over the summer:

> **Independent providers can take new cases in the summer. Providers may continue to service students with which they are currently working….** DOE employees cannot accept new summer jobs.

If my notice to parents was worthy of summary firing, then why has Carmit Gall, whose advice was much more extreme, not been fired?

A copy of this memo was sent out on May 8, 2018, to Howard Friedman, Joseph Baranello, Toni Gantz, to OSI and others; and sent again at later dates to more of the persons involved in the discriminatory harassment, to no avail.

On June 28, 2018, SCI quickly screened out and issued a No Further Action Memorandum on the June 22, 2018 Complaint which had been orchestrated by Suzanne Epstein, Director, Compliance & Contract Management, Office of Related Services; initially submit by Kate Witzke, Principal, Sarah Anderson School, Manhattan PS 9, or 03M009; and precipitated by a Grade 2 teacher at PS 9, Ms. Cullen, who had stolen notices to parents from student backpacks.

Despite Epstein's making false statements to support the false accusations, Ms. Lees and Ms. Novak should have known that the complaint pertained to a Protected Activity, known that there were Federal, State and Local Laws prohibiting retaliation; and should have screened it out, and disciplined Epstein.

As that initial 6/22/2018 complaint to SCI and then OSI failed to gain investigatory traction, Epstein made four additional complaints, entered at OSI on 7/13/2018, 7/16/2018, 7/18/2018, and 7/25/2018, hoping that one would stick. None did. All 4 were speedily screened out by SCI, within days, on 7/17/2018, 7/18/2018, 7/19/2018, and 7/26/2018. They stated that I had not solicited nor received payment from parents.

All were also quickly screened out by OSI on 7/19/2018 (2 of them), 7/26/2018 and 7/27/2018, with one of them being referred back to Epstein for further action if correct.

**Additional Background History / Facts:**

Ms. Cullen is /was a general education teacher teaming in ICT (integrated) classrooms, and is widely known for yelling at and otherwise intimidating students, staff, parents and others; to the extent that the school's special education teachers in Integrated Classrooms refused to team with her. As a result, she was teamed with a new special education, who did not have the regulatory required experience with students designated as "Autistic". Why the principal accepted her as credible is not known, but significant harm was caused to many students.

There was a pattern to parents with students in the ICT in Grade One leaving the school prior to grade 2, in order to avoid Ms. Cullen.

Ms. Cullen's anger and incompetence was extreme. She has been furious at students who are merely manifesting the symptoms of their diagnosed disorders, severely humiliating them in class. She has abusively yelled at students who were, in fact, doing what she told them to do. When pulling these students out for occupational therapy services, I often had to spend much of our treatment time helping them cope with her outbursts. On the last day of school in June, 2018, one of my students from her classroom showed me a picture she made of herself and Ms. Cullen, with Ms. Cullen appearing as a fearsome giant, demanding that the student "BEHAVE", where the student's picture of herself was tiny.

I had attempted to report Cullen for abuse, but learned that the ordinary channels do not cover NYC Schools, and that, instead, one had to complaint to SCI and OSI, which would be futile.

**November, 2017 – Starting at M009.** Due to NYCDOE's problematic policies, the students did not have OT until I was finally allowed to provide services, in mid-November, 2017. I had to work double, over half without pay, in order to rectify the problems created by the prior NYCDOE full employee status therapists, who failed to leave up to date evaluations, or useful annual goals and objectives. These pervasive and systemic problems have been documented in my Special Education State Complaints from March and July, 2019, and validated by the May 17, 2019 and September 9, 2019 NYSED SEQA Decisions and Corrective Action Plans.

I had obtained Civil Service status, and had seniority at the school. I had put in large amounts of unpaid time to bring the school's OT program up to minimal standards, and students had

benefitted greatly from my services. I should have been able to stay on the next year, and on June 26, 2018, not knowing about the action against me, gave a Notice and Complaint to the administration and union.

In May and June, 2018, as the year was coming to an end, and the parents were told they would receive compensatory time for the 2.5+ months of missed services; as was my duty, I tried to help them obtain appropriate and useful services. No one else was helping them, and there was even no new OT lined up for the coming school year. I have dozens of emails to and from parents trying to help them obtain services, often with local OT Clinics.

