Lise Rubin, M.Ed., OTL  520-2019-06057   Complaint against NYCDOE    file: EEOC.Final.C

Civil Rights, Employment, Age Discrimination, Disability Retaliation
Complaint to E.E.O.C.
v.s.
New York City Schools (NYC DOE)
Pursuant to Retaliatory Discrimination under ADAAA & The Rehabilitation Act
& Age Discrimination under the ADEA

**Complaint Summary**

I am a 69 year old Female who works for the above-named entity as an occupational therapist. I allege that the New York City Department of Education (NYCDOE) is violating the ADAAA (Americans with Disabilities Act of 1990) when it fails to provide adequate services to students with disabilities, falsifies records, and interferes with services.

I have raised these concerns to my employer, the NYCDOE, numerous times going back to the year 2012. Due to their failure to correct problems, professional ethics has forced me to file formal State Special Education Complaints.

I also allege that the NYCDOE has retaliated against me by: intensive workplace harassment; interfering with my providing services; demanding free services; using secret blacklists to prevent me from working; causeless investigations; and removing my security clearance for helping parents obtain services.

Based on the information provided, I believe that I was discriminated against in violation of the **Americans with Disabilities Act of 1990, ADAAA, 42 U.S. Code Section 12203. Prohibition against retaliation and coercion.**

The NYCDOE has treated me differently from young therapists, and it has at all times been with adverse and with disparate impact. Based on the information provided, I believe that I was discriminated against in violation of the **Age Discrimination in Employment Act, ADEA.**

**Introductory Information**

I am highly skilled with additional professional credentials in school psychology and education, as well as having extensive experience in clinical and higher education settings.

Since September, 2012, at age 62, I have been attempting to provide meaningful, high quality services to New York City's children; in public, private and parochial schools; in all Manhattan Districts, and in 3 Bronx Districts; despite the grossly substandard procedures endemic to New York City Schools DOE; and especially of those promulgated by the Office of Related Services.

I further allege that the New York City Department of Education has retaliated against me for my filing informal and formal State Special Education Complaints, for complaining about compensation for occupational therapists, about wrongdoing by NYCDOE personnel, such as their falsifying student records and deleting reports, refusing to respond to parental requests for mediation, and special education non-compliance. They interfered with my Due Process and other rights by delaying its responses, and making incomplete responses, to my requests for documents made under the New York State Freedom of Information Law (FOIL), on (a) January 25, 2019; on (b) August 2019; and continuing to at least March 23, 2020.

In March, 2019, having learned that I had filed a large formal State Special Education Complaint, they immediately responsively retaliated, and filed a secret complaint for investigation. This was followed by defrauding me of protected Whistleblower status, and harassment by the top administrators, including Henry Bluestone Smith, Chief of Staff of the Office of General Counsel, General Counsel Howard Friedman, and Anastasia Coleman, Commissioner of the Special

Commission for Investigations (SCI), whose statutory duty is to affirmatively protect whistleblowers such as myself.

They have retaliated against me by: precipitously terminating students on my caseload in 2013, 2018, and many times in the years between, while not having a new therapist ready for service; causelessly deeming me ineligible to provide services, on September 30, 2014, and on June 22, 2018; illegally terminating my Service Agreements with students' parents, and causelessly removing my clearance to work for NYCDOE on June 22, 2018, responsive to my helping parents obtain services for their special education children; and by their refusing to provide me with a letter of reference on November 29, 2018, therein forcing me into long term unemployment. They have also retaliated and harassed me by making dishonest complaints against me, and through the continual abusive use of the investigative process.

The New York City Department of Education's actions against the students violates the ADA and I am in opposition to their practices as I know them to be wrong. Based on the above, and the following information, I believe that I was discriminated against in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S. Code Section 12203. Prohibition against retaliation and coercion.

**Age Discrimination in Employment Act**

Further, as an older professional, I have been discriminated against due to my age and expertise, and treated adversely with Disparate Impact as compared with younger and less experienced therapists, from being denied full employee status in 2012, and thus benefits, such as paid sick time and union membership; to being a Misclassified Employee, and though the targeted retaliation against my attempts to assert my rights to work.

