NYSD.Comp.PreServe.May2021
20-CV-10208

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
Lise Rubin,

                         Plaintiff,          20-CV-10208

                                                **PRE-SERVICE AMENDED**

      -against-                      **COMPLAINT**

NEW YORK CITY BOARD OF EDUCATION, *et al.,*

                                                **Jury Trial Demanded**

                        Defendant(s),
--------------------------------------------------------------X

**DEFENDANTS:**

1. **Agency / Governmental Defendants:**

    New York City Board of Education "BOE' or DOE"; New York City Special Commission of Investigation "SCI"

2. **Defendants, Collectively, and Individually, as Public Officers Acting under Color of Law.**

**A. Positions at NYC Special Commissioner of Investigation:**

1. Anastasia Coleman, Commissioner of SCI, 2. Daniel Schlachet, First Deputy Commissioner of SCI

**B. Positions at New York City Board of Education:**

1.Henry Bluestone Smith, Chief of Staff, Office of General Counsel. 2. Joseph A. Baranello, Deputy Counsel & Chief Privacy Officer. 3. Julia Busetti, Agency Attorney. 4. Ilene Lees, Director, Office of Special Investigations OSI. 5. Katherine G. Rodi, Esq., Executive Director, Office of Employee Relations. 6. Michael van Biema, Executive Director, Office of Related Services. 7. Susan Epstein, Director of Compliance and Contracts, Office of Related Services ORS. 8. Alexis Lantzounis, Supervisor of Occupational Therapy, Manhattan District 3. 9. Katherine Witzke, Principal, Public Elementary School M009, Sarah Anderson School. 10. Geraldine A. Cullen, Second Grade Teacher, P.S. 009, Sarah Anderson School.

                                          --------------------------------------------------------X

Plaintiff LISE RUBIN, complaining of Defendants herein, alleges, upon herself and her own actions, and upon information and belief as to all matters:

## JURISDICTION AND VENUE

1. This is a civil action based upon Defendants New York City Board of Education and New York City Special Commissioner of Investigation; and the named individuals; in violation of the Rehabilitation Act of 1973 ("The Rehabilitation Act"), and the Americans with Disabilities Act ("ADAAA").

2. The jurisdiction of this Court is invoked pursuant to 29 USC Section 794a and 42 USC Section 12203, Title V.

3. Venue is proper pursuant to 29 USC Section 1391 because a substantial part of the events or omissions giving rise to this cause of action, including unlawful employment practices alleged herein, occurred in this district.

4. The jurisdictional prerequisites to commencing this action have been satisfied. Plaintiff had filled a Charge with the Equal Employment Opportunity Commission and was issued a Right to Sue letter on September 5, 2020. This action is filed within ninety (90) days thereof.

## THE PARTIES

5. Plaintiff Lise Rubin ("Plaintiff" or "Ms. Rubin") is a resident of Bergen County, New Jersey; and previously resided in New York County, New York. Starting in 2012, and at all relevant times, Rubin was employed by DOE as her sole employer. After obtaining clearance and full approval, Rubin applied for a NYC full employee status position, but was rejected. NYC Apparently, someone figured out that Rubin was in her 60's, forcing Rubin to work in the RSA [Related Services Agreement] voucher system.

   The Plaintiff Rubin is a professional occupational therapist, school psychologist and special educator with over 45 years of professional experience, including teaching university masters' degree courses in occupational therapy and special education, as well as field work supervision for both. Rubin also worked in curriculum development in higher education, both in occupational therapy and special education, in developing competency based training models. At Boston University, Rubin did advanced doctoral level studies in test design and validation.

6. Defendant New York City Board of Education, AKA Department of Education (B.O.E., D.O.E., or collectively "Defendants") is an agency of the City of New York and is a public employer with a principal place of business at 52 Chambers Street, New York, NY 10007. At all relevant times, the B.O.E. employed over fifty employees and was an "employer" as defined by all relevant statutes.

7. Defendant Special Commissioner of Investigations for the New York City School District (hereinafter "SCI" or collectively "Defendants") is an Office of the BOE; is allegedly independent of the BOE; and has its principal place of business at 80 Maiden Lane, 20th Floor, New York, New York 10038. The stated mission of SCI is: *The Special Commissioner of Investigation for the New York City School District ensures the integrity of the City education system. (It investigates allegations of corruption, fraud, and conflicts of interest as well as those of corporal punishment and sexual misconduct.* SCI has openly failed in its mission.

