### A State Special Education Complaint
*A Therapist's Compliance Audit, Lisa D. Rubin, M.Ed., OTR/L*

## Part III. THERAPY QUANTITATIVE COMPLIANCE AUDIT
### Systemic, Falsified Certified Therapy Sessions which
### DID NOT HAPPEN
### Students Defrauded of Mandated Services
### Compliance Data Corrupted
### Examples of 60% to 67% Actual Mandate Noncompliance
### Claimed 100% Compliance for 6/10 missed sessions

It was discovered that the ORS use of SESIS for occupational therapy has included the systematic falsification of student records by having therapists certify sessions which did not happen. These falsely certified non-sessions migrate, along with the valid ones, across the SESIS system and are included in the count of *Occupational Therapy Services Completed for Student*, displayed in SESIS in the form of an individual student's calendar for each month. [See attached pages 11b & 11C, sample pages for September and October 2018.]

It is not known at this time how many of these falsified sessions are by ORS policy, by directions from the district supervisor, or the idea of the treating therapist. It should be noted that in the first weeks of school students rarely have a fixed occupational therapy schedule, making any allocations of Did Not Happen sessions unreasonable. This same factor is in play all year long, with sessions which Did Not Happen being certified at various times not associated with the student. There is literally no where in the Rehabilitation field which would allow for this manner of allocation of "services completed", including Medicaid.

Students who had not had a first session, some of whom were never picked up, had no data entry in SESIS, not of missed sessions, nor the reason for the failure to provide services. At the same time, the Provider Assignment Module declared them to be awaiting DOE provider, as did the entire group. The First Session dates are not entered when a DOE employee picks up a student.

**For September 2018,** this student's mandate of twice a week sessions yielded a minimum of 6 sessions owed for the month. The uncorrected calendar at top shows 3 sessions were "completed", giving the false appearance that "only" 3 sessions were lost, and that the compliance and noncompliance rates were each 50%.

However, if one reviews the session notes which generate the calendar data at the middle of the page, and which migrate across the SESIS system, one sees that on one of these 3 certified sessions the provider was absent, and not even physically at the school. As a result, there actually were only 2 sessions. It turns out that one of these two was also a problem, as the same time period was used for 2 students, each of whom had only individual sessions mandated, and which were billed as individual sessions. These types of errors were not excluded from these results.

In the corrected SESIS calendar for September, of *Occupational Therapy Services Completed for Student*, at the bottom of the page, the absentee date certified is crossed out, and the which Did Not Happen is excluded from the totals. The corrected rate of compliance is 2 out of 6 sessions, or a 33% compliance rate, and a **67% noncompliance rate.**

**October 2018:** The next page is for October 2018, which required that the student receive 10 mandated sessions, and for which the calendar at top included 10 certified as completed OT sessions, and appears to be in 100% compliance. However, on review of the session notes (in the middle of the page), one sees that, in fact, one of these sessions had the provider absent, one had the student absent, and 4 were "cancelled". The reasons given for cancellation included:

      Therapist working on an IEP report
      Therapist in IEP meeting
      Therapist at evaluation training

A State Special Education Complaint
*A Therapist's Compliance Audit*
*Co. 2019 Lisa D. Rubin, M.Ed., OTR/L*

Pages 11B & C
Occupational Therapy Services Completed
September & October 2018

**Mandate: 2 x 30 minute sessions per week**
**September – owed 6 sessions**

## Occupational Therapy Services Completed for Student:

**SESSION DATA AS REPORTED:**

| September 2018 Services | | | | | | | Totals Completed |
|---|---|---|---|---|---|---|---|
| Sun | Mon | Tue | Wed | Thu | Fri | Sat | |
| 26 | 27 | 28 | 29 | 30 | 31 | 1 | |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 | |
| 9 | 10 | 11 | 12 | 13 | 14 OT 30m | 15 | OT (30) |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 | |
| 23 | 24 | 25 OT 30m | 26 OT 30m | 27 | 28 | 29 | OT (60) |
| 30 | 1 | 2 | 3 | 4 | 5 | 6 | |
| | | | | | Totals in September: | | OT (90m) |

