

**THE STATE EDUCATION DEPARTMENT** / THE UNIVERSITY OF THE STATE OF NEW YORK / ALBANY, NY 12234

OFFICE OF SPECIAL EDUCATION
SPECIAL EDUCATION QUALITY ASSURANCE
NEW YORK CITY REGIONAL OFFICE
55 Hanson Place, Room 545 • Brooklyn, NY 11217-1580
www.p12.nysed.gov/specialed/

Telephone: (718) 722-4544
Fax: (718) 722-2032

May 17, 2019

Ms. Lise D. Rubin
677 Kent Avenue
Teaneck, NJ 07666

Ms. Ilene Altschul
Superintendent
New York City Department of Education
Community School District 3
154 West 93rd Street, Room 122
New York, NY 10025

Ms. Katherine Witzke
Principal
P.S. 9 Sarah Anderson
100 W 84th Street
New York, NY 10024-4604

Complaint: Lise D. Rubin v. New York City Department of Education, Community School
District 3, Sarah Anderson/Public School 9

Dear Ms. Rubin, Ms. Altschul and Ms. Witzke:

The New York State Education Department's (NYSED) Office of Special Education
has completed its investigation of the State complaint (Complaint) filed by Lise D. Rubin v.
New York City Department of Education, Community School District 3, Sarah
Anderson/Public School 9 (School), on March 19, 2019.

Enclosed is NYSED's written decision that addresses each allegation in the
Complaint by setting forth the findings of fact, conclusion, and reason for the written decision.
Upon any finding of failure to provide appropriate services to an individual student with a
disability, the School must take the identified corrective actions to remediate the denial of
services to the identified student and take appropriate actions to ensure the future provision
of services for all students with disabilities.

The implementation of the enclosed Compliance Assurance Plan (CAP) will be
monitored by Regional Associate, Thomas Walsh. All CAP submissions should be sent to
Mr. Walsh, who is assigned to work with District 3 schools.

There is no federal or State right to appeal a State complaint, and this decision is
final. NYSED will amend any factual errors included in the Statement of Facts section of the

written decision, if a request is received within 15 calendar days from the date of the written decision and the request provides details of the error (see http://www.p12.nysed.gov/specialed/quality/complaintqa.htm). However, please be advised that if continuing concerns remain affecting an individual student, either the complainant or the school district may choose to initiate an impartial hearing to address the issues raised in the Complaint, as long as the issues are appropriate to a due process hearing and the two-year statute of limitations for due process hearings has not expired. To obtain additional information on the rights of the parent of a student with a disability under Part B of the Individuals with Disabilities Education Act, please refer to the Assistance for Parents section of NYSED's website at:

http://www.p12.nysed.gov/specialed/quality/parents.htm.

If you believe additional, unresolved violations have occurred that were not included in your original Complaint, you may submit a new State complaint. For additional information on State complaint procedures, please see:

http://www.p12.nysed.gov/specialed/formsnotices/samplecomplaint.htm.

You may contact me at (718) 722-4544 should you need further assistance or have any questions regarding the State complaint investigation process.

Sincerely,

Eric Haubenstock
Regional Associate

EH:da
Enclosure
c:    Belinda A. Johnson
      Nayana Bhattacharjee
      Thomas Walsh
      Corinne Rello-Anselmi
      Christina Foti
      Josh Morgenstern
      Jaime Kraybill
      Lynn Kandrac
      Benjamin Schott
      File

# Written Decision of State Complaint
## Lise D. Rubin v. the New York City Department of Education, Community School District 3, Sarah Anderson/Public School 9
### Received March 19, 2019

## Allegation #1:

During the 2018-19 school year, Individualized Education Program (IEP) recommendations for occupational therapy were not implemented as specified for students enrolled at Sarah Anderson/P.S. 9 (School).

## Statements of Fact with Sources:

- On September 5, 2018, the first day of the 2018-19 school year, there were 33 students enrolled at the School whose IEP included a recommendation for occupational therapy (OT) service to be implemented at the start of the school year. (1, 2, 5, 6, 7)

- During the time period of September 5, 2018 through March 14, 2019, five (5) of the 33 students had IEP recommendations for OT changed by amendment and waiver of the CSE meeting after the start of the 2018-19 school year. (1, 2, 3, 6, 7)

- Taking into account student absences and school closures, during the time period of September 5, 2018 through March 14, 2019, thirty-three (33) students with IEP recommendations for OT service were provided with 868 of 1,388 (62%) possible OT sessions. (1, 2, 6, 7, 8)

- Of those 33 students:

  - There were 23 students whose OT service commenced in September 2018 and they received 678 of 1,060 (64%) possible OT sessions. (1, 2, 5, 6, 7)

  - There were six students whose OT service commenced in October 2018 and they received 170 of 249 (68%) possible OT sessions. (1, 2, 5, 6, 7)

  - There was one student whose OT service commenced in November 2018 and received 13 of 25 (52%) possible OT sessions. (1, 2, 5, 6, 7)

  - There were two students whose OT commenced in February 2019 and they received seven (7) of 47 (13%) possible OT sessions. (1, 2, 5, 6, 7)