Once more, unpaid, I prepared a notice to parents, and included the amount of time owed their child, and on June 22, 2018, put them in the student's backpacks. These notices, to help parents obtain mandated services for their special education designated children, were Protected Communications. To "Interfere" with them would be a violation of FERPA, ADA and the Rehab Act. However, the Office of Related Services had been gunning for me for months, harassing me to do unconscionable things, which would harm my existing students, and it was chosen to ignore the law, and to instead retaliate. I had been severely maltreated over the months at M009, and treated as a subservient employee with no independent opinions at all.

Ms. Cullen saw me put the notices in one or more backpacks, and when I had left the room she removed them. She decided that there was something wrong with my providing parents with information on obtaining services, and brought at least one to Principal Witzke. Neither she nor Witzke thought about the fact that she had literally stolen the notices from the students and their parents. In fact, no one in NYCDOE at any time noticed this act of theft, and failed to take action against Cullen.

Instead, as Witzke had apparently been directed to act by Epstein, the letter was submit to SCI as though a crime had been commit. It was falsely alleged that I was illicitly trying to "solicit" and charge parents for services.

**March 26, 2019 – New State Complaint, OSI Continues Severe, Illegal Discriminatory Retaliation**

On March 26, 2019, Lees and Novak received the SCI rejected Complaint pertaining to the NYSED SEQA complaint; and perpetrated further retaliatory, discriminatory harassment. They should have ended it there and then. Instead they continued the retaliatory harassment.

They did this despite my having repeatedly written to them, such as on May 19, 2019, and set forth the legal basis for them to cease and desist. I cited Lapaix v. City of New York, No. 13 Civ. 07306 (LGS)., in which Lees was a defendant. They continued to ignore State, Federal and NYCHRL.

They have not allowed me to see the new complaint. It is my belief that, their having illegally removed my clearance, they have accused me of having provided NYSED SEQA data on my students. The correct solution is for them to re-instate the illegally removed clearance, and to restore my employment.

**Incident / Issue D. By a letter dated June 27, 2019, and to the current date - Henry Bluestone Smith, Chief of Staff, Office of General Counsel & General Counsel Howard Friedman;** Richard S. Carranza, Chancellor, who knew of and failed to act and/or who actively participated; **participated in the orchestration of discriminatory frauds, to defraud me of protected Whistleblower status and protection; to defraud me of reinstatement of my illegally removed clearance to work; in composing and sending a letter of false and fraudulent statements and claims; intended to intimidate and harass.**

Additional parties who participated in these frauds: Baranello, Anastasia Coleman, Commissioner, Epstein, Friedman, Gantz, Kraybill, Ilene Lees, Director, OSI, Morgenstern, Novak, Rodi, Sanchez, Schlachet, van Biema

On June 27, 2019, responsive to my petitions for redress on the failure to grant Whistle Blower status, FOIL failures, and refusal to address the illegally removed clearance; I received a harassing letter from Henry Bluestone Smith, Chief of Staff, Office of General Counsel. This letter was an attempt at establishing a defensible record, relying not on truth or facts, but according to NYCDOE lore.

Mr. White repeatedly scolded me for making State Complaints, asserting to me that my concerns were being addressed in that manner, and that I should stop further efforts.

Mr. White scolded me for questioning the SCI Commissioner's findings, while never responding to the facts I raised. He incorrectly claimed that DOE had fully complied with FOIL, and listed two FOIL requests. He inappropriately gave me "permission" to make additional ones, a veiled threat that they, also, would be to no avail. However, at that time, due to their refusal to comply with prior ones, there were 3 open and unfulfilled FOIL requests, as well as active FOIL appeals.

**September 30, 2014 – Why was I blacklisted?**

While I have been denied access to documents from my record prior to 2018, in his 6/27/2019 letter, Mr. White feigned to inform me as to how I happened to have been blacklisted on the Roster, effective 9/30/2014. He claimed it was due to a vendor's action which makes no sense, and he failed to provide anything to support it. As I wrote to him, he should have released the underlying documents instead of making up a story.