Based on this, and the following information, I believe that I was discriminated against in violation of the **Age Discrimination in Employment Act.**

There has been a significant interplay of retaliation due to age discrimination, protected under the ADEA, and due to advocating for students, protected under ADAA. The details, below, start with the ADAA claims, as they provide context and explain the overall nature of my employment conditions.

Through their actions, the NYCDOE has abused the Public Trust, and acted against the Public Interest, by the use of public tax funds to wage a 7 year long, causeless and absurd vendetta, while causing over one hundred students the loss of mandated occupational therapy, and, over this and prior years, terminating therapy services for close to 200 students I had started serving.

**Discriminatory & Retaliatory Charge Area #1**
**Violation of ADEA, Age Discrimination in Employment Act - From September 24, 2012 through March 23, 2020**
**Age Discrimination and Opposition Retaliation, via Disparate Impact, through use of Worker Misclassification**

In my employment with NYCDOE, NYCDOE has continually discriminated against and subjected me to adverse, disparate and discriminatory working conditions and retaliation for my opposition to their substandard practices, and for my having professional and personal integrity. They have interfered with the IDEA and ADA student and parental rights by harassing me and disrupting my professional work, therein also limiting my income to at or slightly above the poverty level.

In 1974, living in Massachusetts, I became a registered occupational therapist. New York State was one of the first to license OTs, and I received my NYS license as an Occupational Therapist in 1977.

In my most recent posting, at an elementary school in Manhattan in November, 2017; the therapist before me for 4 years was a salaried therapist, and had received her NYSED license in OT in 2003. She started at the school in 2013, when she had been licensed for 10 years. She left the position to have her first child, and was likely in her early 30's. Having not had her own children might be related to her possibly not comprehending the adverse significance of her behavior on the students entrusted to her. They searched to replace her for 2 months into the next school year, leaving students without mandated services. I was not allowed to start until November, yet there was no time whatsoever for program development, or an orderly start up, unlike what happens when a therapist starts at the beginning of the school year.

As I picked up my students, I found that their records indicated that the prior therapist had performed in a grossly substandard manner, had falsified student records, and taken forbidden actions such as generally using the same content for her daily session notes for the entire year, and often the same ones for multiple students. The content was grossly inaccurate, and often not related to the specific student.

The IEPs also had the same words, yet none were objectively measurable. The record indicated that her services were largely worthless, and noncompliant with Medicaid requirements. However, NYCDOE management had no problem with her performance.

The therapist who followed me at this school, as I was not allowed to continue, was a salaried employee. She had been a licensed therapist for only 5 years, becoming licensed in 2012, and was under 30 years of age. She failed to implement any of the IEPs on record, and completely ignored the information or directives from the lengthy and carefully written Annual Progress Reports I had left in the record.

She showed similar substandard professional behavior, including falsifying student records and changing IEPs without parental authorization, both clearly outside of IDEA law. These and other significant problems were documented by NYSED SEQA in May, 2019, which investigated my March 2019 State Complaint. This therapist also provided generally worthless services, and she seems to have been directly instructed by her supervisor to do so, including billing against individual student's treatment time for her supervisory sessions, and for evaluating other students. Further, while NYCDOE refused to investigate that therapist for falsifying student records and providing substandard services, they investigated me for making the State Special Education Complaint.

My behavior, of knowing that NYCDOE SOPs are unethical and harmful, and opposing them, is typical of the older, experienced worker, and of someone who is a parent, and thus less likely to deceive parents about the quality of their children's services. Having taught occupational therapy at the university level, as well as having been a university appointed clinical instructor, I have no doubts as to the minimal acceptable standards for my profession.

I have taught special education at the university level, as well as having supervised special education student teachers in the field, utilizing a competency based training and supervision system which I had largely designed.

**NYCDOE, Sole Employer for Eight Years:** My NYC DOE Employee ID is #5710077. NYC DOE has been my sole employer for these 8 years, with the exception of 2 months, one of which I worked for a NYC DOE vendor company, and one month elsewhere, while I was awaiting NYCDOE to release the RSAs [see below] so that I could return to seeing students in the Bronx or elsewhere, usually in November or December.