8. Defendants Anastasia Coleman, Commissioner of SCI and Daniel Schlachet, First Deputy Commissioner of SCI; both collectively "Defendants", and also in their individual capacity; Ms. Coleman, in this role since December, 2017; and Mr. Schlachet, in this role since January, 2018. Their principal place of business is 80 Maiden Lane, 20th Floor, New York, New York 10038.

See below **Results of Study: The pervasive SCI Failure to Protect Whistleblowers and others who advocate.**

9. Office of General Counsel ("OGC") Defendants, collectively "Defendants", located at 52 Chambers Street, Room 320, New York, NY 10007.

   The OGC is responsible for Special Education hearings, *provides representation and counsel to the DOE to ensure that schools are providing special needs students with a free and appropriate education (FAPE), trains administrators and staff on special education students' rights and represents the department in the "impartial hearing process".*

   Former General Counsel Howard Friedman left this position a few months ago. He came to OGC in 2016, from the NYC Law Dept., having worked in Contracts and Real Estate. Mr. Friedman had neither education nor knowledge of Special Education or Rehabilitation. Judy Nathan was appointed Acting General Counsel a few months ago. Toni Gantz ("Ms. Gantz"), Executive Deputy Counsel, Employment & General Practice, had been an individual defendant, but she is in charge of subpoenas and document release for legal proceedings,

which will be required in this case. They are included in the collective of "Defendants", but not individually.

The OGC includes both collectively, and in their individual capacity "Defendants", Henry Bluestone Smith ("Mr. Smith"), Chief of Staff, Office of General Counsel; Joseph A. Baranello ("Mr. Baranello"), Deputy Counsel & Chief Privacy Officer, Room 308; and Julia Busetti, an Agency Attorney representing NYCBOE at the EEOC in 2020, and made false, defamatory and misleading statements, in furtherance of the retaliatory scheme.

The OGC has obviously failed in its duty to instruct themselves, their subordinates, and the entire BOE; about their duty, under ADA, under the Rehabilitation Act, as well as under NYS, and NYC law, to not allow retaliation for special education advocacy by parents, teachers, therapists and others. Had they done so, there would be less hearings.

On January 28, 2021, Judge Loretta A. Preska, U.S.D.J., ordered the appointment of a Special Master for the Special Education hearings. See No. 03-CV-9917 (LAP)LV v. NYC Dep't of Education, and news reporting.

A year before, NYSED [New York Education Department], SEQA [Special Education Quality Assurance], issued results on their investigation into the gross mismanagement of the special education hearings process. As part of the CAP - Corrective Action Plan - NYC BOE had to respond to questions on how they proposed to correct the problems.

NYCBOE was asked:

*How can you decrease the [exceedingly high] rate and number of special education hearing requests?*

NYCBOE, through its attorneys at OGC answered:

*There is nothing we can do. Parents have a right to request hearings.*

This was the wrong answer.

The problems with the excessive number of hearings, and the failure to implement the results; are only symptoms of a much greater and more serious problem: A large portion of the services provided, and the manner in which they do or do not provide them; are grossly below all known standards and applicable laws. This especially applies to Occupational Therapy services, which are generally of such poor quality that they are worthless. See Attachment A, 2019 Report, *A Therapist's Compliance Audit and Special Education State Complaint;* and the NYSED SEQA Investigation Results and Correction Action Plan, May 17, 2019,

    which validated the original report findings. The compliance deadline was September 16, 2019; but did not complete it until May 11, 2020, almost a year late. It should not take an entire year for a school to have the OT reports and IEP objectives be minimally acceptable. This indicates how badly prepared the personnel are.

    NYC DOE personnel are quick to tell parents to request a hearing if they complain, which is an unfair burden on the parents, and causes the students and family substantive harm. Further, it seems that personnel are intentionally failing to implement the hearings orders. These are the real underlying problems which must be addressed.