| Reported Sessions Completed | Missed Sessions |
|---|---|
| 0 | 1 session |
| 1 session | 1 |
| 0 | 2 |
| 2 sessions | 0 |
| 3 sessions | 3 sessions |

| Date of Service | Service Start Time | Service End Time | Service Type | Session Notes | Session Type | Language | Duration | Grouping | Actual Group Size | Service Location |
|---|---|---|---|---|---|---|---|---|---|---|
| 9/25/2018 | 01:00 PM | 01:30 PM | Occupational Therapy | Provider out on religious holiday | Provider Absent | English | 30 | Individual | | Therapy Room |

**CERTIFIED, BUT DID NOT HAPPEN**

## ACTUAL SERVICE PROVIDED:

### Occupational Therapy Services Completed for Student:

| September 2018 Services | | | | | | |
|---|---|---|---|---|---|
| Sun | Mon | Tue | Wed | Thu | Fri |
| 26 | 27 | 28 | 29 | 30 | 31 |
| 2 | 3 | 4 | 5 | 6 | 7 |
| 9 | 10 | 11 | 12 | 13 | 14 OT 30m |
| 16 | 17 | 18 | 19 | 20 | 21 |
| 23 | 24 | 25 ~~OT 30m~~ | 26 OT 30m | 27 | 28 |
| 30 | 1 | 2 | 3 | 4 | 5 |
| | | | Totals in September: | | |

| Total Time Actually Completed | Total Sessions Actually Completed | Total Time Actually Missed | Sessions Actually Missed |
|---|---|---|---|
| OT 0 | 0 | 30m | 1 |
| OT (30) | 1 session | 0m | 1 |
| OT 0 | 0 sessions | 60m | 2 |
| OT (30) | 1 session | 30m | 1 |
| OT (60) Minutes | 2 sessions Completed | 120 minutes Missed | 4 sessions Missed |

# A State Special Education Complaint
### A Therapist's Compliance Audit
### Co. 2019 Lisa D. Rubin, M.Ed., OTR/L

## Occupational Therapy Services Completed for Student

**SESSION DATA AS REPORTED:**

### October 2018 Services

| Sun | Mon | Tue | Wed | Thu | Fri | Sat | Totals Completed |
|-----|-----|-----|-----|-----|-----|-----|------------------|
| 30 | 1 | 2 OT 30m | 3 OT 30m | 4 | 5 | 6 | OT (60) |
| 7 | 8 | 9 OT 30m | 10 OT 30m | 11 | 12 | 13 | OT (60) |
| 14 | 15 | 16 OT 30m | 17 OT 30m | 18 | 19 | 20 | OT (60) |
| 21 | 22 | 23 OT 30m | 24 OT 30m | 25 | 26 | 27 | OT (60) |
| 28 | 29 | 30 OT 30m | 31 OT 30m | 1 | 2 | 3 | OT (60) |
| | | | | | | Totals in October: | OT (300m) |

| Reported Sessions Completed | Missed Sessions |
|-----------------------------|-----------------|
| 2 sessions | 0 |
| 2 sessions | 0 |
| 2 sessions | 0 |
| 2 sessions | 0 |
| 2 sessions | 0 |
| 10 sessions | 0 |