  - No documentation was submitted as evidence that one student received any of the OT service recommended in the IEP. (1, 2, 5, 6, 7)

- Four students had IEP recommendations for OT that specified that the service be provided in the classroom. (1, 2, 6, 7) During the time period of September 5, 2018 through March 14, 2019:

  - One student received three (3) of 26 possible OT sessions in the classroom. (1, 2, 6, 7)

  - One student received two (2) of 26 possible OT sessions in the classroom. (1, 2, 6, 7)

- One student received zero (0) of eight (8) possible OT sessions in the classroom. (1, 2, 6, 7)

- One student received one (1) of 52 possible OT sessions in the classroom. (1, 2, 6, 7)

- The School issued Related Service Individual Authorization (RSA) forms for six of the 33 students, authorizing the parents to obtain the OT service from an independent provider. (4, 5, 6)

## Conclusions and Reasons:

In accordance with 8 NYCRR §200.4(e)(7) of the Regulations of the Commissioner of Education, the school district must provide special education and related services to a student with a disability in accordance with the student's IEP and must make a good faith effort to assist the student to achieve the annual goals. During the time period of September 5, 2018 through March 14, 2019, none of the 33 students with an IEP recommendation for OT was provided with 100% of the therapy sessions as per their IEP recommendations. Overall, the 33 students did receive 62% of the occupational therapy that was recommended in their IEPs. When an IEP recommendation required that a student receive occupational therapy within the classroom environment, as was the case for four students, this was not consistently implemented. One student did not receive OT service at all. Therefore, it is the determination of this Office that the School failed to implement the IEP recommendations for occupational therapy for the 33 students, a violation of 8 NYCRR §200.4(e)(7).

## Finding: Sustained

| Citation | Language |
|---|---|
| §200.4(e)(7) | The school district must provide special education and related services to a student with a disability in accordance with the student's IEP and must make a good faith effort to assist the student to achieve the annual goals and, if appropriate, short-term instructional objectives or benchmarks listed in the student's IEP. |

## Allegation #2:

At the beginning of the 2018-19 school year, the School delayed implementation of the occupational therapy services recommended in the IEPs of students enrolled at the School.

## Statements of Fact with Sources:

- On September 5, 2018, the first day of the 2018-19 school year, there were 33 students enrolled at the School whose IEP included a recommendation for occupational therapy service to be implemented at the start of the school year. (1, 2, 5, 6, 7)

- Twenty-three (23) of the 33 students first received OT service within the first seven (7) school days in September 2018. (1, 2, 5, 6, 7)

- Of the ten (10) remaining students:

  - Six (6) of the 33 students first received OT service in October 2018. (1, 2, 5, 6, 7)

  - One (1) of the 33 students first received OT service in November 2018. (1, 2, 5, 6, 7)

  - Two (2) of the 33 students first received OT service in February 2019. (1, 2, 5, 6, 7)

  - No documentation was submitted as evidence that one (1) student received the OT service recommended in the IEP. (5, 6, 7)

## Conclusions and Reasons:

In accordance with 8NYCRR §200.4(e)(1)(i) there may be no delay in implementing a student's IEP, including any case in which the payment source for providing or paying for special education to the student is being determined. In this case, during the first seven school days, occupational therapy service was initiated for twenty-three of thirty-three students. Occupational therapy service was initiated between October 2018 and February 2019 for nine (9) remaining students. One student did not receive OT service at all. Therefore, it is the determination of this Office that the School violated 8NYCRR §200.4(e)(1)(i) by delaying the implementation of the IEP recommendations for occupational therapy.

## Finding: Sustained

| Citation | Language |
|---|---|
| §200.4(e)(1)(i) | There may be no delay in implementing a student's IEP, including any case in which the payment source for providing or paying for special education to the student is being determined. |

## Allegation #3:

During the 2018-19 school year, the IEP objectives specific to occupational therapy goals are not objective, measurable or quantifiable, nor do they include a baseline used to measure progress toward meeting the annual goal.

## Statements of Fact with Sources:

- On the first day of the 2018-19 school year, September 5, 2018, there were 33 students enrolled at the School whose IEP included a recommendation for occupational therapy services to be implemented at the start of the school year. (1, 2, 5, 6, 7)

- Each of the IEPs of those 33 students listed annual goals with observable behavior.   (2, 5, 6, 7)

- The IEPs of all 33 students included annual goals that described a how progress towards the goals will be measured. (2, 6, 7)

- The IEPs of all 33 students included annual goals that included the schedule of when progress will be measured. (2, 6, 7)

- The IEPs for seven (7) of the 33 students included goals that specified a description of the measure used to determine if the goal has been achieved. (2,6,7)

- The remaining twenty-six (26) IEPs included goals with a description of accuracy for each goal, but the IEP did not specify the period of time that the skill or behavior must occur to measure progress toward the annual goal. (2, 6,7)

## Conclusions and Reasons:

In accordance with 8 NYCRR §200.4(d)(2)(iii) an IEP must list measurable annual goals consistent with the student's needs and abilities, and each annual goal shall include the evaluative criteria, evaluation procedures and schedules to be used to measure progress toward meeting the annual goal.  In this case, twenty-six (26) IEPs had annual goals with observable behavior that included the method of evaluation and the schedule of evaluation but failed to specify the evaluative criteria (the measure used to determine if the goal has been achieved) for each annual goal. Those IEPs described evaluative criteria as a percentage of accuracy but did not specify over what period a time a student must perform a behavior in order to consider it met. Therefore, it is the determination of this Office that the School violated 8 NYCRR §200.4(d)(2)(iii)(b) due to their failure to write IEP goals that include all aspects of the evaluative criteria.