There were meaningful events on and around 9/30/2014; and which generate the assumption of discriminatory and retaliatory action:

1.. That was the date on which a high school /middle school principal, Burnedette Drysdale, M293, received notice from OSI that I had made a complaint about her personnel having falsified a student record the year before, in May, 2013, and that it had not been corrected. The IEP Coordinator, Webster, under a year into her special education teacher certification, whereas I had been certified in special education and school psychology 40 years before; had removed my OT report from the Hispanic student's record, on top of repeated violations of his IDEA procedural rights, such as removing occupational therapy services without parental agreement and using incorrect forms, as well as lying that a parent agreed when they did not. On the same date, a school psychologist removed the student's planned Assistive Technology Evaluation. An intern school psychologist had entered data as though she had done a Stanford Binet Scales, but had not, causing the severely learning disabled student to not be re-assessed and correctly evaluated for over 6 years.

This school, apparently urged on by the Office of Related Services; had retaliated against myself, a student and his mother over the years 2012 to 2015.

2.. That date is also when the first State Special Education Complaint to NYSED SEQA, at M293, for refusal to respond to parental requests for mediation and much more; was under investigation, and it looked like NYCDOE might be forced to mediate. They were, and the NYCDOE attorney refused to turn in his notes, which was mandatory.

3.. That is also the date on which, the student, his mother and I, being severely harassed by false accusations to investigators, I wrote to General Counsel, as well as the Chief Deputy Counsel and the First Deputy Counsel, as well as to SCI and OSI:

   *To: General Counsel: Please call off the dogs. This investigation is illegal.*

I attached copies from the Ehrlich case, as well as the ACT decisions. Ehrlich showed that NYCDOE was discriminating against a parent who mildly advocated for her own child, and that it

violated ADA and The Rehabilitation Act. The ACT decisions showed that the NYCDOE SOP of refusing to allow therapists to evaluate their own students; but which they waived for all employees; had no basis and should stop. The existing policy is contrary to Best Practices in therapy, and adversely impacts the quality of care provided.

4.. It is also shortly after the date when I made formal complaints to NYS Department of Labor, protesting employee Misclassification by NYC Schools and its Related Services Vendors. NYSDOL found that therapists working for vendors, and also Independent Providers, are, in fact, Misclassified Employees, and eligible for Unemployment Compensation. However, it is not likely that NYSDOL had contacted NYCDOE by that date.

Therefore, the Blacklisting on 9/30/2014, about which I only learned in May, 2019, and still have been denied any underlying documentation; was pertaining to my protected activities of advocacy; and a violation of Federal, State and Local law.

In his June 27, 2019 letter, Mr. White falsely represented that Commissioner Coleman had investigated the June 22, 2018 action against me, whereas SCI screened it out with a No Further Action letter in August, 2018. In response to my FOIL request to SCI, a letter dated April 1, 2019, was written to me by Regina Gluzmanova, the Public Information Officer & FOIL Officer, Special Commission for Investigation. She wrote:

> *There is no referral letter regarding your name. Indeed, SCI has never investigated you.*

Despite this fact, Epstein had repeatedly claimed to others that I was "under investigation", whereas I was "merely" under harassment by herself. Still, Epstein is not investigated and punished.

**Incident / Issue E. January, 2019 through the current date – Joseph A. Baranello, Deputy Counsel & Chief Privacy Officer, who supervises the FOIL Unit; Participated in and enabled the frauds, by refusing to timely and completely provide documents requested, starting January 25, 2019;** and which were done with the encouragement and support of General Counsel Howard Friedman, and by OSI's Lees, Nowak, and Office of Related Services Director Michael Van Biema and Director of Non-Compliance, Suzanne Epstein; Richard S. Carranza, Chancellor, who knew of and failed to act and/or who actively participated; in the furtherance of their discriminatory and retaliatory schemes.

Additional Parties who participated in these frauds: Anastasia Coleman, Commissioner, Epstein, Gantz, Kraybill, Lees, Morgenstern, Novak, Rodi, Sanchez, Schlachet, van Biema

There has been a systemic and continuous refusal to allow access to information pertaining to June 22, 2018 Problem Listing / Blacklisting, as well of prior similar incidents and illicit investigations.