Like many occupational therapists, I had put my family's needs ahead of my professional activities and advancement, resulting in my having to extend my professional income producing activities

into my 60's. In 2012 I relocated to NYC to be near family, intending to work full time. In September, 2012, at age 62, in Age Discrimination, and pro-active retaliation for traits of an older professional worker with experience and integrity, NYCDOE retracted their offer of a full time, salaried employee status position, therein depriving me of union protections, Due Process rights, and benefits to include health insurance, sick time, pension, paid professional continuing education, pay for the costs of time spent documenting services and evaluations in SESIS (Special Education Student Information System), and costs of supplies for use with students. They forced me into a 7 to 8 month work year, with no guarantee of future work or continuity in any one setting or school; despite, more recently, my being on the Civil Service listing and having seniority and priority.

In 2012, I was directed to work for one of their Vendors, about which I had complained of their lack of compliance with their NYCDOE contracts and Medicaid rules. I have since learned that NYCDOE, Office of Related Services, is operating almost entirely in noncompliance with basic professional standards. Yet the Director of Compliance for Related Services ignored these massive problems, and instead, over many years, aggressively targeted me for harassment.

**Three Types of NYCDOE Employee: Full Salaried, Vendor & "Independent Provider"**

NYCDOE has three types of employee occupational therapist, all of whom perform virtually the same duties and under similar working conditions.

1. Full Employee status, on salary, following school year calendar, full benefits
2. Vendor Employee – Compensated on a fee for service, per session rate. Generally not considered an employee, with no benefits or protections.
3. "Independent Provider" therapist – Working under the RSA system. When NYCDOE has not assigned a provider for mandated services, RSAs are released. These are Related Services Agreements, for individual students, between NYCDOE, the parents and the therapist. More on this below. Therapists bill per session time for services.

**Vendor Therapists / Independent Contract Therapists**

Vendor therapists and "Independent Therapists" perform virtually the same duties and functions as full salary status employees. The vendor vetting and contracting process assumes that the vendor-provided therapists are employees of the vendors, and are supervised, but this is rarely so, Instead it is rampant Employee Misclassification, with no protections, no benefits and no accountability to minimal professional standards and Medicaid Compliance.

I have attempted to work with vendors, but they demanded that I sign unconscionable agreements. NYCDOE practices make it impossible for vendors to actually offer work, as they can only bid for work assignment if they have a provider name to use for applying. This results in a host of unethical practices, including vendors falsely using therapists' names to apply, and making false promises of work, which they cannot keep. These cumulative practices not only impair employment opportunities, but cause needless delays in providing services, further violating student FAPE, IDEA and ADAAA rights.

I did work under one in November, 2013, but found that they provided no supports, and instead pressed me to keep going to a school, with a broken agreement to provide space, while the school was undergoing extensive construction, making it impossible to provide meaningful services, and with no place to secure student files or my work materials. This was repeated in 2015 in a Bronx District 75 school, when I picked up and started treating a full caseload. When I wrote that I could not provide services without any space to see students, my caseload was terminated – but only for me. The students' central data continued to falsely indicate that they were receiving services. The UFT union has attempted to obtain dedicated work space for therapists, apparently to no avail.

The vendor expected that I would provide services to students whose IEPs were no longer valid, which invalidated the RSA based on it, and I could not bill against it. The documentation from the prior year was so poor that the whole caseload needed re-evaluation and development of meaningful annual goals and objectives, but there was no allowed mechanism for this, due to other NYCDOE backwards policies. My review of my students' prior years showed that therapists might have seen them, but did not perform actual therapy. Instead they played board games and other unfocused and purposeless activities.

They have demanded that I perform additional duties, such as picking up more students, screening students not on my caseload, and coordinating the physician visits for Medicaid compliance, all with no additional compensation.

In March, 2014, due to insufficient income to maintain a NYC apartment, I was forced to move to New Jersey. This discrimination has continued, and worsened, over the years, as they continued to make my work life less productive, putting me on secret blacklists, culminating in removing my clearance to work, violating ADAA by interfering with parental rights to receive a letter from me to assist them in obtaining compensatory services for their children.