10. The Office of Special Investigations, (OSI), a program in the NYC BOE, is also under the control and supervision of OGC. They are collectively "Defendants". Ilene Lees ("Ms. Lees"), Director, and others are collectively "Defendants";. Ms. Lees is also a defendant in her individual capacity; with offices located at 65 Court Street, Room #922, Brooklyn, New York 11201. Jaclyn Vargo was the Director in June, 2018. The *OSI investigates allegations of improper and unlawful behavior, including corporal punishment and verbal abuse against students, to help ensure a safe and secure*

    Instead of warning other personnel that they are not allowed to retaliate responsive to a State Complaint; she jumped in and directed the illicit retaliation. OSI has failed to achieve its mission.

11. Defendant Katherine G. Rodi, Esq. ("Ms. Rodi" in her individual capacity, and collectively "Defendants"), Executive Director, Office of Employee Relations, also called Office of Personnel Investigation (OPI), and the Monitoring Unit of DOB; office located at 65 Court St., Brooklyn, New York 11201. Ms. Rodi maintains some of the secret Blacklists, including Problem Coding, denies relief under OPI, and removes personnel clearance without basis, on request. She has dishonestly told courts that there are no secret blacklists.

12. Defendants Michael van Biema ("Mr. Van Biema"), Executive Director, Office of Related Services ("ORS"), Susan Epstein ("Ms. Epstein"), Director of Compliance and Contracts, ORS, and Alexis Lantzounis ("Ms. Lantzounis"), Supervisor of Occupational Therapy, Manhattan District 3; collectively included in "Defendants", and in their individual capacity, in these roles over the years covered in this Complaint. The Office of Related Services ("ORS") is a program within the NYC BOE, with central offices located at 28-11 Queens Plaza North,

Room 508, Long Island City, NY 11101. Lantzounis has an office at 333 7th Ave., Room 819, New York, N.Y. 10001.

The Office of Related Services provides personnel and supervision, for both direct employees and those working through vendors; for Occupational Therapy, Speech, Physical Therapy, Nurses, and many other types of supportive educational personnel. Mr. Van Biema has been in this role for around 10 years. He came from NYC Housing, where he was in charge of contracting vendors. He has neither experience nor knowledge in special education or rehabilitation. This seems related to the poor quuality level of services.

13. Defendants Katherine Witzke ("Ms. Witzke"), Principal, and Geraldine A. Cullen ("Ms. Cullen"), Grade 2 Teacher; or collectively as "Defendants", and in their individually; were both employed in these capacities before September, 2017, and to the current date; at P.S. M009, the Sarah Anderson School located at 100 W. 84th St., New York, NY 10024. Cullen has neither training nor credentials in special education, but has been allowed to force her beliefs on parents and to frighten and emotionally abuse students and yell at and bully staff. She has openly displayed anger towards students who are, at worst, merely manifesting symptoms of their disability; or even following her instructions.

**Factual Background of Current Law Suit -**
**Two Primary Instances of Retaliation to Special Education Student Advocacy**

There are 2 major instances of direct, linear, and harmful retaliation by defendants. In both cases, on the same day, and as a direct, linear, causal reaction to a protected advocacy document, complaints were filed with SCI / OSI.

I.   June 22, 2018 - False Accusations by Defendants Cullen, Witzke and Epstein to SCI & OSI: On Friday afternoon, June 22, 2018, Defs Cullen, Witzke, and Epstein, stole a Letter to Parents, written by Rubin to help parents obtain services for their children, from student backpacks; and sent it to SCI as a formal complaint, falsely claiming that Rubin was charging parents for services.

At 4:13 PM, 6/22/2018, Friday afternoon, Witzke sent an email to Def. Van Biema, cc'd to Defs Lantzounis and Rodi, with the SCI intake number. Rodi responded at 4:18 PM, with OPI Problem Code. Rubin's clearance to work, to use SESIS, to bill through

the Vendor Portal, were all removed, and email and all communication with staff were blocked; to be effected, with no explanation to Rubin, as of Tuesday, June 26,2018.

OSI found that the complaint was not valid, and speedily dismissed it.

Epstein responded with 4 more empty complaints, all based on Rubin's own writings which were either advocacy for students, or Rubin seeking an explanation for what had been done to her, and/or describing the significant problems it was causing, including noncompliance with Law.