| Date of Service | Service Start Time | Service End Time | Service Type | Session Notes | Session Type | Language | Duration | Grouping | Actual Group Size | Service Location | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/2/2018 | 01:00 PM | 01:30 PM | Occupational Therapy | | Provider Absent | English | 30 | Individual | | Therapy Room | ◄ DID NOT HAPPEN |
| 10/9/2018 | 01:06 PM | 01:36 PM | Occupational Therapy | Therapist working on an IEP report | Cancelled | English | 30 | Individual | | Therapy Room | ◄ DID NOT HAPPEN |
| 10/10/2018 | 09:15 AM | 09:45 AM | Occupational Therapy | Therapist in IEP meeting | Cancelled | English | 30 | Individual | | Therapy Room | ◄ DID NOT HAPPEN |
| 10/16/2018 | 02:10 PM | 02:40 PM | Occupational Therapy | | Student Absent | English | 30 | Individual | | Therapy Room | ◄ DID NOT HAPPEN |
| 10/30/2018 | 01:00 PM | 01:30 PM | Occupational Therapy | Therapist at DOE evaluation training | Cancelled | English | 30 | Individual | | | ◄ DID NOT HAPPEN |
| 10/31/2018 | 09:15 AM | 09:45 AM | Occupational Therapy | Child not in class. Therapist made parent phone calls. | Cancelled | English | 30 | Individual | | | ◄ DID NOT HAPPEN |

## ACTUAL SERVICE PROVIDED:

## Occupational Therapy Services Completed for Student:

### October 2018 Services

| Sun | Mon | Tue | Wed | Thu | Fri |
|-----|-----|-----|-----|-----|-----|
| 30 | 1 | 2 ✗ OT 30m | 3 OT 30m | 4 | 5 |
| 7 | 8 | 9 ✗ OT 30m | 10 ✗ OT 30m | 11 | 12 |
| 14 | 15 | 16 ✗ OT 30m | 17 OT 30m | 18 | 19 |
| 21 | 22 | 23 OT 30m | 24 ✗ OT 30m | 25 | 26 |
| 28 | 29 | 30 ✗ OT 30m | 31 ✗ OT 30m | 1 | 2 |
| | | | | | Totals in |

| Total Time Actually Completed | Total Sessions Actually Completed | Total Time Actually Missed | Sessions Actually Missed |
|-------------------------------|------------------------------------|----------------------------|--------------------------|
| OT (30) | 1 session | 30m | 1 |
| OT 0 | 0 | 60m | 2 |
| OT 30 | 1 session | 30m | 1 |
| OT 60 | 2 sessions | 0 | 0 |
| OT 0 | 0 | 60m | 2 |
| OT 120 minutes | 4 sessions Completed | 180 minutes Missed | 6 sessions Missed |

None of these are acceptable allocations and the billing of therapist time to this student's *"Occupational Therapy Services Completed".* The last 4 are especially disturbing, as it is directly billing this student for services provided to others, while directly costing this student the loss of services.

At the bottom is a corrected calendar of Actual Service Provided, which crossed out the 6 incorrect entries. This shows that only 4 out of 10 mandated sessions happened, for a compliance rate of 40% and **noncompliance of 60%.**

### DATA RESULTS – For Period of September through December 2018
### Basis of Data Analysis – 70 school days, 15 students, 420 sessions owed

Over the months of September through December 2018, there were 70 school days, or 14 weeks, for service delivery.

With 15 students, and an average mandate of 2 sessions per week, each week required 30 sessions, or 15 hours of service delivery.

With 14 weeks, 420 sessions of occupational therapy services should have been delivered, or 210 hours.

*Sources of Error not included in this analysis:*

The following procedures assume that the data and content as entered has not been intentionally falsified, which may or may not be a reasonable assumption. This analysis does not include consideration of if sessions were group or individual.

This data also has not adjusted for many other compliance and regulatory errors, such as:

> Duplicate time entries for 2 concurrent and mutually exclusive, student sessions
>
> Group sessions, with billing for both students, when only individual mandates
>
> Therapy treatment session time being used for pre-IEP assessments of the student, which is specifically prohibited under Medicaid Compliance.
>
> Session documentation certified as completed prior to or during the session
>
> Since none of the session notes specifically state the numeric measurable, objective progress made on the IEP objectives, all of the current year's sessions are in noncompliance and not billable. See below for details.
>
> Since none of the IEP objectives being written by the new occupational therapist are objective, measurable and quantifiable, nor do they give a baseline, all future session notes will be substandard, in noncompliance, and not billable.
>
> It should be noted that the SESIS format for progress reporting within IEPs, and the meaningless drop-down selection, is in noncompliance with Medicaid, as it is vague and does not make any specific reference to the IEP objectives. It also requires modifying the IEP which is a bad idea.