## Finding: Sustained

| Citation | Language |
|---|---|
| §200.4(d)(2)(iii)(b) | Each annual goal shall include the evaluative criteria, evaluation procedures and schedules to be used to measure progress toward meeting the annual goal during the period beginning with placement and ending with the next scheduled review by the committee. |

## <u>Sources Used to Determine Statements of Fact</u>

1. Documentation provided by the School principal specifying the occupational therapy service provided to thirty-three enrolled students with a disability.

2. IEPs in effect during the current school year that include a recommendation for occupational therapy service.

3. Agreements signed by parents during the current school year to amend an occupational therapy service recommendation without a CSE meeting.

4. Related Service Individual Authorization (RSA) forms issued by the School during the current school year for occupational therapy services.

5. Interview on April 30, 2019 with the School principal.

6. Interview on April 30, 2019 with the full-time occupational therapist assigned to the School.

7. Interview on April 30, 2019 with the part-time occupational therapist assigned to the School.

**Compliance Assurance Plan**

| Corrective Action #1 | Citation: §200.4(e)(7) |
|---|---|

**Required Corrective Action**

The School Principal must provide special education and related services to a student with a disability in accordance with the student's IEP and must make a good faith effort to assist the student to achieve the annual goals.

**By September 16, 2019,** the School Principal will submit the following to the NYSED:

1. Documentation that the school-based Committee on Special Education (CSE) has convened for each student in this sample* to discuss the impact of the failure to provide occupational therapy service during the 2018-19 school year, including, but not limited to, Meeting Notice, Prior Written Notice, any IEP developed or amended, and the schedule for any additional services deemed appropriate.

2. For students enrolled at the School for the 2019-20 school year, the School Principal will submit:
   - A list of all students with a disability, indicating the special education programs and services recommended in the IEP of each student.
   - The IEP recommendations page for each student with a recommendation for occupational therapy service.
   - The caseload and schedule of all occupational therapists assigned to provide services at the School.
   - Administrative procedures for ensuring the provision of occupational therapy services which must describe the actions, including timelines for those actions, that the School must take when unable to provide the occupational therapy recommended in the IEP of an enrolled student.

*The student sample will be communicated to the School in a separate document to ensure confidentiality.*

**Evidence to Verify Compliance**

The Regional Associate will review of the submitted documentation to verify compliance.

| Corrective Action #2 | Citation: §200.4(e)(1)(i) |
| --- | --- |

**Required Corrective Action**

The School Principal must ensure that there is no delay in implementing a student's IEP, including any case in which the payment source for providing or paying for special education to the student is being determined.

**By August 30, 2019**, the School Principal will submit the following to the NYSED:

- A staffing plan that demonstrates hiring and scheduling of sufficient occupational therapy service staff to fulfill all students' IEP mandates for OT for the 2019-20 school year.

**By September 16, 2019**, the Principal of P.S. 009M will submit the following to the NYSED:

- Documentation that the CSE has convened for each student in this sample* to discuss the impact of the delay in implementation of occupational therapy service during the 2018-19 school year, including, but not limited to, Meeting Notice, Prior Written Notice, any IEP developed or amended, and the schedule for compensatory services deemed appropriate.

*The student sample will be communicated to the School in a separate document to ensure confidentiality.

**Evidence to Verify Compliance**

The Regional Associate will review of the submitted documentation to verify compliance.

| Corrective Action #3 | Citation: §200.4(d)(2)(iii)(b) |
|---|---|

**Required Corrective Action**

The school-based Committee on Special Education (CSE) at the School must ensure that IEPs list measurable annual goals that include the evaluative criteria, evaluation procedures and schedules to be used to measure progress toward meeting the annual goal.

**By June 28, 2019**, the School Principal will submit the following to the NYSED:

- Documentation that the CSE has corrected the annual goals in the IEPs of affected sample students* to include all aspects of the evaluative criteria.

**By September 16, 2019**, the School Principal will submit the following to the NYSED:

- Documentation that appropriate professional development has been provided to occupational therapists assigned to the School, specifically building knowledge and skills related to writing measurable IEP goals that include evaluative criteria to identify how well and over what period of time the student must perform a behavior in order to consider it met. Documentation must include, but is not limited to, a detailed agenda describing the content, and signed attendance which indicates each participants' name and title.

*The student sample will be communicated to the School in a separate document to ensure confidentiality.

**Evidence to Verify Compliance**

The Regional Associate will review of the submitted documentation to verify compliance.