New York State FOIL allows 5 days to acknowledge a request, and 20 more days to responsively produce the documents.

The first investigation was launched against me in June 2013. The first I learned about it was when the parent of the student I was trying to help called me, hysterical. She told me that an administrator, Rodriguez, who had refused to assist us in correcting the severe problems, had finally returned a call, but had harassed and intimidated her, yelling at her, and saying that I was under investigation. The mother was correctly worried that I was suffering loss of employment due to trying to help her and her son.

I still have not been allowed to see any of the underlying information, including even the date the complaint was made. I first received Notice late in the summer of 2014, most likely in response to NYCDOE first learning about the ongoing State Complaints; and making a retaliation with a secret

EEOC Inquiry Number: 520-2019-06057    Lise Rubin, M.Ed., OTR/L    EEOC.Charges.10.19

new SCI complaint, which seems to have jogged the system, my then having 2 accusations against me.

After persistent questioning of the OSI personnel involved, I had been told the charges against me, the greatest one being, literally, Advocating for a Student. This was a protected action, and the complaint against me was a violation of law. The other items were vague, and could not have happened, such as the false accusation that I had been in the school when I should not have. This intimidation caused me to be fearful about entering the school building, even when the principal, Drysdale, told me to come to the school to discuss my complaint. I was realistically fearful that it would lead to additional and more serious false complaints. I was also too afraid to attend any meetings there, including for the student.

Having been denied a professional reference in November, 2018, and unable to obtain work as a result, I sought the underlying documents starting on January 25, 2019. The responsive FOIL letters extended the timelines repeatedly, in violation of FOIL, and then failed to produce the documents sought. Ones provided were of such poor quality that they were useless. It was not until July 12, 2019, after over half a year of continuous and diligent petitions and requests, that I had received enough of the records to piece together how the actual June 22, 2018 fraud of my being illegally deprived of my clearance, played out.

This intentional deprivation of necessary employment records continues to the current date, forcing me to repeatedly seek the same documents, generally to no avail.

For example, I made a new request on Wednesday, August 14, 2019, for documents never produced. On Wednesday August 21, 2019, I received an acknowledgement letter, informing me that I will receive the response on September 19, 2019.

On September 19, 2019, I received a letter, with no responsive records, and was told that they will provide a response on November 7, 2019, 51 days after the acknowledgement, and 31 days more than legally allowed. According to NYS FOIL, this is a Constructive Denial. I do not expect any new documents.

Perhaps this latest refusal to provide personnel documents is responsive to the September 9, 2019 letter from NYSED SEQA, having validated my July 9, 2019 complaint on three students and their three schools, who failed to receive services, and provided a new and significant Corrective Action Plan.

**Incident / Issue F: September 24, 2012, Initial Instance of Illegal Retaliation & Discrimination - September 2012 Reversal of Hiring Decision. Party: Amy Schrank, NYC DOE, Manhattan District 4 & 6 Occupational Therapy Supervisor**; Sanctioned and/or directed by Michael van Biema, Director, Related Services, or other high level administrators.

Additional Parties involved in that fraud, and others in the following year: Sanchez, Young

On 9/24/2012, NYCDOE reversed their hiring decision, for full time OT Employee status. Amy Shrank, then Occupational Therapy Supervisor for Manhattan Districts 4 & 6, had told me that if I work for NYC DOE, I will have to do things with which I disagree. She had been negatively concerned with my high degree of personal and professional integrity.

She stated that she did not like that I criticized their "wonderful vendors". I had talked about the unethical behavior of the corporate vendors, including that they violated the DOE contract requirements, as I saw with a vendor through whom I attempted to work for NYC DOE. They demanded that I sign a contract with items directly forbidden by the NYCDOE RFP. They had unconscionable clauses, such as demanding that I agree to not receive Unemployment Compensation. That was what caused me to apply to work directly for NYCDOE. Schrank later

12

told me I could not work as an employee for NYC DOE, and instructed me to go work with a corporate vendor.