This was followed, on November 29, 2018, by a refusal to give me a professional reference, formally forcing me, at age 68, into permanently unemployed status, yet not prepared to retire.

The lack of income in the prior years significantly decreased the amount of social security due me, and being forced to start benefits early further decreased the benefits.

**Failed Workforce Plan forces Unemployment Compensation / Worker Misclassification Complaints to NYS DOL**

NYCDOE has massive manpower shortages of therapists. The refusal to release R.S.A.s until November and December (see below) forced me to seek Unemployment Compensation Benefits, for which NYC self-insures. In September, 2014, I made two formal complaints to the New York Department of Labor on Employee Misclassification of Occupational Therapists, one pertaining to New York City Schools, and the second pertaining to the vendor where I had briefly worked the prior year.

The New York City DOE has not contested my applications for Unemployment Compensation, therein agreeing that I am an employee of misclassified status. The New York State Department of Labor has repeatedly found me to be a Misclassified Employee. The vendor did contest it, and delayed my receiving needed benefits for many months. It eventually gave up contesting it, learning that it was about to be fined for noncompliance.

To the current date, NYCDOE has failed to inform the hundreds of therapists who are, in fact, eligible for Unemployment Compensation Benefits.

Misclassification has caused considerable harm. I have not received any benefits for sick time, professional training, pension, or participation in the union. While union therapists have received additional compensation for SESIS documentation time, I have not. NYCDOE views non-employee status therapists as having no rights. Additional demands are made, with no additional compensation.

**Established NYCDOE & Age Discriminatory Policies and Practices:**

NYCDOE prefers to hire young therapists, fresh out of college, or even to have them start doing their clinical training while in the educational process itself, so as to be able to indoctrinate them into the standard procedures which are grossly substandard, unethical, which undermine the therapeutic relationship, and diminish benefit from the services.

NYCDOE has a policy of refusal to allow anyone other than full salaried employee status therapists to start work at the beginning of each school year, simultaneously preventing tens of thousands of students from receiving mandated services. Having been denied full employee

status, I was also discriminated against by not being allowed to work until at least November of each school year.

Not only does this practice cause massive violations of student ADA rights, but it is a very bad workforce policy. What kind of workers can work for only 7 months a year? And when one starts, the existing student record for occupational therapy is worthless, making each student in need of an evaluation, which NYCDOE policy makes impossible. As a diligent professional, I have thus been forced to Suffer to Work, to reevaluate, albeit informally, without compensation. Older workers such as myself are more likely to be forced to accept adverse working situations, and to also feel ethically bound to known professional standards and laws. Thus, the combined NYCDOE practices have caused me to suffer Age Discrimination in substandard professional work conditions.

**Related Services Agreements – R.S.A.s – Pretend Independent Contractors**

As with any other profession, independent practitioner occupational therapists should be, and usually are, highly experienced and older. They are expected to have professional expertise, and should have grown past needing clinical supervision. They should know enough to be less likely to go along with the unethical and professionally substandard practices of NYCDOE. For example, NYCDOE SOPs require that therapists fraudulently certify sessions which did not occur. No experienced therapist would participate in such a scheme, even if it benefits them.

Therapists working under RSAs perform virtually the same duties and functions as full salary status employees. NYCDOE is generally the sole employer. NYCDOE ORS (Office of Related Services) views independent providers with great disdain, as I saw directly at the one training meeting I was allowed to attend.

Related Services Agreements, or RSAs, are 2 page individual student contracts between the therapist, NYC Schools and the parent, to serve an individual and identified student, based on IEP mandates. The parent is empowered to make decisions about personnel, location and time. RSAs are based on the student's finalized IEP mandates for services. While they require substantive documentation work prior to providing services and also beyond billable treatment time, there is no basis to expect that an RSA therapist would take on any additional tasks, nor is there a means to pay for such services. Yet these demands to Suffer to Work are made.

Providing services under RSAs requires specialized management skills. The receiving therapist must provide extensive administrative processing prior to actually providing services, and this is unpaid. To pick up a full caseload of 24 students is a major task, and someone who is not experienced in this will have chaotic results, and further delays in service delivery.