In the fourth such "complaint" Epstein cited ORS personnel stating that, when Rubin asked for information about the clearance removal, they had correctly "Told nothing".

At that time, SCI had not even screened the complaint, and there was neither investigation, nor grounds for any personnel action whatsoever.

She was directed, at all times, to contact OPI, Rodi's Office of Professional Investigations.

OPI, at all times, refused to give any information, or to explain how to have clearance reinstated.

OPI at all times said to contact SCI.

At all times, SCI refused to respond or to discuss it at all.

Rubin was not able to learn anything about what happened until March, 2019, when the January, 2019, FOIL documents began to be released.

The FOIL releases for the initial complaint had to be appealed repeatedly, with 3 versions of OSI 18- 07095, from March to July, 2019, all deeply redacted, and none with the mandatory cover page which would have stated Unsubstantiated, and directed Epstein to fully reinstate Rubin.

Rubin did not know that this cover page existed, nor of it stating Epstein's duty to reinstate, until seeing a few in the FOIL release from 12/2/2019, it having been "removed" from all of the five from 2018.

Despite the fact that none of Epstein's complaints had "stuck", SCI, OSI, OGC, and other DOE personnel continued to use them in a defamatory manner, to refer to them as indications of serious wrong-doing by Rubin.

This was done by the following defendants:

Daniel Schlachter, Assistant Commissioner of SCI, in a letter, May 30, 2019.

> Henry Blackstone Smith, Chief of Staff, General Counsel, in letters in June and September, 2019.
>
> Ilene Lees, Director of OSI, in an equally false and defamatory investigation report, July, 2019.
>
> Julia Busetti, BOE OGC Agency Attorney, in their response to the EEOC

**Adverse Economic & Employment Impact:**

This information is not addressing the extreme emotional distress and physical symptoms thereof which Rubin has experienced as a result of the retaliation, nor being forced to expend 2 years trying to rectify it, by going to EEOC and then this Federal District Court for redress.

In November, 2018, Witzke refused to give Rubin a professional reference, indicating that she was taking instructions. At that time, Rubin still had no idea why her clearance had been removed. Without a professional reference from her employer of 7 years, and having been prevented from obtaining a reference from the teachers and others at M9 who would have happily done so; Rubin was repeatedly unable to complete attempts to be employed. She had 2 offers, from school districts in New Jersey, who had offered her work, pending even an informal phone reference.

One of these was a full time, salaried position, and the step and scale would have been a salary of approximately $85,000 a year, plus $15,000 to $20,000 in benefits.

The other one was hourly, at $75.00 an hour, for a minimum of 4 days and 28 hours a week, or $75,000 a year.

There are many factors, not detailed here, such as being forced to take social security years early, and the inability to continue to make SS payments, resulting in a lowered monthly benefit, to continue through Rubin's life, with a life expectancy of at least 95 years old.

**Attachments:** OT in the Summer, May 16, 2018, letter from Manhattan's Committee on Special Education to Rubin, urging therapists to work with parents to make up lost sessions over the summer by requesting RSAs.

Letter to Parents, June 21, 2018, from Rubin, sent to parents of students in her caseload at M09, including the start of service date, and estimate on number of hours owed, as in the list given to Def. Witzke on request.

II. March 20, 2019 - Defendant Epstein learned that Rubin had filed a State Special Education Complaint, pertaining to occupational therapy systemic service failure at PS

9 in Rubin's absence, as it had been prior to Rubin's year there. Epstein immediately filed a complaint with SCI & OSI.

The May 17, 2019, NYSED SEQA investigation report and Corrective Action Plan validated Rubin's complaint.

NYSED SEQA complemented Rubin on her keeping student identities confidential.

Whereas NYSED had ordered PS 9 to fulfill the compliance plan by September, 2019, They did not do so until May, 2020, indicating both recalcitrance and incompetence.

Rubin continually pointed out to all the defendants, that she could not be investigated for engaging in protected activity, to no avail.

Ilene Lees signed the investigative report dated 7/12/2019.

Most of her statements were false or absurd. For example, she cited that Rubin had last accessed Student records "as late as March 2019".

Rubin had submit a complaint to SCI and OSI, including the State Complaint and Audit, and had been following instruction from SCI Intake, to print out and send to them unredacted originals for their review.