### Initial SESIS Mandate Compliance Data Results:
### 420 sessions owed, 284 sessions certified = 68% Compliance, 32% Non-compliance

SESIS data certified that 284 sessions were completed, for a compliance rate of 68%, and a non-compliance rate of 32%. This data migrated outwards across the data system.

This is, of course, an unacceptable level of compliance with mandated service. But it gets worse.

### Pervasive Session Misclassification:
### Sessions Certified, but Did Not Happen

### 80 Misclassified Sessions out of the original 284 certified sessions = 28% certified in error

Session notes and student calendars were reviewed, and sessions certified and counted as *Service Completed*, but which did not, in fact happen, were distributed into 4 sources of error:

> Type A Error: Session did not happen, therapist in meeting or otherwise occupied

Type B Error: Session did not happen, therapist gone, not physically present in school
Type C Error: Session did not happen, student in school and/or at school activity
Type D Error: Session did not happen, student absent

None of these erroneously entered sessions are allowed under Medicaid or any other professional standard. They are all in non-compliance. They need to be made up.

**Summary Table: Distribution of Types of DID NOT HAPPEN Errors in SESIS *Occupational Therapy Services Completed for Student*, but which Did Not Happen. September – December 2018.**

| Error A Did Not Happen - Therapist Meeting | Error B Did Not Happen -Therapist Gone | Error C Did Not Happen -Student in School | Error D Did Not Happen -Student Absent | Total Did Not Happen Errors |
|---|---|---|---|---|
| 15 | 38 | 11 | 16 | 80 |

Specific Criteria for Error types:

**Type A Did Not Happen Error. Therapist Meeting**. The type is when the therapist attended meetings, screened or evaluated other students, or performed administrative duties, and the time was incorrectly allocated to another student. None of these activities can be credited as direct service treatment *Services Completed* in any case. Over the 4 months this occurred 15 times.

**Type B Did Not Happen Error: Therapist Gone:** This refers to instances when the therapist was out of the building, at meetings, training, or absent from the school for any reason. Over the 4 months, this happened 38 times. It is not possible to honestly declare that a therapist who was not even physically present in the building had actually "completed" providing the service of occupational therapy. While religious observance should be no problem, ORS has a duty to comply with the number of mandates, and has made no effort to do so.

**Type C Did Not Happen Error: Student Not Absent, at a school activity:**

When a student was not located by the therapist for a session, but was in a school activity, the student's *Completed Services* calendar was incorrectly credited as though a treatment session was actually "completed". This was done 11 times over the 4 months. Why is the student being penalized for therapist and program failure?

**Type D Did Not Happen Error: Student Absent.**

This misclassification occurred when a student was absent from school, yet their *Services Completed* calendar logged in the time as though a session was completed. This was frequently done at times which were not the regular session time, if one had been established. This was done even though the therapist used that time block to provide services to other students, or to perform administrative, unbillable tasks. Over the 4 months, this error occurred 16 times.

## Results: Re-Calculation of Mandate Compliance based on
## Corrected Services Completed Data
### 420 sessions owed, 204 sessions Actually Happened =
### 49% Compliance, 51% Non-compliance

The calculations were repeated, using corrected data for the months September through December 2018.

In SESIS, the *Sessions Completed* data had incorrectly included 80 sessions which did not happen, and significantly over-estimated compliance with the students' mandates. These students, on average, lost 50% of the mandated number of sessions. Some lost a good deal more.

**Table:  Corrected Compliance Rates for Student Session Mandates, September thru December 2018**

| Mandated Sessions | Sessions Actually Happened | Actual Compliance Rate % | Actual Non-Compliance Rate % |
|---|---|---|---|
| 420 | 204 | 49% | 51% |

## State Special Education Complaint
## Part IV. SPECIFIC COMPLAINTS:

**Complaint Area I. The NYC Schools, Office of Related Services, Employee Therapist is Changing IEP Mandates and defrauding students of mandated services.**

IDEA B. Section 1414 requires that the team review IEP changes. This is not happening. Instead, as in this case, the occupational therapist has unilaterally modified a large portion of the existing IEPs without benefit of a team meeting or review. This appears to have been generally directed by her supervisor, Ms. Lantzounis.