She did not like that I expressed the importance of Medicaid compliance, and how easy it is to comply with Medicaid if one meets minimal professional standards. This made it obvious that I would not go along with the illicit manner in which the ORS actually operates, as shown in the NYSED SEQA Decisions and CAPs.

This adverse employment decision was a harassing and discriminatory retaliation for my asserting the rights of students to receive meaningful and valuable services; for my intent to obey Medicaid Compliance and other correct behavior. Since that time, I have learned that Schrank's views are the policy for ORS.

As a result of Schrank's continued malice, in that school year, 2012-2013, I was only able to pick up 5 students, who were at 2 schools. Then Shrank targeted me and the students, forcing one out of occupational therapy services by use of illegal and fraudulent procedures, in violation of IDEA and of OS own policies; and over the ninth grade Hispanic student's protests.

**Incident / Issue G: Past and Now Ongoing Discriminatory Retaliation, Prolonged and Pervasive Substandard Working Conditions; Employee Misclassification = No Due Process, Impoverishment & Forced Early Retirement. Monetary Impacts of Discrimination**
## NYCDOE Employee ID # 5710077
School Year 2017-2018 Net Income $19,103.00.

Parties involved: Joseph A. Baranello, Deputy Counsel & Chief Privacy Officer; Anastasia Coleman, Commissioner of the Special Commission for Investigations (SCI); Suzanne Epstein, Director of Non-Compliance, Office of Related Services ORS; Howard Friedman, General Counsel; Ilene Lees, OSI Director ; Christine Novak, OSI Deputy Director; Katherine Rodi, Executive Director, Office of Employee Relations; Daniel Schlachet, First Deputy Commissioner, SCI; Michael van Biema, Director, Office of Related Services ORS; Jaclyn Vargas, former OSI Director; Henry Bluestone Smith, Chief of Staff, Office of General Counsel; and Richard S. Carranza, Chancellor, who knew of and failed to act and/or who actively participated.

Additional Parties who participated in the frauds, discrimination and harassment: Gantz, Kraybill, Lees, Morgenstern, Novak, Sanchez, Young

On completing the initial security clearance process, I was given an Employee number, ID# 5710077.

Once on a work site, I have been given the same duties as any DOE full employee status therapist; indeed they have forced these duties upon me. I have and am a Misclassified Employee, deprived of the rights and Due Process of both Employees and Contract Vendors.

While Shrank, Epstein, Lees, Nowak, Coleman, Rodi, Schlachet, Friedman, Bluestone-White, and others, have made and/or entertained false allegations about my improperly benefitting, in fact, their policies and practices have directly impoverished me, and finally forced me, unprepared, into premature retirement at age 68, with no retirement plan or benefits other than social security, which was also lower due to NYCDOE actions.

Under the RSA system (Related Services Agreement), my sole contractual and professional duty was to provide services to the students who I had picked up and executed RSAs – Related Services Agreements. As RSAs are signed by parents, and not the school, the therapist's duty to the parents, and thus the student, is increased. The parent is literally your boss. This was completely ignored by school and ORS personnel, who demanded that I perform as a single full employee status therapist, expected to fulfill all occupational therapy needs at a given school. This ignored that the original staffing, of only one half time equivalency therapist to this school,

with 6 ICT (Integrated) Classrooms, K – 5, was grossly insufficient. Indeed, I had been pressed to also pick up a second such school, it having previously been covered by the same problematic therapist who had covered M009.

Over the school year 2017-2018 the harassment intensified. There were impossible demands, and attempts to micromanage my work, showing that I was not viewed as a contractual nonemployee, nor an "Independent Provider".

Their continual demands that I perform professionally substandard and unconscionable acts, and forced to work without pay for unbillable services; or mandatory services but for which they did not allow a means of billing (Suffered to Work); make it impossible for them to claim that I have, in fact, been allowed by them to minimally behave as independent. They have defied the RSA (Related Services Agreement) contracts repeatedly, and treated me as a maltreated Employee at Will. This actual status resulted in my inability to join or be protected by the union; while I was also denied the Due Process protections enforced for the corporate vendors. When Union OTs received added compensation for SESIS time, I did not. Where they are given funds for training, I was not. Where they were given fringe benefits, I was not.