RSAs are used across the city, but tend to be used in underserved areas, such as the Bronx, and at private and parochial schools, and with middle school and secondary level students.

There are important advantages to the RSA system of service delivery. The most important is that it allows the parent significant control. As NYC Schools rarely have therapy clinics and equipment, if a student needs serious motor work, they need to go out to a private clinic. Most clinics take RSAs. A parent can opt to use the RSA for after school services.

A therapist working under an RSA is directly contractually retained by the parent, who effectively becomes the employer. This results in a very close working relationship, and a therapist who is more likely to stand up for what is best for the student, and less likely to provide substandard services.

**Micromanaging & Harassment = Employee Status, Misclassification**

At the same time, NYCDOE behavior towards me has been micromanaging and harassing, such as repeatedly demanding that I pick up additional students, when my caseload is full, and where additional students will make it impossible for my existing students to benefit from services; while

6

also demanding that I perform additional tasks for which there is no way to be compensated, such as in doing screenings, gathering data for Compliance, and being the primary contact for the Medicaid medical prescription process at schools, even when they have a full salaried physical therapist at that school. I have repeatedly been locked out of my SESIS account and my students' records, further impeding service start-ups, and making Medicaid and ordinary professional compliance impossible. These have impaired my ability to bill for services provided, and made it impossible to reconcile data across the numerous redundant data systems used. Full employee status therapists are not required to make these same entries in multiple sources. Vendor therapists are not required as much documentation as are RSA / contract therapists. These losses of use of SESIS for documentation have occurred when secret adverse actions, such as blacklisting and retaliatory investigations, were being taken against me.

These significant workplace problems directly have adverse impacts on the students, who are being systemically deprived and defrauded of mandated services.

On analysis of the statistical data of the hiring and placement practices of NYCDOE, of its vendors, and of the Registry list of permitted therapists, its changes over time, and the persons discriminated against by false accusations and harassing investigations; this charge will emerge as a citywide problem.

**Discriminatory & Retaliatory Charge Area #2**
**Violation of ADAAA – (Americans with Disabilities Act of 1990, Amended), Equal Opportunity for Individuals with Disabilities Act -** 42 U.S. Code 42  Section 12203. Prohibition against retaliation and coercion, parts (a) Retaliation and (b) Interference, Coercion, or Intimidation. **From September 24, 2012 through March 23, 2020**

The NYCDOE has violated ADAAA, Section 12203, both parts (a) and (b), in unlawful retaliation to, and discrimination against, myself. In this case, it is important to include, and refer directly to, the salient statute, as NYCDOE has affirmatively engaged in all of the prohibited actions, at my expense, and at the expense of my students and their parents. At all times, violation of my rights has reflected a parallel attack on the rights of my students and parents, making each attack on myself also a violation of IDEA and ADAAA Section 12203, Parts (a) and (b). Only a few of the dozens of such prohibited acts are described in this Charge of Discrimination.

> **ADAA – Americans with Disabilities Act of 1990, Amended)**
> **42 U.S. Code 42  Section 12203. Prohibition against retaliation**
> **Part (a) RETALIATION,** states:
> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
> **Part (b) INTERFERENCE, COERCION, OR INTIMIDATION**, states:
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

### Filing State Special Education Complaints

NYCDOE has violated these by retaliatory actions to my filing State Special Education Complaints, and advocating for student and parental rights. It is noteworthy that USDOE OSER has not required that the states post a warning not to violate ADAAA Section 12203 in their state complaint related correspondence.

Over these years, on finding that the NYCDOE refused to address the significant service quality and delivery problems directly presented to it, this Complainant has successfully filed State Special Education Complaints, to the New York State Education Department, Special Education Quality Assurance, which investigated, and which were followed by significant Corrective Action Plans (CAP); with no personal gain, due to occupational therapists not being compensated for so assisting students and parents. Attorneys are compensated for this service.