These materials were sent to SCI and OSI, by USPS Express Mail.

They included specific proofs that the DOE therapist had been defrauding students of services by secretly altering IEPs.

SCI and OSI had received copies of documents the DOE therapist had submit to support her decreasing of time and level of services.

She used IEP meeting attendance sign in sheets from the prior year, to make it appear that the changes were made lawfully in an IEP meeting.

Both SCI and OSI completely buried this and large amounts of other objective data submit to them.

They concealed the SCI and OSI intake numbers.

On instructions from OPI, in April, 2019, Rubin asked SCI a procedural question, how to restore the clearance. This was not a complaint.

SCI and OSI then agreed to pretend that this was Rubin's only communication and complaint with SCI and OSI, and gave it an official Complaint number, SCI 20193167, OSI #19-06052, closed repeatedly, from 5/7/2019 on. Any communication from Rubin was dumped into the already closed complaint.

On May 30, 2019, Def. Daniel Schlachet, Assistant Commissioner of SCI, responding to my letters to Anastasia Coleman, Commissioner of SCI; for protected status, responded, denying protection, falsely claiming that my request for information on restoring my clearance was the complaint to I referred in regards to retaliation. Both he and Anastasia Coleman failed to respond to requests for protected status under Federal, State or City law.

**Attachments:**

March, 2019 report, A Therapist's Compliance Audit and State Complaint.

May 17, 2019 NYSED SEQA Investigation Report and Corrective Action Plan

IEP Fraud documents submit to OSI and SCI in March, 2019, redacted

**Results of Study: The pervasive SCI Failure to Protect Whistleblowers and others who advocate.**

Rubin sought, and was denied, data from SCI on the number of requests for protected Whistleblower status, and the number granted.

NYC Department of Investigations publishes annual reports, including data from the DOE and thus SCI.

Over the years 2010 to 2020 (Year 2011 report is not available), there were 369 requests for WB protection, across all NYC agencies, including NYC DOE.

Of these, 187, slightly over one half, were from DOE.

Only 7 out of the 369 requests for WB protection were granted.

It appears that in only 2 instances did SCI grant WB protection, rejecting it for 185 cases.

Commissioner Anastasia Coleman and Assistant Director Schlachet were given protected WB status in 2018.

Results: Over the years 2010 to 2020, the only personnel receiving the benefit of Protected status in the NYC DOE, were Defendants Coleman and Schlachet.

Please see attached document, amended herein as part of this complaint, for the benefit of Defendants: **Introduction to the Case, ADA and the Rehab Act do not exist in the NYC School. Instead, Retaliation to Advocacy is Condoned**

# FIRST CAUSE OF ACTION: RETALIATION UNDER THE REHABILITATION ACT

SECTION 504 OF THE rehabilitation Act provides: "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal assistance…" 29 USC Sec 794(a).

The Regulations implementing Section 504 of the Rehabilitation Act provides that a school is required to provide a "free appropriate public education" by providing education and related services that "are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons." 34 CFR Sec 104.33(a) & 9b)(10.

Section 505(a)(2) of the Rehabilitation Act provides: "The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available to any peron aggrieved by any act or failure to act by any recipient of federal assistance or Federal provider of such assistance under section 504 of this Act." 29 USC Sec. 794a(a)(2).

The anti-retaliation provision of Title VI of the Civil Rights Act incorporated by Section 504 states: "No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Section 601 of (the Civil Rights) Act or this part, or because he made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this part."

Plaintiff participated in complaints and investigations, including whistleblowing on students being defrauded of mandated services, and being provided with grossly substandard services. As set forth, Plaintiff was retaliated against for assisting and ensuring protection of the rights of her

students, across Manhattan and the Bronx; and more recently, those enrolled at the Sarah Anderson School in Manhattan, PS 09., under the Rehabilitation Act.

SECOND CAUSE OF ACTION: RETALIATION UNDER THE ADA

Section 503(A) OF THE ADA PROVIDES: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participate in any manner in an investigation." USC Sec. 12203(a). The ADA Regulations provide: "No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this pat, or because that individual made a charge, testified, assisted, or participate in any manner in an investigation, proceeding, or hearing under the Act or this pat." 28 UFR Sec. 35.134(a).