Worse, as no one has stopped the initial unreviewed IEP changes, the New York City Schools, full employee status, occupational therapist assigned to this caseload of students, has taken further liberties. She has affirmatively defrauded a number of her students of their mandated services, by unauthorized altering of the IEPs in SESIS; through decreasing services in frequency, and by downgrading the level by changing from individual to group. To give the appearance of legitimacy, but showing the purposeful intent in her actions, she added to the modified IEPs a copy of attendance used with IEP meetings – but they are from last year's IEP meetings. This was done for the purpose of attempting to make her caseload manageable, not in the interests of the students, nor with the knowledge or agreement of the parents. While it is not known if this therapist thought up this scheme, or was instructed to do so by her supervisor; this type of grossly unethical behavior is the natural extension of the routine practices and policies of the Office of Related Services for New York City Schools.

**Complaint Area II. *Robbing Peter to Pay Paul* – Therapist Misclassification of time use in SESIS. Mandated Services Compliance is only 50%.**

There is pervasive and inappropriate billing of time to individual student accounts, but which services the student did not receive. This includes using one student's mandated time to benefit another student; billing individual students for tasks other than treatment; and in actually crediting therapist absences to *Occupational Therapy Services Completed.* None of this is permitted under the Medicaid Compliance rules, nor ordinary professional ethics for professional therapists. Each of these errors is used to unethically reduce the amount of mandated services delivered to the student. Close to one half of these errors was the misclassification of time when the therapist was actually physically absent from the school, yet certified and misclassified as *Occupational Therapy Services Completed* for the student.

This invalid data must be removed to make reports for compliance.

It is not known how much of the misclassified activities is due to the individual therapist making poor decisions, versus supervisory directives. There are ORS policies which have substantively contributed to the problem. Taken as a whole, they have turned the SESIS system into a staffing tool instead of a tool for student information. Certainly Mr. van Biema and Ms. Epstein are well aware of the fact that this incorrectly classified data immediately migrates outward, and is then used deceptively to artificially increase compliance data, while simultaneously and directly causing the students a loss of services.

The misclassified activities have included:

> Meetings with supervisor, charged off to individual student's time
> IEP and other meetings
> Training on or off site
> Screening and evaluating other students
> Doing paperwork for and preparation for meetings for other students

Making phone calls
Therapist absences
Student absences
Therapist did not locate the student

**Complaint Area III. Failure to have services in place at the start of the school year.**
**Pervasive and Willful Violations of IDEA Section 1414, (d) (2) (A). IEP program must be in effect at the beginning of the school year.** Systemic Policy is Causing Provider Assignment Problems, By Related Services Administration, including Director of Compliance; Intentional failure to allow and support, occupational therapy providers; and instead assertively undermines timely provision of therapy services.

This is the second year in a row that the students of this school lost services at the start of the school year. As of the end of September 2018, only 73%, or 11 of the 15 students, had a first session.

September had 15 school days, or the equivalent service mandate for 3 weeks of sessions. A student with a two times per week mandate should have received 6 sessions; with 3 times a week, 9 sessions. They were collectively owed at least 30 sessions each week, or a total of 90 sessions over September.

As of the end of September, 2018, these 15 students, grades 1 to 4, had only received a total of 27 sessions of OT, an average of 1.8 per student. A total of 13.5 treatment hours were expended on the 15 students for the entire month of September, which is the equivalent of less than 3 school days over the whole month. It is less if one excludes sessions which are not permitted, such as 2 mutually exclusive sessions at one time.

This was not starting services at the start of the school year.

One student's first session was on October 4, and second session on October 9; another first session was October 25, second session November 1. Two students have never received services.