**Substandard Working Conditions at NYCDOE Schools & M009 – Loss of Labor Rights**

In the school year 2017 – 2018, I was working under RSAs, but only allowed to start in the middle of November, 2017. The students lost 10 weeks of services, and I lost 10 weeks of income. This also resulted in less time to compensate for the losses incurred due to the additional and non-compensated work which was required.

As the year went on, it was obvious that there was behind the scenes harassment of myself being orchestrated. I was continually coerced and pressured to undertake additional uncompensated tasks, such as: screening students not in my caseload; preparing responses to central administration on students with unmet OT mandates, where policies stated that additional resources should be sought to serve them, yet this was ignored, instead myself harassed; providing organizational supports and assistance to the medical personnel who came to make the medical prescriptions required by Medicaid; and cleaning up the atrocious state of student records and useless IEPs. Due to the poor quality of records, documentation and the overall lack of an operational occupational therapy program on my start, I had to literally build the OT service program up from scratch.

For each student picked up, there are substantive and time consuming administrative and clinical tasks. The first is to have fully processed the RSAs, requiring working with the school, parents, and ORS or District management. Due to the school's FAX equipment failures, along with the lack of an electrical outlet in what was the OT/PT Closet, much time was wasted waiting for a turn at a FAX. This was only resolved when I brought the documents home, scanned and sent them as email attachments, for completion of the processing.

Each student's record needed to be reviewed, including looking for medical issues which might pose problems, or which required being addressed. Parents and teachers needed to be contacted and solicited as to their views and priorities. At the same time, as soon as I appeared I was pressed to immediately pick up the entire caseload. To have done so as demanded would have been reckless as well as misrepresentation. To have a "first session" does not mean that services have actually started. The well-known fact is that we might be pressed to quickly "pick up" all students, but then many cannot be seen and services actually started time for many weeks and longer.

I was continuously set upon to pick up additional students. The initial caseload projections were grossly incorrect, with students listed who were not at the school, as well as many there but never noticed to have occupational therapy mandates. I had to review all these to determine if they did

have OT mandates, and to let administration know that they needed additional resources. At no time was there an option or offer to provide another therapist for the school and caseload. At no time was another therapist provided or added. [Note: Principal Witzke misrepresented this fact to SCI and OSI.] Contrary to their written policy, they continued to demand that I pick up more students, well past the number of students and sessions required of full employment status therapists.

As an Independent Provider, my first refusal should have been accepted and respected. Further, for each additional student, I would have to review records and spend hours on administrative tasks to pick them up, followed by additional hours to develop a viable IEP; and that the forced grouping of any new students would result in zero additional income. From both a business and clinical perspective, these demands were unreasonable. They were demanding that I perform additional duties, with literally no additional compensation, and to be accompanied by diminished clinical results.

Very often there is literally no designated treatment space for occupational therapy services in NYC Schools. The UFT Therapists refused to sign a new contract in January, 2019, partially due to this. I have repeatedly been asked to work in a school, and dedicated space promised, but it never happens. At the same time, there is coercion to pick up large caseloads and log in that they are seen according to the mandates, even though it is impossible to do so and actually provide therapy with no space in which to see students, to store materials, records, to access computers or have a copy machine waiting to copy student work samples, a necessity in tracking handwriting development.

I had been promised a treatment space at M009, but it turned out to only be a closet with filthy shelves filled with dirty and old materials, and shared with the physical therapist. The shelves and the old supplies were highly distracting to the students, typical of those seen by OTs, with poor impulse control and high distractibility. There was no electrical outlet, and no computer set up, making it impossible to access my SESIS while in the room, forcing me to do all entry at home. The lack of an electrical outlet in the closet also resulted in service delivery problems, as many students needed typing instruction, but there usually was no quiet place to provide it.

My own SESIS account was inoperable for most of January and February, 2018, seriously handicapping my ability to perform necessary tasks, and delaying my ability to reconcile and bill. I was never given an explanation about how it happened, or why it took over 2 months to resolve. It is unethical to provide occupational therapy without reviewing the record, without a treatment plan and measurable behavioral objectives. Without current and valid evaluations on record, each student must be re-evaluated and an individualized program developed. The 2.5 month delay in starting services, on top of the 2 summer months, is considered by Medicaid and IDEA and a gap in services, and requires reevaluation.