**Formal State Special Education Complaints made to the New York State Education Department:** **[NYSED SEQA]**

Date Filed                                      Date Validated / Decision & CAPs Issued

**Years 2014-2015**
- August 11, 2014                October 9, 2014
- October 22, 2014               December 17, 2014
- October 31, 2014               December 30, 2014
- January 16, 2015               March 16, 2015

**Year 2019**
- March 19, 2019                 May 17, 2019
- July 11, 2019                  September 9, 2019


This history alone, having successfully submit and received validation, on six State Special Education Complaints; establishes assumed "causal" relationships with subsequent NYCDOE actions.

That has not been the limit of my advocacy and petitioning on behalf of special education students, their parents, Medicaid Compliance, for program & professional integrity, such as for stopping the use of assessments which are invalid; for correcting the intentional falsification of student records, which is pervasive; and for proper supervision so that all occupational therapy services provided are focused and useful.

There has been extensive petitioning across all levels of NYC Schools, including to the current Chancellor and his 2 predecessors; and beyond, including the New York City Office of the Public Advocate, the Comptroller for New York City, and numerous advocacy groups.

**Secret Prohibited Retaliation Responsive to State Complaints:**
Responsive to learning of the first State Complaint, in September, 2014, NYCDOE, Office of Related Services, secretly removed my eligibility to work in NYC Schools, without notifying me. My SESIS documentation system had gone haywire, and an additional Complaint for investigation was made. Students who I was supposed to pick up were delayed for months, with no one telling me why.

I only learned of this cause of loss of eligibility in December, 2019, having finally received some FOIL documents requested in January, 2019, and again in August, 2019.

**Prohibited Retaliatory Response to NYSED SEQA Complaint of March 19, 2019**
-On March 17, 2019, I submit a formal *State Special Education Complaint and Therapist's Compliance Audit*, on 17 students I formerly treated; in a Manhattan public elementary school, to NYSED, SEQA (New York State Education Department, Special Education Quality Assurance). My Complaint and Audit showed how students with mandated Occupational Therapy services were being defrauded both quantitatively and qualitatively. NYCDOE ORS (Office of Related Services) had reported that the students' occupational therapy mandates were 68% in compliance. In fact, actual compliance was only 49%. ORS includes certification of sessions

8

which did not happen. None of the IEPs had been implemented, and the services given were generally worthless.

-On Wednesday, March 20, 2019, as required, a copy of the full complaint and attachments was received by the District Superintendent Irene Altschul. The same day, a courtesy copy was received by Chancellor Richard A. Carranza. Copies were also sent to parents.

-On Friday, March 22, 2019, an unknown administrator filed a complaint with SCI, which screened it out on March 26, and passed it down to OSI, failing to give it the mandatory ADA / whistleblower protection, despite it being required under NYCHRL, as well as NYSLL 741,The Health Care Provider Whistleblower Protection Act.

-On Monday, April 1, 2019, an as yet unidentified administrator entered me in the OPI **Blacklist**, as a "Problem Code" in the OPI (Office of Professional Investigations) data base, prior to investigation. No notice was given to me of this extreme and adverse action. I was later told by Ilene Lees, OSI Director, that, due to the State Complaint investigation, they would not revisit having wrongfully removed my clearance.

-On **April 30,** 2019, I received a "Subject Notice" from OSI, requiring me to appear "on or before **April 8,** 2019", which was over 3 weeks before the date I received it. I was instructed by Director Lees that I was not allowed to have an attorney. Over the following months, they continued to press, harass and coerce me, while I claimed protected whistleblower status.

-On May 17, 2019, NYSED SEQA issued Decisions, findings, and CAPs (Corrective Action Plans), which validated my original complaint, showing grossly substandard practices in effect. NYSED SEQA gave a directive to train the occupational therapists in how to write behavioral objectives, which is a good indication of how substandard the services were.

-On May 30, 2019, SCI Commissioner Coleman sent a letter denying protected Whistle Blower status, having never discussed it with me, and falsifying the underlying facts. Her letter claimed that the Friday, March 22, 2019 complaint against me to SCI, from an undisclosed administrator, happened before they received their copy of the State Complaint, and could not have been a causal retaliation. However, according to USPS, they received it on March 20, 2019. She ignored my corrections. Further, how could someone seek to investigate about something about which they did not know?