Section 503(b) of the ADA provides: "It shall be unlawful to coerce, intimidate, threatn or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 USC Sec. 12203(b). The ADA Regulations provide: "No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise oor enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part." 28 CFR Sec. 35.134 (b).

The ADA Regulations provide: "No qualified handicapped person, shall, on the basis of handicap, be excluded from [articipation in, be denied the benefits of, or otherwise be subjected to

discrimination under any program or activity that receives or benefits from federal financial assistance: 28 CFR Sec 41.51(a).

The ADA Regulations further provide that a "recipient of federal aid, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of handicap." (i) "Deny a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit or service" (ii) "Afford a qualified handicapped person an opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 CFR Sec 41.51 (b)(1)(i)-(iii).

Plaintiff participated in complaints and investigations, including whistleblowing on students being defrauded of mandated services, and being provided with grossly substandard services. Plaintiff aided and encouraged students and their parents in the exercise or enjoyment of their rights under the ADA when advocating on behalf off them in regards to receiving occupational therapy services.

As set forth above, the Defendants unlawfully retaliated against Plaintiff for aiding and encouraging the students' rights by unlawfully terminating Rubin's clearance; by making retaliatory investigatory complaints, and otherwise prevented her from employment.

14. **. Other Claims:** In addition to my federal claims listed above, I assert claims under:

    THIRD CAUSE OF ACTION: New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of retaliation for advocacy of children with disabilities.

15. FOURTH CAUSE OF ACTION: New York State Labor Law 740 / 741 - Unlawfully terminated in violation of *Labor Law* §§ 215, 740, and ***741***, in retaliation for complaints; in severe Bad Faith, warranting a Civil Penalty.

16. FIFTH CAUSE OF ACTION: Failure to provide protection under New York City Whistleblower Protection Act, Section 12-113 of the New York City Administrative Code.

17. SIXTH CAUSE OF ACTION: New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual disability advocacy retaliation; Defendants are individually liable under NYCHR Law.

**Additional Claims:**

    Defamation: Slander, Libel, Libel per se

    Spoliation of Evidence            Fraud

### IV. Statement of Claim

**Further Adverse Employment Actions**

The defendants in this case took the following adverse employment actions against me:

Wrongful Termination; Multiple false accusations; Continual coercion to violate student rights, and state, federal and local education and professional laws; Causeless removal of clearance to work, with no reason ever given; followed by refusal to restore; Failure to Restore clearance; Failure to Rehire; Denial of Professional Reference, causing permanent unemployment; Continual coercion to do additional work without compensation; Harassment and creation of a hostile work environment; Retaliated against me; Failure to compensate for work done; Provided me with terms and conditions of employment different from those of similar employees.  Disparate Treatment, falsely accusing me with empty allegations of wrongdoing, while refusing to investigate and stop others from openly defrauding students and violating laws.

Subjected to notoriety, defamation, slander, libel, libel per se. Humiliation, emotional pain and suffering. Loss of employment.  Loss of payment for 2017-2018 year services and expenses, including extra compensation for time spent on SESIS outside of school.  Loss of

collegial relationships. Loss of future employment and future income; which caused lower social security amount. Forced to start social security early, also resulting in a lower monthly amount. The false accusations here, inherently defamatory that an SCI / OSI complaint had been filed against Rubin, or that she was "under investigation", when she was not; were used against Rubin in the future by the same Defendants.

## VI. RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants in the form of and/or for compensatory, pension, medical benefits, emotional, physical, and punitive damages, lost pay, front pay, interest, injunctive relief, reinstatement of clearance, and any other damages permitted by law. Plaintiff also demands judgment against defendants for each cause of action and for all applicable and permissible damages, in an amount to be assess. Plaintiff also seeks injunctive relief, including, but not limited to, the clearing of her personnel file of any wrongful disciplinary actions, and of any records within OSI and SCI.

Dated: Initially December 3, 2020    Amended with Court's leave: February 25, 2021; Amended prior to Service On Defendants in May, 2020.

Respectfully Submit,

*S / Lise Rubin*   Electronically signed.
Lise Rubin
677 Kent Ave.
Teaneck, NJ 07666
917-513-2630