The "Cascading" system of provider assignment is a failure. First, there is no reason why ORS is not making the assignments in the spring. They intentionally make the system impossible by waiting until September. One could not engineer a worse system of manpower management if one set about to do so.

Then ORS waits for months prior to releasing the students from the DOE provider who did not appear. Then the corporate vendors hold on to students for weeks, and they get passed around for another month. The corporate vendors routinely claim to have provider therapists ready, but do not. Months go by, where the independent providers could respond at the beginning of the year, and the pool of OT providers would expand if this were allowed.

The Related Services Compliance department sends out memos on non-compliance to principals, of students located but not picked up. The on-site therapists are then demanded to pick up extra students when they are located, even if they are already at capacity, and too late in the year to make adjustments or make the services of use to the new students.

The SESIS Provider Assignment Module incorrectly classifies students, as the mandates being "fully assigned" when they are not. As a result, NYC Schools are claiming a higher level of compliance then is actually achieved.

Cases are needlessly held up pending various events, while Independent Providers would pick up the students at the end of the prior school year, or the first week of school. ORS refuses to allow this. ORS simply does not take real compliance seriously.

**Complaint Area IV. Untenable policy to limit Occupational Therapy treatment sessions; Limited to only maximum of 30 minute sessions; apparent prohibition against frequency over two times per week.**

This school, by policy, only allows therapy sessions to be a maximum of 30 minutes.

At the beginning of this year, two students had three time per week mandates, with specific reasons set forth in the IEPs. Neither have received these services.

In one case, the student has received no occupational therapy whatsoever. The other student is one of those whose IEP mandates have been illicitly altered to conform to the policy of only twice a week, and make the caseload easier for the therapist.

**Complaint Area V.  SESIS has become too user friendly, causing serious threat to integrity of student records.**

SESIS has become too "user friendly", as anyone is able to open IEPs, create new ones and modify them, without any authorization or oversight required. A new feature even allows a second person to edit other people's reports, without approval and with the second person not required to sign the edited document. This will cause serious defects in the accuracy of the record.

The IEP Progress reports are literally made by alteration of the original IEP, and/or creation of a new one, which is a serious threat to integrity and security of the record.

**Complaint Area VI. Failure to Implement existing IEPs; Prohibited, Unauthorized and Zealous use of IEP Amendments and** Modifications to decrease services. There is a pervasive failure to demonstrate that any progress has been made on existing IEP objectives, nor how they will be met with decreases in mandated time and service levels; since no progress has been documented at the current levels; to justify decreased mandate level of service and time. Failure to implement current IEPs, including failure to use the required method of assessing progress; failure to implement the methods and materials; failure to treatment plan based on the IEP; Failure to implement instructional programs in touch typing programs as required.

## Complaint Area VII. Why is the Union taking Special Education Complaints?

1. The Office of Related Services has no effective middle management for occupational therapy. This causes a lack of any meaningful quality control, and a cascade of adverse impacts on students. Clinicians must have clinical supervisors who will ensure that the profession's clinical practices and standards are implemented, and who will not allow unmanageable case load assignments.

2. There is no ombudsman for NYC School personnel, therapists or parents. Personnel who advocate for students experience severe retaliation, with no recourse. UFT intervention cannot possibly be robust enough to counter the huge administrative coercion to destroy professionalism and the professional duty to advocate on behalf of students, not against them.

3. This situation is reflected in the failure to promote professionalism, and the failure of management to prioritize that students must make objective gains. Instead they force therapists to place students in groups and other less effective "treatment" situations. These practices are ultimately self-defeating in terms of **Medicaid reimbursement, which now offers reimbursement for individual services substantially <u>above what the actual cost is to pay for independent providers.</u>**

4. These rates are so high that providers – who are also NYC vendors – could be engaged to bill Medicaid for their services, and NYC Schools would not even need to pay providers in some neighborhoods, while increasing therapist commitment to serve these underserved groups.