With a 25 student caseload, this meant that I had to do 25 re-evaluations and write ups with new IEPs, without pay. Each one takes 4 to 5 hours to do, resulting in 100 or more hours of unbillable services at M009. Over the prior years, due to my being forced to continually seek out new caseloads, I have Suffered to Work, performing over 400 non-compensated re-assessments.

There was no computer or even an electrical outlet to use in the Closet / OT / PT room, so the analysis and write up had to be done at home, resulting in a comparable loss of direct services and doubling the income loss. Alternatively, the work had to be done evenings and week ends.

At the same time, I was harassed to produce IEPs at a fast rate, including the Three Year, or Triannual, evaluations. The usual OT IEPs are grossly substandard, which often results in services being close to worthless and a waste of tax funds. In NYC Schools, usually no one actually does re-evaluations for the Three Year Re-evaluations, a violation of IDEA. In this case I

was harassed to complete them, despite my SESIS being down or having been down; while they refused to give me a schedule of them in advance, while telling me that they had one printed out. I had to stay home and miss actual billable sessions to get it down. It turns out that the DOE policy is that only full employee status OTs can do the Triannual re-evaluations, so they should not have even asked me to do them. That they did is further proof that they considered me an employee.

**Monetary Impacts of Discrimination – Average Annual Net Income $10,167.00; Shortened School Year, November, 2017 – June 26, 2018, Net Income $19,103.00.**
The retaliatory harassment, which started on September 24, 2012, continues to the current day. As a result of the prolonged and focused discriminatory harassment, including repeated harassing disruption of work acquired, and blacklisting to prevent my obtaining work; my gross income from seven years of NYCDOE forced underemployment, with NYCDOE generally my only employer; from 2013 through the current date; was only $108,970, for an average annual gross income of $15,577. My gross income, had I not been continuously discriminated against and denied students to serve; would have been at least $80,000 a year, or $70,000 with benefits.
At M009, working from the months November, 2017 through June, 2018, my gross income was $27,655.00. The abrupt and illegal wrongful termination of my clearance, along with shutting down my access both to my SESIS account and causelessly to my Vendor Portal Account; combined with the improper and fraudulent billing practices of others as well as by intent in the SESIS system design; resulted in a few thousand dollars of services which could not be reconciled, and thus I could not bill them.
After the July, 2019, release of documents, seeing Epstein's false complaints from June to August, 2018, it was validated that my further billing in any manner would be speedily weaponized against me. My fear of billing, even if entirely honest and accurate, was well placed.
My net income for the 8 months was only $19,103, with commuting costing $3,387, including parking, tolls and mileage; and well over $1,000 for supplies, for which there was no way to bill.
As a Misclassified Employee, none of my expenses were reimbursed, which cost over $22,000 over the 7 years. Of this, $14,513.00 was the cost of commuting from New Jersey to NYC, as my low income, caused by their discriminatory harassment, made it impossible to maintain a NYC residence. There has been $8,466.00 of out of pocket expenses for supplies for students and office related supplies and expenses. My annual net income was a total of $71,170, for an annual average income of $10,167. The loss of income, combined with the severe harassment, forced delays in my obtaining substantive and necessary medical and dental procedures, which had significant adverse impact on my appearance.

Despite there being a chronic shortage of therapists to fulfill the mandated needs, I was repeatedly forced onto Unemployment Compensation benefits. In the course of that I filed formal Employee Misclassification complaints with the New York State Department of Labor, pertaining to both NYCDOE, which self-insures; as well as to NYCDOE Vendors. Both were found to have misclassified me.
NYCDOE has causelessly refused to allow me to work for them; while also refusing to be a reference for me, making further professional employment impossible; and despite my years of excellent service, often in underserved areas such as the Bronx. Through this, NYCDOE has forced me to retire early, and forced me to start receiving Social Security early, with the loss of rate in the future. Due to their harassment over the prior years, my monthly income, which is solely from Social Security, is $1,423.