Commissioner Coleman also falsely alleged that I had not previously complained to a proper authority, such as to the NYC Public Advocate. In fact, I had done so in a meeting with 2 attorneys in the Office of the Public Advocate, on November 28, 2018, as well as before and afterwards via phone conversations and emails. I had also brought the complaints to the attention of others, such as the NYC Comptroller and the City Council. She ignored my corrections.

-On June 27, 2019, Henry Bluestone Smith, the Chief of Staff for NYCDOE General Counsel, sent a letter, with the intent to further perpetuate the falsehoods, and to further harass, coerce and intimidate. He scolded me for being such a bother, claimed that they were in full compliance with FOIL law, and said that "my concerns" were already being addressed. He claimed that the SCI had correctly refused to give me whistleblower protection, and blamed me for all the retaliatory and threatening investigations. He sent an additional similar letter on September 23, 2019. With both he refused to consider my proofs and factual corrections.

**June 2013 - Formal Investigation initiated due to "Advocating for a Student"**

The NYCDOE makes liberal use of secret blacklisting and an abusive use of the Investigative Process to Retaliate, Harass, Intimidate and Defame; responsive to Protected Whistleblowing and other Protected Activities; taken on behalf of Special Education Students.

This was seen in June 2013, when I was charged and investigated, literally, with "Advocating for a student". At the end of my first year of attempting to provide services to NYC students, I received

9

a call from a Dominican Republic parent, who was horrified by retaliation against me for trying to help her son, in Grade 9, who had very serious yet not diagnosed learning disabilities.

She had received a call from an administrator, to whom we had petitioned for help getting him re-evaluated and provided with appropriate educational services. Instead of offering to assist, the administrator slandered me, and told the parent that I was "Under Investigation". The mother saw through the scam, and told me what happened. NYCDOE ORS had already, in prior retaliation to my advocacy and integrity in adhering to IDEA and Medicaid Compliance requirements, violated IDEA and deprived her son of occupational therapy services. I did not receive Notice from the alleged investigation for a year.

By then he had flunked 2 major subjects, while the school kept saying there was no problem. The complaint against me actually included and emphasized that I had 'advocated for a student". This is the same student for whom I later filed 4 State Special Education Complaints. I did not see it for myself until December, 2019.

The Blacklist for working at NYC Public Schools went into effect on September 30, 2014, without my being told, but seeing the impact from my SESIS account being down, and difficulties processing RSAs for students in private and parochial schools. I repeatedly interviewed at schools, including charter ones, and had thought it went well, only to be rejected with no reason given.

**June, 2018 – NYCDOE Criminalizes Helping Students get Services**

June 22, 2018 - Helpful Letter to Parents, on Compensatory Services, is Criminalized; My Clearance to work was precipitously removed, no explanation allowed. Adverse Blacklisting Action, then Investigation; Investigation screened out Complaint, yielded nothing, but Blacklisting remained.

Due to the lack of services from September to mid-November, 2017, students at this school were owed compensatory services time. The principal had asked me to provide her a list of my students and their date of first session, which I did.

In May and June, 2018, I assisted parents and teachers in enabling the students to access their compensatory services time. A major concern was that for students who had needs for intensive sensory motor work, the school did not have a therapy gym or the required equipment, making the treatment impossible in the school. One parent knew of a therapy gym in the neighborhood, and we arranged for the student to attend during the school year. I suggested that program for many of the students.

On top of phone calls over the month of June, I had over 30 emails with parents, assisting them in future planning and services, and copied the Manhattan District 3  Superintendent, Ilene Altschul, seeking assistance for the parents who were getting no help from anyone other than myself.

As the school year came to a close, I felt badly for these students, knowing that if we had more time together, had I been able to spend more time on services and less on administration, I could have brought them much further along. At the same time, even on the last Friday of the school year, there was no DOE therapist lined up for September. RSAs were not being released to parents for the summer, families had already made summer travel plans, local OT clinics were going to fill up, and the students would not be able to use the time owed them.

To assist the families and students, I wrote a letter to the parents, explaining their options, and telling them how much time their child's compensatory services time was, based on the start of services in November. The OT Therapy gym clinic was described, and I offered to return over the summer if requested, to go to their homes under RSAs.