5. The teachers' union, UFT, has attempted to fill gap, such as by periodic advocating for less coercion on therapists to pick up caseloads which are too large for speech therapy; and by coming to various agreements with management, but each of which further undermines professionalism and actualization of FAPE rights.

6. The only place in the NYC Schools to make a complaint on special education problems is the teachers' union, UFT. See attached printout. **[Page 18 B]**

7. While this might seem enlightened, it creates new problems, including that UFT might be violating the student's FERPA privacy rights. Additionally, UFT has refused to recognize Independent Providers and therapists working for vendors, and has denied membership and the use of any resources. This is despite the fact that the NYS Department of Labor has determined that both independent providers and vendor therapists are, in fact, misclassified employees. New York City Schools has agreed.

8. Through UFT, the speech therapists have negotiated an agreement for their supervisors to not coerce them to pick up impossible caseloads. It seems to not apply to occupational therapists, and certainly not independent providers or vendor therapists. It is not even entered in the general awareness of ORS administrators.

9. UFT did intervene on a problem with time required for documentation. The result is that NYC Schools OTs are no longer required to produce annual reports, and the rare ones seen are not based on objective baselines, and do not propose new measurable objectives. This results in a failure to regularly update IEP objectives, and an inability to factually report progress. This was not a helpful way to resolve this problem, and is against the interests of the students.

10. The correctness of the UFT process should be reviewed, and ORS should find a way to operationalize professional responses to professional practice problems.

**A State Special Education Complaint**

*A Therapist's Compliance Audit*

*Co. 2019 Lisa D. Rubin, M.Ed., OTR/L*



UFT Solidarity is building *a stronger union.*

*"Together we can improve education by improving our profession."*

UFTSolidarity.org

HOME    ABOUT ⌄    MEMBERSHIP    MEMBER TOOLBOX ⌄    DONATE    UFT SOLIDARITY 2019 ⌄    GET CONNECTED ⌄

› Home  » Special Ed Info

## SPECIAL ED INFO

Our system is unfortunately plagued with countless Special Education violations. Our neediest students suffer and often times their teachers and paraprofessionals are gagged from speaking up. Although there are avenues to report such violations, history has shown us that none of the methods through 311, the UFT and State Education Department have protected these special ed whistleblowers.

UFT Solidarity is committed to assisting these members and children.

Email spedinfo@uftsolidarity.org and we will work with the administration, the UFT and DOE to remedy the situation while keeping your name a secret.

Steps:

1. Staff member or parent contact spedinfo@uftsolidarity.org with information on the alleged violation or concern.

2. UFT Solidarity Special Education task force contacts administration on member/parents behalf. Five days are given to remedy the situation.

3. If situation is not remedied in a week, the UFT, school superintendent, deputy chancellor and 311 are contacted.

4. If the violations are not remedied at this level, the NYS Education Department and media are contacted as well as Special Education advocates.

***We are also there to assist and help with ANY special educaton issue whether you believe it is big or small! If you have a SESIS question or a legal question etc  message us!***

## One Comment

Shelice Simmons
SEPTEMBER 19, 2018 AT 4:16 PM

Many teachers and paras are left in special ed classroom 12:1:1 without the required gen ed & special ed teacher required due to massive scheduling issues that continue to go on without reaching a real remedy.    REPLY

## Leave a Reply

Your email address will not be published. Required fields are marked *

Comment

Name *

Email *

### SEARCH THIS WEBSITE

SEARCH

### BECOME A MEMBER

Become a Member
JOIN TODAY! ❯

### PLEASE DONATE


Donate

### UPCOMING EVENTS

**UFT Solidarity Calendar**
Today    Wednesday, March 13  ▾  ⊞ P

*Showing events after 3/13.*
*Look for earlier events*
*Showing events until 4/15.*

Events shown in time zone:
Eastern Time - New York

Calendar

### JOIN US ON FACEBOOK

UFT Solid...
2.1K likes

Like Page

Be the first of your friends to like this

### CATCH UP IN THE ARCHIVES

Select Month ⌄

### THE TOP 10 POPULAR LINKS RIGHT NOW