The helpful letters, protected under ADAAA Section 12203, were put in student backpacks on Thursday, June 21 and on Friday, June 22. Much later I learned that a teacher, known to be abusive to students, had stolen them from the backpacks, and brought them to Principal Witzke. The last day of school was Wednesday, June 27. On Monday and Tuesday, June 25 and 26, there were some very strange interactions with a few teachers, who suddenly questioned me about what I was doing. Others were awkward, whereas before cordial and productive.

When I returned home on Tuesday, there was an email from Suzanne Epstein, Director of Compliance for the Office of Related Services. It stated that my clearance to work with NYC Schools had been removed. I was shut out of SESIS, as well as my Vendor Portal account. Both of these caused extremely significant problems, including financial loss. It was a breach of the RSA contract, which required advance notice prior to termination.

**Katherine Rodi's *Problem Code* Blacklist and Roster Blacklist:**

**On Friday, June 22, 2018**, Katherine Rodi's Roster Blacklist declared me ineligible, before I had been told anything, and prior to any investigation:

"**Ineligible (as of 6/22/2018)**"

On Friday, June 22, at 4:13 p.m., Principal Witzke, as apparently instructed by Suzanne Epstein, Director of Compliance for the Office of Related Services; made a complaint to SCI (Special Commission on Investigation), falsely alleging that I had tried to get money from parents, via the June 21 Letter to Parents, and then sent that intake number to the Related Services administrators – van Biema, Sanchez, Young, Gold, Morgenstern, Kraybill and also Katherine Rodi of OPI, who maintains what might be the highest level blacklist, referred to as Problem Coding.

On June 22, 2018, at 4:18 p.m., Rodi, on learning only that a complaint had been filed, and not even screened in or out, let alone actually investigated; sent back that I had been officially Problem Coded, i.e. Blacklisted, apparently allowing Epstein to justify having my clearance removed, to terminate all my students from my SESIS caseload, block my access to my SESIS in its entirety, and cancel my ability to use the Vendor Portal for electronic billing, all unknown to me. This precipitated many exceedingly severe and harmful problems, including my inability to complete reports and bill for services. Due to the combined systems problems, it made it impossible for me to reconcile my data with that on line, making it impossible for me to bill, even by the cumbersome retaliatory way I was instructed to in July.

As of 6/28/2018, SCI had screened out the complaint about the letter. As of 8/20/2018 OSI screened it out, with Witzke and Epstein continuing to claim that the letter was bad. Epstein falsely alleged that I was soliciting work and it was not permitted, both being false. She fraudulently claimed that I violated the 132 page Corporate Vendor Contract, whereas that contract does not pertain to me. Further, if it did, it required ORS to give advance notice, and to allow for mediation prior to taking adverse action.

Not only did I receive no explanation, but later found proof that Epstein had told personnel to refuse to give me any information. I had contacted the UFT Union, but they were in disarray due to the legal decision against forced membership. As of June 27, 2018, the complaint to SCI had not even been screened, and when it was, it was screened out.

**Forced Permanent Unemployment: On November 29, 2018**, at age 68, by their refusal to give me a professional reference, NYCDOE formally forced me into permanent unemployment.

**Additional Facts on the Part (b) violation of Interference:**

Some of the following facts were only learned of in July, 2019, and some later, due to NYCDOE's refusal to communicate, followed by FOIL denials and intentional delays of up to 6 months and more.

The NYCDOE Investigators, both SCI and OSI, screened out Epstein and Witzke's June 22, 2018 complaint, as requiring No Further Action. Suzanne Epstein, Director of Compliance for the Office of Related Services, instead of stopping and reinstating my clearance, launched a campaign lasting over 2 months, of throwing vague complaints at SCI and OSI, hoping that something would stick. Nothing did. Her statements to investigators were clearly false, such as saying that what I did was a violation of the 132 page vendors' contract, whereas that is only for corporate vendors, and not Independent Providers.

On June 27, 2019, and on September 23, Henry Bluestone Smith, Chief of Staff for the NYCDOE Office of General Counsel, cited the numerous investigations as cause for continuing to exclude me from employment.