UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/06/2023

LISE RUBIN,

                                    Plaintiff,

                    -against-

NEW YORK CITY BOARD OF EDUCATION, et al.,

                                    Defendants.

20-CV-10208 (LGS) (KHP)

**REPORT AND
RECOMMENDATION ON
MOTION TO DISMISS**

**TO:     THE HONORABLE LORNA G. SCHOFIELD, United States District Judge
FROM: KATHARINE H. PARKER, United States Magistrate Judge.**

        Before the Court for a Report and Recommendation is Defendants' Motion to Dismiss

the Second Amended Complaint ("SAC").[1]  The SAC names the following entities and individuals

as Defendants: The New York City Board of Education ("BOE");[2] The Special Commissioner of

Investigation for the New York City School District ("SCI") (collectively, the "Municipal

Defendants); Susan Epstein, Director of Compliance and Contracts at the DOE Office of Related

Services ("ORS"); Michael van Biema, Executive Director at ORS; Alexis Lantzounis, DOE's

Supervisor of Occupational Therapy ("OT") for Manhattan District 3;  Katherine Witzke,

Principal of P.S. M009 Sarah Anderson School ("PS 9"); Geraldine A. Cullen, teacher at PS 9;

Anastasia Coleman, Special Commissioner at SCI; Daniel Schlachet, First Deputy Commissioner

at SCI; Ilene Lees, Director of the DOE's Office of Special Investigations ("OSI"); Henry Bluestone

---

[1] The SAC was filed in numerous iterations with the final version at ECF No. 177 and exhibits at ECF Nos. 180-81.

[2] The SAC and briefing conflate the BOE and Department of Education ("DOE") as one entity.  (*See, e.g.* SAC ¶ 1; Def. Br. 1.)  While there is no meaningful distinction between the two entities for purposes of this litigation, the Court notes that the two are "not entirely synonymous": the DOE "is a creation of the BOE" that is comprised of the BOE members and "the Chancellor, superintendents, community and citywide councils, principals, and school leadership teams." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 77 (2d Cir. 2011) (Straub, J. concurring); *see also* Bylaws of the Panel for Educational Policy of the City School District of the City of New York, available at https://www.schools.nyc.gov/about-us/leadership/panel-for-education-policy/pep-bylaws.

Smith, former Chief of Staff at the DOE's Office of General Counsel ("OGC"); Joseph A. Baranello, Deputy Counsel and Chief Privacy Officer at OGC; Julia Busetti, OGC Agency Attorney; and Katherine G. Rodi, Executive Director at DOE's Office of Employee Relations (collectively, "Individual Defendants").[3]

The SAC alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq; Titles II and V of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; Sections 504 and 505(a)(2) of the Rehabilitation Act of 1974 ("Rehabilitation Act"), 29 U.S.C. § 794; New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 et seq.; New York City Human Rights Law ("NYCHRL"), N.Y.C. Administrative Code § 8-101 et seq; the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.; the New York State Labor Law ("NYLL") §§ 740, 741, and 215 and Art. 19, § 650 et seq.; and New York State Civil Service Law ("CSL") § 75-b.  It also asserts state common law claims for defamation and fraud.

Defendants moved to dismiss the SAC in its entirety pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(5), and 12(b)(6).  For the reasons stated below, I respectfully recommend the Motion to Dismiss be GRANTED.

**BACKGROUND**

1. **Allegations in the SAC[4]**

Plaintiff Lise Rubin ("Plaintiff") is an occupational therapist and special educator.  (SAC ¶ 13.)  From 2012 to 2018, Plaintiff worked as an "Independent Provider" for the DOE.  Through

---

[3] The Court will refer to the Individual Defendants by their last names.

[4] All allegations in the SAC are assumed to be true for the purpose of this Motion to Dismiss. *See Morales v. City of New York*, 752 F.3d 234, 236 (2d Cir. 2014).  As discussed below, the SAC is difficult to follow.  This recitation of facts represents the Court's best effort at interpreting the allegations liberally in Plaintiff's favor.

this arrangement, Plaintiff provided OT services to special needs students at various public and private schools in New York City. (*Id.* ¶¶ 12, 17, 239.) Plaintiff worked under Related Services Agreements ("RSAs"), which are vouchers issued by the DOE that allow parents of special needs students to select a qualified Independent Provider to provide services to the child at no cost to the parent. (*Id.* ¶¶ 27, 345.) The DOE contracts with vendors pursuant to Related Services Contracts, and the vendors supply the Independent Providers. (*Id.* ¶ 1506.)

Schools seeking the services of an Independent Provider may refer to a registry of qualified providers maintained by the ORS. (*Id.* ¶ 1493.) Providers who wish to appear on this registry must apply for eligibility to work with RSAs or vendors, and this requires, among other things, obtaining security clearance through "PETS." (*Id.* ¶¶ 1502-04.) At some point during or prior to 2012, Plaintiff was placed on the registry. She was then selected from the registry on separate occasions to work as a provider at schools during the period from 2012 to 2018. As discussed below, Plaintiff's services were terminated in 2018.

### a. Misclassification as Independent Contractor, 2012 through 2018

During the time Plaintiff worked as an Independent Provider for the DOE, she was classified as an independent contractor. Plaintiff alleges she should have instead been classified as an employee based on the high degree of control the DOE maintained over her work. (*Id.* ¶¶ 20-28, 342.) In particular, Plaintiff alleges that Defendant Lantzounis, the school district's OT Supervisor, micromanaged her work, including by preventing her from providing services after school hours. (*Id.* ¶¶ 476, 966.) Plaintiff alleges that by virtue of being misclassified as an independent contractor, she was denied numerous rights, including the

rights to join a union, file a grievance, and receive overtime pay and other benefits granted to employees. (*Id.* ¶¶ 267-68; 274-83.)

As a result of Plaintiff's alleged misclassification as an independent contractor and the DOE's failure to provide her with adequate pay and benefits, the SAC alleges that all Defendants violated Plaintiff's rights under the FLSA and the NYLL minimum wage law.

### b. Retaliatory Blacklisting in 2014

In 2014, Plaintiff was providing services at Public School M293, City College Academy of the Arts ("M293"). In August 2014, Plaintiff advocated on behalf of students with disabilities by making a formal complaint against M293 to the New York State Education Department ("NYSED") regarding the provision of special education services at M293 ("2014 NYSED Complaint"). (*Id.* ¶¶ 471-72.) Shortly thereafter, in retaliation for Plaintiff's advocacy, DOE staff made formal complaints against Plaintiff. (*Id.*) The complaints resulted in Plaintiff receiving what the SAC refers to as a "problem code" on her record, which impacted how or whether she appeared on the ORS registry, and Plaintiff was required to reapply for security clearance from PETS. (*Id.* ¶¶ 1504-05.)

The SAC asserts that this problematic coding of Plaintiff constituted retaliation for her advocacy on behalf of students with disabilities in violation of the ADA, the Rehabilitation Act, NYSHRL, and NYCHRL. Plaintiff also contends the retaliation violated Title VII.

### c. Underpayment and Hostile Work Environment in 2017-2018

On November 17, 2017, Plaintiff began working as an Independent Provider at PS 9. (*Id.* ¶¶ 437-40.) While at PS 9, Plaintiff was required to spend numerous hours on uncompensated tasks, including coordinating Medicaid Physician Compliance Visits and screening students to

determine whether they needed OT services.  (*Id.* ¶¶ 284-87, 452, 489-95, 547-87, 891, 899.)

Plaintiff also was not compensated for the time she spent "start[ing] the OT program" at PS 9

"from the bottom up."  (*Id.* ¶ 946.)  Instead, Plaintiff only received pay for time spent providing

direct OT services to students.  (*Id.* ¶ 898.)  Plaintiff also alleges that her hourly rate had not

been raised since at least 2012, and therefore she was underpaid.  (*Id.* ¶ 270.)

Additionally, Plaintiff alleges that the environment at PS 9 was "hostile" as retaliation

for her advocacy on behalf of students.  She contends her supervisors, Defendants Lantzounis

and Witzke, created this hostile work environment by requiring her to work on uncompensated

tasks, to work with more students than Plaintiff's capacity allowed, and to adopt certain

"substandard and illegal practices" in her work with the students, such as treating students in

groups and modifying students' Individualized Education Programs ("IEPs").  (*Id.* ¶¶ 476,

626-28, 632-58, 929-37, 992-93.)  While not entirely clear from the SAC, Plaintiff may be

contending that this conduct was retaliation for the 2014 NYSED Complaint or other NYSED

complaints she filed in October 2014 and January 2015 in connection with her work at another

school.

Although the Court understands these allegations to be part of the alleged retaliation in

violation of the ADA, the Rehabilitation Act, NYSHRL, and NYCHRL, Plaintiff also mentions that

this hostile work environment violated Title VII and that Defendants violated the FLSA and the

NYLL by underpaying her for work performed and/or requiring her to perform tasks for which

she received no compensation.

### d. Retaliation as Result of Providing an Informational Letter in June 2018

On June 21, 2018, Plaintiff gave her PS 9 students a letter for their parents ("2018 Letter"). (*Id.* ¶ 38.) The 2018 Letter stated that because there had been a late start in acquiring OT services at PS 9 that year, students were eligible for "Compensatory Services," and although the school year was ending, Plaintiff was "available to make home visits for sessions" during the summer. (SAC Exh. 2, ECF No. 180-2.) The letter advised parents on how to obtain RSA vouchers that would enable them to use Plaintiff's services during the summer. (*Id.*) The SAC asserts that in handing out this letter, Plaintiff was advocating on behalf of disabled students by ensuring they were aware of the services available to them, and that she was opposing the DOE's practice of not informing parents of their children's rights to obtain compensatory services.

Defendant Cullen, a teacher at PS 9, observed Plaintiff placing the 2018 Letter in students' backpacks and reported the incident to Defendant Witzke. (SAC ¶¶ 165, 167, 190.) On June 22, 2018, Defendant Witzke reported the incident to OSI, which is DOE's internal investigative unit, and to SCI, which is an independent agency that acts as a watchdog for the New York City School District. (*Id.* ¶¶ 777, 783-88, 1662, 1309.) That same day, DOE removed Plaintiff's security clearance, removed Plaintiff from the ORS registry, and placed a problem code on her record. (*Id.* ¶¶ 38, 189, 302-04.) The problem code was entered by Defendant Rodi. (*Id.* ¶ 1115.) These actions effectively terminated Plaintiff's services. (*Id.* ¶¶ 311, 315.) The DOE refused to tell Plaintiff why it had taken these actions. (*Id.* ¶ 163.) The SAC asserts that these actions constituted unlawful retaliation against Plaintiff as a result of her advocacy on behalf of students with disabilities via the 2018 Letter.

OSI investigated the incident. In August 2018, an OSI investigator interviewed Defendant Epstein, who told the investigator that in handing out the 2018 Letter, Plaintiff attempted to bypass DOE's policy for assigning therapists to students whereby DOE employees are given preference over Independent Providers such as Plaintiff, and that Plaintiff was improperly soliciting business from parents without the DOE's approval. (*Id.* ¶¶ 346, 374, 806.) The investigator also interviewed Defendant Witzke, who falsely stated that another provider provided OT services to certain students during the 2017-18 school year. (*Id.* ¶¶ 835-47.) The interviewer also interviewed Defendants Van Biema and Lantzounis who made unspecified false accusations against Plaintiff to the investigator. (*Id.* ¶ 200.) Defendants later "fraudulently" referred to this incident in submissions to the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 231.)

OSI ultimately found that the complaints against Plaintiff were unsubstantiated, and it directed the DOE to return Plaintiff to service. However, the DOE never informed Plaintiff of this result, never reinstated Plaintiff's security clearance, and never restored Plaintiff's position at PS 9. (*Id.* ¶¶ 190-94, 197.) Moreover, in November 2018, Defendant Witzke refused to provide a professional reference for Plaintiff. (*Id.* ¶¶ 388, 1021.)

The SAC alleges that the actions taken against Plaintiff on June 22, 2018 and thereafter constituted improper retaliation because of her advocacy on behalf of students with disabilities in violation of Title VII, the ADA, the Rehabilitation Act, NYSHRL, and NYCHRL. The SAC further alleges that the false statements made by Defendants to OSI constituted fraud.

**e. Retaliation in 2019 as a Result of Plaintiff's Whistleblower Complaint**

Following Plaintiff's termination in June 2018, Plaintiff conducted research into what was happening to special needs students at PS 9 in her absence. (*Id.* ¶ 1200.) After conducting her research, Plaintiff wrote a 45-page report that "blew the whistle" on how students at PS 9 were, "in Plaintiff's absence . . ., being deprived and defrauded of mandated services." (*Id.*) On or about March 7, 2019, Plaintiff filed her report as a State Special Education Complaint with NYSED ("2019 NYSED Complaint"). (*Id.* ¶¶ 212, 1200, 1210; *see also* SAC Exh. 4, ECF No. 180-4.) The 2019 NYSED Complaint alleged that the staff at PS 9 were engaging in billing and Medicaid fraud by "entering false certifications into SESIS[5] to make it appear that students had received OT services when in fact they had not received services. (SAC ¶¶ 216-30, 1210, 1214.) The complaint concluded that PS 9 students were being "deprived and defrauded of mandated services." (*Id.* ¶ 1200.) Plaintiff also sent the 2019 NYSED Complaint to the Chancellor's Office, the District 3 Superintendent, OSI, and SCI. (*Id.* ¶¶ 1203-06.) Plaintiff also raised these same concerns with the Office of the Public Advocate and with various members of the NYC Schools Panel for Educational Policy. (*Id.* ¶¶ 1202-03.)

The DOE learned of the 2019 NYSED Complaint on March 20, 2019, and as a result, on that same day, Defendant Epstein filed a complaint about Plaintiff to SCI. (*Id.* ¶¶ 212, 230, 1218.) Defendant Epstein's complaint alleged that despite Plaintiff's security clearance being removed in 2018, the 2019 NYSED Complaint revealed that Plaintiff was continuing to access student records and to contact parents. (SAC Exh. 13B, ECF No. 181-13.) Indeed, Plaintiff

---

[5] "SESIS" refers to the Special Education Student Information System, which is an online database that assists DOE staff and service providers in managing the provision of special education services to students.

accessed student records to research and compile the 2019 NYSED Complaint and contacted parents regarding the contents of that Complaint.  (SAC ¶¶ 1287-88, 1297-1304.)

On April 30, 2019, Plaintiff received a notification that Epstein's SCI complaint about her had been referred to OSI and that OSI was investigating the allegations.  (SAC Exh. 13B.)  An OSI investigator called Plaintiff numerous times to set up an interview, but Plaintiff refused to be interviewed.  (*Id.*)  Plaintiff found the investigator's conduct to be harassing.  (SAC ¶ 230.)

The OSI ultimately found the complaint made against Plaintiff to be substantiated and recommended that a problem code be assigned to Plaintiff's record.  (SAC Exh. 13B.)  Plaintiff received the OSI Investigative Report on July 10, 2019, and she found the Report contained unspecified "false, bogus and defamatory" statements about her regarding the 2018 Letter incident.  (SAC ¶¶ 1193, 1196, 1230-31, 1324.)  The Report stated that OSI interviewed Defendants Witzke and Lantzounis, as well as a parent of one of Plaintiff's former students, who all stated that Plaintiff had been contacting parents over the summer of 2018—after her termination—to offer OT services and to complain about PS 9.  (*Id.*)  Defendant Witzke also stated that prior to the June 2018 termination, Witzke had discovered that Plaintiff was improperly modifying students' IEPs.  (*Id.* ¶ 1223.)  The Report further stated that on May 20, 2019, Plaintiff admitted to an OSI investigator that she accessed SESIS records after her termination, and that Plaintiff's SESIS activity record confirmed that Plaintiff accessed student records after her termination.  (SAC Exh. 13B.)  Defendants later "fraudulently" referred to the OSI Report in submissions made to the EEOC.  (SAC ¶ 231.)

The SAC alleges that Defendant Epstein's complaint to SCI and the resulting OSI investigation and other conduct thereafter constituted retaliation for the 2019 NYSED

Complaint and earlier protected activity in violation of Title VII, the ADA, the Rehabilitation Act, NYSHRL, and NYCHRL, and that these acts constituted violations of state whistleblower protection statutes, specifically NYLL §§ 215, 740, and 741, and CLS § 75-b.

### f. Refusal of OSI, SCI, and OGC to Offer Whistleblower Protection in 2019 and to Provide Adequate FOIL Responses in 2019-2020

In January 2019, Plaintiff began filing FOIL requests seeking her employment records and seeking to learn the cause of the employment actions taken against her in June 2018. (*Id.* ¶ 201.) DOE's Deputy Counsel, Defendant Baranello, did not timely respond to Plaintiff's FOIL requests, used incorrect dates in his responses, produced documents with unnecessary redactions, and falsely claimed certain documents were exempt from FOIL or did not exist. (*Id.* ¶¶ 203-04, 209, 1574-77, 1584-1605.) Defendant Lees, Director at OSI, participated in "document suppression" by informing Defendant Baranello that OSI could not locate certain records that were responsive to the FOIL requests. (*Id.* ¶¶ 1606-27.)

Between March and June 2019, Plaintiff sent a series of emails to individuals at OSI, SCI, and the DOE's OGC requesting whistleblower protection in relation to her 2019 NYSED Complaint and raising concerns regarding the responses to her FOIL requests. (*Id.* ¶ 248; SAC Exh. 11A, ECF No. 181-11; SAC Exh. 14A, ECF No. 181-14.) On May 30, 2019, Defendant Schlachet, First Deputy Commissioner at SCI, informed Plaintiff via email that SCI had received her request for whistleblower protection, but that the whistleblower statutes were not "the appropriate vehicle" for her requested relief. As SCI understood it, Plaintiff's emails complained about adverse employment actions that occurred in June 2018, *before* she filed the 2019 NYSED Complaint, and accordingly there was no causation between the report of

wrongdoing and the alleged adverse actions taken.  (*Id.*)  Plaintiff characterizes the letter as "bogus, defamatory, factually false, retaliatory, intimidating and harassing."  (SAC ¶¶ 1194.)

On June 27, 2019, Defendant Smith, Chief of Staff for the DOE's OGC, sent Plaintiff a letter acknowledging receipt of Plaintiff's emails and stating that the OGC found the DOE's responses to Plaintiff's FOIL requests to be appropriate and that Plaintiff had already raised complaints to SCI and OSI regarding the June 2018 retaliation, and both agencies had found Plaintiff's concerns to be unfounded.  (*Id.*)  Plaintiff states this letter was "bogus, defamatory, factually false, intimidating and harassing."  (SAC ¶¶ 1195, 1232, 1473.)  Smith sent a second "harassing" letter on September 23, 2019 that advised Plaintiff to file a complaint at the New York City Human Rights Commission.  (*Id.* ¶¶ 1547-51.)  Plaintiff wrote to Smith to point out the inaccuracies in his letters, but Smith "refused to correct" the letters.  (*Id.* ¶¶ 1563-71.)

The SAC asserts that Defendants' failure to protect Plaintiff against whistleblower retaliation violates New York State whistleblower protection statutes NYLL §§ 215, 740, and 741, and CLS § 75-b.  The SAC also asserts that the communications Plaintiff received from Defendants constitute defamation and amount to fraud in violation of New York law.

### g.  Allegations on Behalf of Students

The SAC alleges that Defendants failed to provide adequate OT services for students at PS 9; that Defendants Witzke and Lantzounis lacked knowledge and experience in special education and used incorrect methodologies; and that Defendant Cullen engaged in "child abuse" by yelling at students and failing to advocate for students.  (See, e.g. *id.* ¶¶ 35, 176-83, 383, 744-48, 950-51, 954-66, 988-94, 1020, 1013-17, 1143, 1251-65.)

2. **Procedural Background**

   a. **EEOC Charge**

On August 1, 2019, Plaintiff completed an online screening with the EEOC, and on September 26, 2019, she participated in a remote intake interview. (*Id.* ¶ 114.) Due to "EEOC administrative problems," Plaintiff's intake interview was "not noticed" by the EEOC, so Plaintiff "delivered the Complaint" to the EEOC on October 31, 2019. (*Id.* ¶ 114-15.) Plaintiff describes October 31, 2019 as the date that the "EEOC filing" was "finaliz[ed]." (*Id.*; *see also* Pl. Opp. Br. at 14.) On November 26, 2019, at what she understood to be the direction of the EEOC, Plaintiff filed a complaint with the Office of Civil Rights. (SAC ¶ 131.) On February 11, 2020, the Office of Civil Rights dismissed the case because Plaintiff had a case pending at the EEOC. On March 31, 2020, Plaintiff signed the formal EEOC Charge of Discrimination. (ECF No. 188-1.) The EEOC Charge asserts claims for age discrimination and for retaliation in violation of Titles II and V of the ADA.[6] (*Id.*) In April 2020, Plaintiff sent the EEOC Charge to the BOE. (SAC ¶ 121.) Plaintiff alleges that the BOE refused to participate in the EEOC's mediation program. (*Id.* ¶ 155.) The EEOC issued Plaintiff a right to sue letter on September 5, 2020. (*Id*. ¶ 117.)

   b. **The Instant Action**

Plaintiff initiated this action on December 3, 2020. (ECF No. 1.) On February 24, 2021, the Court granted Plaintiff's request to file a first amended complaint and extended the deadline for Plaintiff to serve Defendants until June 4, 2021. (ECF No. 10.) On June 3, 2021,

---

[6] The EEOC Charge did not assert claims under Title I of the ADA, which prohibits employment discrimination based on the employee's disability or her relationship with a person with a disability. 42 U.S.C. § 12112(b)(4). *See Valenti v. Massapequa Union Free Sch. Dist.*, 2006 WL 2570871, at *13-14 (E.D.N.Y. Sept. 5, 2006) ("Title I of the ADA does not allow relief for a teacher alleging an adverse employment action resulting from 'advocacy' on behalf of his disabled students."). Plaintiff does not assert claims for age discrimination in this litigation.

Plaintiff filed the first amended complaint, which she denoted as a "pre-service amended complaint." (ECF No. 12.) On June 7, 2021, Plaintiff filed a letter stating she had served the Defendants by delivering the summons and complaint to Defendants' places of work, as well as sending the summons and complaint by priority mail. (ECF No. 13.) On June 11, 2021, Plaintiff filed a revised first amended complaint, again styled as a pre-service complaint. (ECF No. 18.) On the same day, Plaintiff filed Summons Returned Executed for all Defendants. (ECF No. 19.) The Summons Returned Executed included Proofs of Service that indicated that individuals named Ben Gonzalez and Daniel Glatt had served the various Individual Defendants at their places of work on June 4, 2021. (*Id.*)

On June 23, 2021, the Court granted Defendants' request to extend their time to answer the complaint until August 31, 2021 because a cyber security breach had caused the New York City Law Department to lose all technological access. (ECF Nos. 27, 113.)

On August 15, 2021, Plaintiff filed an affirmation and proposed certificates of default for the Clerk of the Court to issue in contemplation of filing motions for default judgments against the Individual Defendants. (ECF Nos. 60-66, 68, 69, 72-91, 100-105.) The Clerk of the Court entered certificates of default as to the Individual Defendants, but these certificates were later vacated per the Court's order because Plaintiff indicated she would file an amended complaint. (ECF Nos. 92-96, 107-111, 129, 167.)

The Court held a conference with the parties on September 10, 2021. (ECF No. 128.) At the conference, Plaintiff stated that she had a "good deal of material" to include in the amended complaint. (ECF No. 133, T. 16:20.) The Court advised Plaintiff that a party is not required to attach documents to a complaint and that a complaint only needs to allege facts

that support the claims made. (*Id.* 16:22-25.) The Court also stated that a complaint is not the proper document to refute anticipated legal arguments. (*Id.* 17:16-19.) The Court ordered Plaintiff to file the SAC by October 4, 2021, a date Plaintiff identified as one she could meet. (*Id.* 19:6-12.) The Court informed Plaintiff that this would be "the last time to amend" her complaint and it reminded her that she could contact the pro se clinic run by the New York Legal Assistance Group to obtain free legal assistance in drafting the SAC. (*Id.* 5:10-21.) The Court also set the briefing schedule for Defendants' anticipated motion to dismiss. (*Id.* 7:1-15.)

In the months following the September 10 conference, Plaintiff requested, and the Court granted, upward of seven extensions of time for filing the SAC, ultimately extending the deadline to December 26, 2021. (*See* ECF No. 167.) Plaintiff then filed numerous iterations of the SAC in late December and early January, and eventually filed what she deemed to be the final SAC on January 24, 2022. (ECF Nos. 177, 178.) Plaintiff filed a letter stating that she would separately file attachments to the SAC. (ECF No. 178.) On January 25, 2022, the Court issued an order accepting the document at ECF No. 177 as the operative SAC despite the fact that it was filed well after the final deadline. (ECF No. 179.) The order further stated that Plaintiff should not file any attachments, and it reminded Plaintiff that "Federal Rule of Civil Procedure 8 provides that the complaint must contain a short and plain statement of the claim." (*Id*.) The order stated that Plaintiff's filing already "exceeds what is required in the rule" and that "no further filings from Plaintiff" would be necessary until after Defendants filed their motion to dismiss. (*Id*.) On February 2, 2022, Plaintiff disregarded the Court's direction and filed fifteen exhibits to the SAC. (ECF Nos. 180, 181.)

On April 1, 2022, Defendants filed a Motion to Dismiss seeking dismissal of the SAC pursuant to Federal Rules of Civil Procedure 8, 12(b)(5), and 12(b)(6).  (ECF No. 186.)  Plaintiff requested, and the Court granted, numerous extensions of time to file her opposition brief, which she ultimately filed on August 31, 2022, after the final deadline for her to do so.  (ECF No. 214.)  Out of excessive solicitude to Plaintiff, the Court determined on November 29, 2022 that it would accept Plaintiff's late-filed brief and set a deadline for Defendants' reply.  (ECF No. 247.)  Defendants filed a timely Reply on December 14, 2022.  (ECF No. 252.)

## LEGAL STANDARDS

### 1.  Federal Rule of Civil Procedure 8(a)(2)

Federal Rule 8(a)(2) requires a plaintiff to make "a short and plain statement of the claim showing that the pleader is entitled to relief."  As the Second Circuit has explained, the statement should be *short* because "unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage."  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  The statement should be *plain* "because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial."  *Id*.  A party's pro se status does not excuse her from compliance with Rule 8.  *See, e.g., Gonzalez v. Wing*, 113 F.3d 1229, at *1 (2d Cir. 1997) (affirming dismissal of pro se complaint for failure to comply with Rule 8); *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (same).

"When a complaint does not comply with the requirement that it be short and plain, the court has the power . . . to dismiss the complaint."  *Salahuddin*, 861 F.2d at 42*.*  A plaintiff

should generally be given leave to amend following a Rule 8 dismissal, but dismissal without leave to amend is proper where prior leave to amend was generously extended and the successive pleading remains prolix and unintelligible. *Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003) (citation omitted); *see also Jones v. Nat'l Commc'ns & Surveillance Networks*, 266 F. App'x 31, 33 (2d Cir. 2008) (affirming dismissal of pro se complaint with prejudice for failure to comply with Rule 8); *Benzo v. N.Y.S. Div. of Hum. Rts.*, 141 F.3d 1151 (2d Cir. 1998) (same).

### 2. Federal Rule of Civil Procedure 12(b)(5)

Rule 12(b)(5) provides for dismissal of a complaint for insufficient service of process. *Hahn v. Office & Prof'l Emps. Int'l Union, AFL–CIO*, 107 F. Supp. 3d 379, 382 (S.D.N.Y. 2015). In considering a Rule 12(b)(5) motion to dismiss, a court must look to matters outside the complaint to determine whether it has jurisdiction. *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016) (citation omitted). It is the plaintiff's burden to establish that service was sufficient. *Khan v. Khan*, 360 Fed. Appx. 202, 203 (2d Cir. 2010) (citations omitted). However, "where a court has not conducted a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Di Pompo v. Mendelson*, 2022 WL 1093500, at *2 (S.D.N.Y. Apr. 7, 2022) (citations omitted). To make a prima facie showing, "the plaintiff must aver facts that, if credited . . ., would suffice to establish jurisdiction over the defendant." *Id.* (citation omitted).

### 3. Federal Rule of Civil Procedure 12(b)(6)

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all well-pleaded facts and draw all reasonable inferences in the light most favorable to the

non-moving party.  *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

Although factual allegations are afforded a presumption of truth, a court is "not bound to

accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (citation omitted).  To survive a Rule 12(b)(6) motion to dismiss, the

complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 555

U.S. at 570).  The complaint must set forth factual allegations that are sufficient "to raise a right

to relief above the speculative level."  *Twombly*, 555 U.S. at 555.

These same standards apply to motions to dismiss complaints filed by pro se

plaintiffs.  *Jenkins v. N.Y.C. Dep't of Educ.*, 2011 WL 5451711, at *3 (S.D.N.Y. Nov. 9, 2011).

However, the court must construe a pro se plaintiff's complaint liberally and interpret it as

raising the strongest arguments it suggests.  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)

(citation omitted).

A district court may dismiss an action sua sponte for failure to state a claim so long as

the plaintiff is given notice of the grounds for dismissal and an opportunity to be heard."  *Grant

v. County of Erie*, 542 F. App'x 21, 24 (2d Cir. 2013) (citation omitted); *see also Komatsu v. NTT

Data, Inc.*, 2016 WL 2889064, at *5 (S.D.N.Y. May 17, 2016) (Schofield, J.), *aff'd*, 730 F. App'x 98

(2d Cir. 2018) (sua sponte dismissing certain of pro se plaintiff's claims).  A Magistrate Judge's

Report and Recommendation recommending that a claim be dismissed constitutes the requisite

notice and opportunity to be heard to allow a district court to dismiss a claim sua sponte.  *E.A.

Sween Co., Inc. v. A & M Deli Express Inc.*, 787 F. App'x 780, 782 (2d Cir. 2019).

<u>**ANALYSIS**</u>

1. <u>**The SAC Should Be Dismissed for Failure to Comply with Rule 8**</u>

The SAC is the textbook definition of a pleading that should be dismissed for failure to comply with Rule 8.  To start, the SAC is not "short."  The SAC and its exhibits total 395 pages, which is so long that Plaintiff alleges she needed to file the pleading in three parts because the Court's filing system could not handle its size.  (*See* ECF No. 178.)  Although the SAC names numerous defendants and covers an eight-year time period, this case is not so complex or involved to justify such a lengthy complaint.  To the contrary, Plaintiff's claims mostly involve allegations of workplace harassment and retaliation, and many of the named Defendants played only minor and discrete roles in the alleged wrongdoing.  However, the SAC is not focused on the alleged wrongdoing.  Rather, it includes many paragraphs concerning OT generally, the inner workings of the DOE, and Plaintiff's opinions about her students and colleagues.  For example, the SAC spends numerous pages discussing Plaintiff's thoughts as to the proper and improper ways to screen for and diagnose dysgraphia.  (*See, e.g.*, SAC ¶¶ 879-972.)  As another example, the SAC sets out the purported clinical significance of a second grader's artwork and misspelling of a word.  (*Id.* ¶¶ 172-77.)  Plaintiff also has reproduced pages upon pages of lengthy emails and letters she has sent and received.  (*See, e.g.*, *id.* ¶¶ 306-08, 497-502, 513-539, 573-624, 633-46, 659-76, 695-747, 1670.)

Plaintiff counters that the SAC needs to be long in order to respond to "accusations" made by Defense counsel.  (Pl. Opp. Br. 26.)  However, as the Court already informed Plaintiff when granting her leave to amend, a complaint is not the proper document to respond to anticipated legal arguments.  *See Shetiwy v. Midland Credit Mgmt.*, 980 F. Supp. 2d 461, 467

(S.D.N.Y. 2013) (explaining that "argumentative" complaints are "routinely dismissed" for failure to comply with Rule 8.)  Plaintiff also argues that the Court gave her permission to file the complaint in a "nonconforming format."  (Pl. Opp. Br. 26)  This is not accurate.  Although the Court ultimately accepted the filing at ECF No. 177 as the operative SAC despite its size and format, the Court never granted Plaintiff "permission" to violate Rule 8, and in fact, the Court warned Plaintiff that her complaint must comply with the rule.

It is well within the Court's discretion to dismiss the pleading pursuant to Rule 8 for its length alone.  *See, e.g. Blakely v. Wells*, 209 Fed. App'x. 18, 20 (2d Cir. 2006) (affirming district court's dismissal of a 57-page complaint for prolixity); *Nygard v. Bacon*, 2021 WL 3721347, at *7 (S.D.N.Y. Aug. 20, 2021) (Schofield, J.) (dismissing "lengthy" 144-page complaint pursuant to Rule 8).  Indeed, such a long complaint must be dismissed to avoid placing an "unjustified burden" on Defendants by requiring them to respond to it.  *Salahuddin*, 861 F.2d at 42.

In addition to being prolix, the SAC is not "plain."  The SAC does not contain simple, concise, and direct allegations, and it does not follow a coherent narrative.  Rather, the SAC is rambling and repetitive, jumping back and forth in time and moving from claim to claim in a disjointed fashion.  It also contains numerous hyperbolic accusations that have no apparent bearing on Plaintiff's actual claims.  For example, the SAC asserts that it would constitute disability discrimination to deny employment to someone for having two left feet without ever alleging that Plaintiff has two left feet or was discriminated against on that basis.  (*Id.* ¶¶ 459-61.)  The SAC also consistently uses words such as "trauma" and "abuse" to describe things such as receiving denials to her FOIL requests because she disagrees with the outcome. (*See, e.g.*, *id.* ¶¶ 1581, 1675).

Complaints such as this one that "ramble, . . . needlessly speculate, accuse and condemn," and that "contain circuitous diatribes far removed from the heart of the claim[s]," do not comport with Rule 8 and "must be dismissed." *Coon v. Benson*, 2010 WL 769226, at *3 (S.D.N.Y. March 8, 2010) (quotation marks and citation omitted); *see also Prezzi*, 469 F.2d at 692 (affirming dismissal of pro se complaint that contained "unrelated and vituperative charges that defied comprehension"); *Shetiwy*, 980 F. Supp. 2d at 467 n.8 (collecting cases that have dismissed complaints that were "unintelligible" and "disjointed").

The SAC is simply too long and confusing to put Defendants on notice of the claims against them, and it is not clear how Defendants could properly answer such a pleading. *See, Nygard*, 2021 WL 3721347, at *7 (finding complaint was too "lengthy, conclusory, and confusing to put Defendant on notice of the claims against him"). Therefore, I respectfully recommend that the SAC be dismissed in its entirety for failure to comply with Rule 8.

As discussed below, in the event the SAC is not dismissed in its entirety for failure to comply with Rule 8, most claims should be dismissed with prejudice pursuant to Rule 12(b)(6).

## 2. **The Complaint Should Not Be Dismissed Pursuant to Rule 12(b)(5)**

Before turning to Defendants' Rule 12(b)(6) arguments, I first address Defendants' jurisdictional argument that the Individual Defendants were not properly served and the Court thus lacks jurisdiction over them. Defendants argue that New York law requires that service be effectuated "by any person not a party to the litigation," but the SAC does not allege that someone other than Plaintiff effectuated service. (Def. Br. 7.) This argument is unavailing because the Proofs of Service filed on the docket state that individuals named Ben Gonzalez and Daniel Glatt (i.e. individuals other than Plaintiff) served the Individual Defendants on June

4, 2021.  Defendants do not contest that it would be sufficient under New York law for Plaintiff to have served the Individual Defendants in the manner described in the Proofs of Service, nor have Defendants submitted affidavits or other evidence to rebut the assertions made in the Proofs of Service.  Plaintiff has therefore made a prima facie showing that service was proper, which is sufficient at this stage.  *Di Pompo*, 2022 WL 1093500, at *2.

Therefore, while I recommend that the SAC be dismissed for several reasons, improper service is not one of them.

### 3. Numerous Claims Should Be Dismissed Pursuant to Rule 12(b)(6)

In the event the SAC is not dismissed with prejudice for failure to comply with Rule 8, I recommend that certain claims and Defendants be dismissed with prejudice pursuant to Rule 12(b)(6), as outlined below.

#### a. Defendant SCI is a Non-Suable Entity and Should be Dismissed

Under Section 396 of the New York City Charter, "New York City departments, as distinct from the City itself, lack the capacity to be sued."  *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 160 (2d Cir. 2008) (citation omitted).  Because SCI is "a City agency that is independent of the DOE" it and its employees "lack capacity to be sued."  *Smith v. City of New York*, 130 F. Supp. 3d 819, 827-28 (S.D.N.Y. 2015), *aff'd*, 664 F. App'x 45 (2d Cir. 2016) (citing *Ximines*, 516 F.3d at 160).  Thus, the Court should dismiss claims against SCI and against SCI Commissioner Coleman and Deputy Commissioner Schlachet, to the extent claims are brought against them in their official capacities.

**b.  Plaintiff Failed to State a Claim Pursuant to Title VII**

Title VII of the Civil Rights Act prohibits employment discrimination against an employee based on the person's "race, color, religion, sex, or national origin."  42 U.S.C.A. § 2000e-2.  The protections of Title VII extend only to discrimination based on these five characteristics.  The SAC contains no allegations that Plaintiff was discriminated or retaliated against based on her race, color, religion, sex, or national origin, nor because of her association with, or advocacy on behalf of, any person due to that person's race, color, religion, sex, or national origin.  None of these categories is discussed in the SAC at all.  Rather, Plaintiff's claims for retaliation turn on her advocacy on behalf of students with disabilities.  Accordingly, Plaintiff has failed to state a claim pursuant to Title VII.  *See Chiesa v. N.Y.S. Dep't of Lab.*, 638 F. Supp. 2d 316, 324 (N.D.N.Y. 2009) (dismissing claims brought pursuant to Title VII for failure to state a claim where the record in the case pertained only to disability).

Although Defendants did not argue that Plaintiff failed to state a Title VII claim, the court may dismiss the claim sua sponte because Plaintiff has been given notice of the ground for dismissal by way of this Report, and she will have an opportunity to be heard on the issue in her objections to the Report.  *See E.A. Sween Co., Inc.*, 787 F. App'x at 782.

Additionally, Plaintiff does not allege that she filed a charge with the EEOC claiming violations of Title VII.  A failure to file a charge with the EEOC precludes her from filing a Title VII claim in this Court.  *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015).  Although the burden of proving Title VII exhaustion lies with defendants, *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018), non-exhaustion in this instance is clear from the EEOC charge itself, *Holmes v. Fresh Direct*, 2015 WL 4885216, at *4 (E.D.N.Y. Aug. 5, 2015)

(explaining that courts can take judicial notice of "public records and reports of relevant administrative bodies" to determine whether a Title VII claim should be dismissed for lack of exhaustion).  Accordingly, any Title VII claims should be dismissed with prejudice.

      **c.**    <u>**Plaintiff's ADA and Rehabilitation Act Claims Should by Dismissed Against the Individual Defendants and as to Untimely Allegations**</u>

The SAC asserts claims of retaliation pursuant to Titles II and V of the ADA and Section 504 of the Rehabilitation Act.  Title II of the ADA and Section 504 of the Rehabilitation Act prohibit discrimination based on disability.  42 U.S.C. § 12132 (ADA); 29 U.S.C. § 794(a) (Rehabilitation Act).  Both statutes provide that remedies are available "to any person" alleging such discrimination.  42 U.S.C. § 12133 (ADA); 29 U.S.C. § 794a(a)(2) (Rehabilitation Act).  Both statutes also prohibit retaliation against an individual for opposing any act or practice made unlawful by the Act.  42 U.S.C. § 12203(a) (ADA Title V)[7]; 29 U.S.C. § 794(d) (Rehabilitation Act); *see also Dodd v. City Univ. of New York*, 489 F. Supp. 3d 219, 245, 267 (S.D.N.Y. 2020).

As noted above, the gravamen of Plaintiff's complaint is that she engaged in protected activity on behalf of students with disabilities by informing parents of services available to students via the 2018 Letter and by filing NYSED complaints in 2014 and 2019 that raised concerns as to violations regarding the provision of special education services to students and that she was retaliated against because of this activity.  Courts in this Circuit have consistently recognized that advocacy on behalf of special education students constitutes protected activity under the ADA and the Rehabilitation Act.  *Lopez v. N.Y.C. Dep't of Educ.*, 2020 WL 4340947, at

---

[7] Although Title II of the ADA does not contain a statutory proscription against retaliation, "[Title II] ADA retaliation claims . . . are governed by [ADA] Title V."  *Warren v. Goord*, 2006 WL 1582385, at *17 (W.D.N.Y. May 26, 2006), *aff'd*, 2008 WL 5077004 (2d Cir. Nov. 26, 2008).

*11 (S.D.N.Y. July 28, 2020) (collecting cases). Plaintiff alleges that her engagement in this protected activity resulted in Defendants retaliating against her by creating a hostile work environment such as by micromanaging her; terminating her work as an occupational therapist in 2018; preventing her from obtaining work by including problematic codes about her in the computer system used to locate and engage therapists; and filing complaints against her to SCI and OSI; denying her whistleblower protection; and providing inadequate responses to her FOIL requests.[8]

### i. Plaintiff has Standing to Bring Claims Regarding Injuries She Suffered as a Result of Defendants' Retaliation, But Lacks Standing to Assert Claims for Injuries to her Students

Article III of the Constitution limits the jurisdiction of the federal courts to the resolution of "cases" and "controversies." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). To ensure that Article III is satisfied, a plaintiff must show that she has "standing" to bring suit, that is, that she has directly suffered an injury in fact that is traceable to the defendant and that can be redressed by the court. *Id.* A plaintiff must "demonstrate standing for each claim and form of relief sought." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir.

---

[8] For the sake of clarity, the Court notes that although the SAC and briefing occasionally refer to disability discrimination, as the Court understands the SAC, it does not assert claims for *discrimination*, but rather for *retaliation*. In order to state a claim for disability discrimination, the complaint must at least allege that the plaintiff was discriminated against because of her disability, *Natofsky v. City of New York*, 921 F.3d 337, 344 (2d Cir. 2019), or because of the disability of an individual with whom the plaintiff has a relationship, *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 432 (2d Cir. 2016). A claim of discrimination based on a plaintiff's relationship with a disabled individual is different in kind than in the context of retaliation for advocacy on behalf of disabled individuals, and in particular, such claims are limited to circumstances where the defendant perceived that the plaintiff's relationship with a disabled person would: (1) be costly to the discriminating party; (2) cause the plaintiff to be predisposed to develop the disability; or (3) cause the plaintiff to be inattentive at work. *Id.* at 432. Associational *discrimination* claims cannot be brought on the basis that the plaintiff is "advocating" on behalf of a disabled person. *Valenti*, 2006 WL 2570871, at *14 (collecting cases). The SAC does not assert that Plaintiff faced discrimination based on her own disability or based on any of the limited circumstances that could give rise to a claim for associational disability discrimination. Rather, as discussed above, Plaintiff's ADA and Rehabilitation Act claims are based on alleged *retaliation* for Plaintiff's advocacy on behalf of her students.

2011) (citation omitted).  Plaintiffs also must comply with prudential limitations on standing, including the rule that a party cannot assert claims "on the legal rights or interests of third parties," but rather "must assert his own legal rights and interests."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Defendants argue Plaintiff lacks standing to assert ADA and Rehabilitation Act retaliation claims because she was an independent contractor and not an employee.  (Def. Opp. Br. 16.) Defendants are incorrect.  The relevant retaliation provisions of the ADA and Rehabilitation Act apply to "any person," and Plaintiff does not need to show that she is an employee to assert claims under those statutes based on alleged protected activity on behalf of disabled students. *Johnson v. S. Conn. State Univ.*, 2004 WL 2377225, at *6 (D. Conn. Sept. 30, 2004) (holding that dismissal of Rehabilitation Act claims would not be appropriate even assuming the plaintiff was not an employee); *Volpe v. N.Y.C. Dep't of Educ.*, 195 F. Supp. 3d 582, 593 (S.D.N.Y. 2016) (explaining that even though the discrimination occurred in the context of the plaintiff's employment, the ADA Title V retaliation claim was not "one for discrimination in employment" where the plaintiff opposed practices that constituted a violation of Title II of the ADA). Further, and in any event, it is premature at this stage to determine whether Plaintiff was an employee or independent contractor because that determination is fact intensive and turns in large part on the degree of control exercised over her work by the DOE.  *See Johnson*, 2004 WL 2377225 at *5.

Defendants also argue that Plaintiff lacks standing to assert claims for retaliation based on her advocacy on behalf of students, because they argue such claims rest on "the legal rights or interests of third parties," i.e. Plaintiff's students.  (Def. Br. 17.)  This argument is

unpersuasive.  A plaintiff does not need third-party standing to assert such claims.  Because

Title II of the ADA and Section 504 of the Rehabilitation Act apply to "any person," the Second

Circuit has recognized associational standing for both statutes.  *Innovative Health Sys., Inc.*

*v. City of White Plains*, 117 F.3d 37, 47 (2d Cir. 1997), *recognized as superseded on other*

*grounds by Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 171 n.7 (2d Cir. 2001) (discussing Title II of

the ADA); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 279 (2d Cir. 2009) (Wesley, J.,

concurring and delivering opinion of the court as to associational standing under Section 504)

(discussing Section 504 of the Rehabilitation Act); *see also Doe v. Westport Bd. of Educ.*, 2020

WL 6382639, at *3 (D. Conn. Oct. 30, 2020) (discussing both statutes).  Plaintiff thus has

standing to assert a claim for any injury she faced based on her engagement in protected

activity.

However, to the extent the SAC can be read to assert claims based on injuries suffered

by Plaintiff's *students* as opposed to injuries Plaintiff herself suffered, Defendants are correct

that Plaintiff lacks standing to bring such claims.  This is because a plaintiff "not seeking to

remedy any harm to herself" lacks standing.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2206

(2021); *see also Loeffler,* 582 F.3d at 279 (Wesley, J., concurring) (non-disabled parties bringing

associational discrimination claims must prove that they suffered an independent injury);

*Worrell v. Cortines*, 1995 WL 1079717, at *7 (E.D.N.Y. Mar. 26, 1995) (teacher lacked standing

to sue for alleged wrongs inflicted on her students despite the teacher experiencing "indirect

effects" of such injuries).  Accordingly, any claims based on injuries to people other than

Plaintiff should be dismissed for lack of standing.

Defendants also argue that Plaintiff's ADA claims should be dismissed for failure to exhaust administrative remedies because the SAC does not state "with specificity" that Plaintiff brought these claims before the EEOC in advance of bringing this action. (Def. Br. 11-12.) This argument is unpersuasive because Plaintiff's claims under Title II and V of the ADA and her claims under the Rehabilitation Act are not subject to any exhaustion requirement. *See Volpe*, 195 F. Supp. 3d at 593 (no exhaustion requirement for ADA Title II claims or ADA Title V claims based on opposition to behavior implicated by Title II); *Redman v. N.Y.S. Dep't of Corr. Servs.*, 2011 WL 5119574, at *4 (S.D.N.Y. Oct. 12, 2011) (no exhaustion requirement for Rehabilitation Act claims).

### ii. Plaintiff's ADA and Rehabilitation Act Claims Can Be Brought Only Against the BOE, and Only to the Extent they are not Time-Barred

Although Plaintiff has standing to assert claims of retaliation, her claims should be circumscribed in two significant ways. First, the relevant statutes do not provide for suits against individuals (as opposed to entities). *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *see also Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022) (affirming dismissal of Rehabilitation Act claims against school district officials in their individual capacities); *Darcy v. Lippman*, 356 Fed. Appx. 434, 437 (2d Cir. 2009) (holding that the plaintiff could not maintain ADA or Rehabilitation Act claims against defendants in their individual capacities). Plaintiff argues that she can bring claims against individual defendants because her claims are not "in the employment context." (Pl. Opp. Br. 10). This argument is unavailing because the rule that there is no individual liability under the ADA or the Rehabilitation Act extends beyond the employment context. *See, e.g.*, *Goe*, 43 F.4th 35 (dismissing claims brought by students); *Garcia*, 280 F.3d at 107 (same). Therefore, the ADA and Rehabilitation Act claims

should be dismissed with prejudice as to the Individual Defendants to the extent the claims are brought against them in their individual capacities.

Moreover, to the extent Plaintiff asserts these claims against the Individual Defendants in their official capacities, such claims should be dismissed because they are duplicative of the claims against the BOE, which is the "real party in interest." A*M. ex rel. J.M. v. NYC Dep't of Educ.*, 840 F. Supp. 2d 660, 678 (E.D.N.Y. 2012), *aff'd sub nom. Moody ex rel. J.M. v. NYC Dep't of Educ.*, 513 F. App'x 95 (2d Cir. 2013) (dismissing ADA and Rehabilitation Act claims brought against the school chancellor, district superintendent, and principal in their official capacities, because such claims were "merely duplicative of the claims against the DOE"); *see also Hallett v. N.Y.S. Dep't of Corr. Servs.*, 109 F. Supp. 2d 190, 200 (S.D.N.Y. 2000) (dismissing Rehabilitation Act claims against individual defendants in their official capacities because the plaintiff was able to assert those claims against the state entities); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 288 (2d Cir. 2003) ("The real party in interest in an official-capacity suit is the government entity."). Therefore, the ADA and Rehabilitation Act claims should be dismissed with prejudice as to the Individual Defendants in their official capacities as well.

Second, Plaintiff's ADA and Rehabilitation Act claims may only be asserted to the extent they are timely.  In New York, claims brought pursuant to Title II and V of the ADA, as well as Rehabilitation Act claims, are subject to a three-year statute of limitations.  *See Volpe*, 195 F. Supp. 3d at 593 (ADA); *Harris v. N.Y.C. Hum. Res. Admin.*, 2022 WL 3100663, at *5 n.7 (S.D.N.Y. Aug. 4, 2022) (Rehabilitation Act).  Since Plaintiff filed her initial complaint on December 3, 2020, any ADA or Rehabilitation Act claims for retaliatory actions that occurred before

December 3, 2017 are untimely.  Thus, Plaintiff may only sue for retaliation occurring on or after December 3, 2017 absent an exception.

Plaintiff asserts that several exceptions apply that would allow her to assert claims for retaliation occurring before December 3, 2017, but none of her arguments is availing.  (*See* Pl. Opp. Br. 9.)  To start, the continuing violations doctrine, which applies to "a series of separate acts, some of which occur within the applicable statute of limitations, that collectively constitute one unlawful act," does not apply here.  *Am. Council of Blind of N.Y., Inc. v. City of New York*, 495 F. Supp. 3d 211, 245-46 (S.D.N.Y. 2020) (citations omitted).  The principle retaliatory action that took place prior to December 3, 2017 was the problem coding in 2014. This is a discrete act that is tied to 2014 protected activity and is distinct from any conduct that took place three or more years later at a different school at the hands of different individuals.

Tolling also would not apply by virtue of the filing of the EEOC charge, because, as discussed above, the claims of retaliation in violation of the ADA and Rehabilitation Act do not require exhaustion.  *See Volpe*, 195 F. Supp. 3d at 593; *Redman*, 2011 WL 5119574, at *4. Similarly, while Plaintiff alleges that the EEOC delayed in issuing a Right to Sue letter, any delay by the EEOC would not warrant equitable tolling of Plaintiff's ADA and Rehabilitation Act claims. Equitable tolling applies where a party was "prevented in some extraordinary way" from exercising her rights.  *Iavorski v. U.S. I.N.S.*, 232 F.3d 124, 129 (2d Cir. 2000) (citation omitted). Any delay by the EEOC in issuing a Right to Sue letter did not prevent Plaintiff from commencing this action because Plaintiff did not need a Right to Sue letter to assert her ADA and Rehabilitation Act claims.  *See Lee v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 1994 WL 260713, at *2 (S.D.N.Y. June 9, 1994) (holding that the EEOC's year-long delay in providing the

Right to Sue letter did not warrant equitable tolling of the limitations period for claims that were "unrelated to any activity (or lack of activity) of the EEOC").  While Plaintiff may have mistakenly believed that she needed to wait for the Right to Sue letter before commencing litigation, her lack of knowledge of the law also does not warrant equitable tolling.  *O'Connor v. Pan Am*, 1990 WL 118286, at *5 (S.D.N.Y. May 4, 1990) (citation omitted).

Plaintiff also argues equitable tolling applies because Defendants stonewalled her attempts to learn more information about the adverse actions taken against her, but any such stonewalling would not warrant equitable tolling because a Plaintiff does not need to learn her employer's reasons for taking adverse actions in order to initiate litigation against the employer.  *DD v. Lincoln Hall*, 2010 WL 695027, at *7 (S.D.N.Y. Feb. 19, 2010) (defendants' "stonewalling " in pre-litigation discovery did not warrant equitable tolling because the defendants' refusal to provide documents did not prevent plaintiffs from filing a lawsuit).

The untimely claims similarly cannot be rescued by "COVID Time Tolling," (Pl. Opp. Br. 25), because any delays caused by the COVID-19 pandemic, which began in 2020, would not explain Plaintiff's delay in bringing an action for claims accruing prior to the start of the pandemic.  Moreover, the Executive Orders signed by the New York Governor in 2020 that tolled deadlines to commence certain state actions had no effect on the statutes of limitations to commence a federal action for federal claims and thus are not relevant here.  *Verne v. N.Y.C. Dep't of Educ.*, 2022 WL 4626533, at *6 (S.D.N.Y. Sept. 30, 2022) (citations omitted).

Accordingly, to the extent Plaintiff seeks to assert ADA or Rehabilitation Act claims for any incident occurring prior to December 3, 2017, such claims are untimely and should be dismissed with prejudice.

### d. **Plaintiff's FLSA Claims Are Time-Barred**

The SAC alleges that Defendants violated the FLSA by misclassifying Plaintiff as an independent contractor rather than an employee, and therefore depriving Plaintiff of a regular salary, pay for certain tasks, and benefits such as paid sick time and vacation time. (SAC ¶¶ 50-52.) The SAC also asserts that Plaintiff performed uncompensated tasks and was obstructed from viewing logs showing how much time she spent on uncompensated tasks. (*Id.* ¶¶ 53-55.)

The limitations period for FLSA claims is two years or, if the violation was willful, three years. 29 U.S.C. § 255(a); *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 199 n. 4 (2d Cir. 2013). A violation of the FLSA is willful if the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by" the Act. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011) (citations omitted). The complaint must allege facts that give rise to a plausible inference that a defendant willfully violated the FLSA for the three-year exception to apply. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319-20 (2d Cir. 2021) (affirming dismissal of claims occurring outside the two-year limitations period where the complaint made only conclusory allegations that the FLSA violations were willful).

The SAC does not assert willful FLSA violations because the SAC does not plausibly assert that Defendants knew or should have known that it was impermissible for them to classify Independent Providers as independent contractors. Thus, Plaintiff's FLSA claims are subject to a two-year limitations period, and only claims accruing after December 3, 2018 fall within the

limitations period.[9]  *See Whiteside*, 995 F.3d at 319-20.  Because Plaintiff had already been terminated by that date, the SAC does not assert any FLSA violations occurring within the limitations period.  *See Preacely v. AAA Typing & Resume, Inc.*, 2015 WL 1266852, at *6 (S.D.N.Y. Mar. 18, 2015) (dismissing FLSA claims as time-barred where plaintiff's employment had been terminated more than two years prior to the filing of the action).

Notably, "the statute of limitations is ordinarily an affirmative defense that the defendant must raise at the pleadings stage," *Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011), and Defendants did not raise this defense in its motion to dismiss papers.  However, "district courts may dismiss an action sua sponte on limitations grounds in certain circumstances," including where "the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted."  *Id.* (citing *Leonhard v. United States*, 633 F.2d 599, 609 n. 11 (2d Cir.1980); *see also Gorokhovsky v. Stefantsova*, 2022 WL 17487019, at *3 (S.D.N.Y. Dec. 7, 2022) (dismissing claims sua sponte on statute of limitations grounds).  Here, the facts supporting the limitations defense are set forth in the SAC, which alleges that Plaintiff was terminated in June 2018 and was not able to work for the DOE after that date.  Plaintiff will have the opportunity to submit objections to this Report, and thus she will have an opportunity to be heard on this issue before any claims are dismissed.  *See E.A. Sween Co., Inc.*, 787 F. App'x at 782 (magistrate judge's report recommending dismissal gave the plaintiff notice that the court was considering dismissal and provided plaintiff "an opportunity to be heard on the issue").  Thus, the FLSA claims should be dismissed as time barred.

---

[9] Plaintiff's filing of a charge at the EEOC did not toll the statute of limitations on the FLSA claim because the FLSA does not contain an exhaustion requirement.  *Scott v. City of New York*, 592 F. Supp. 2d 386, 399 (S.D.N.Y. 2008) (quoting *Barrentine v. Arkansas–Best Freight Sys.,* 450 U.S. 728, 740 (1981)).

Additionally, liability under the FLSA is limited to "employer[s]." *Fernandez v. HR*

*Parking Inc.*, 407 F. Supp. 3d 445, 450 (S.D.N.Y. 2019) (citing 29 U.S.C. § 216(b), (e)(2)).  While

the SAC alleges that the BOE was Plaintiff's "employer," it does not plausibly allege that the

Individual Defendants—most of whom worked in DOE departments completely unrelated from

Plaintiff's work—were Plaintiff's employers for purposes of the FLSA.  *See Park v. Sancia*

*Healthcare Inc.*, 2020 WL 3440096, at *4 (S.D.N.Y. June 23, 2020) (deeming allegations

insufficient for FLSA liability where the complaint did not indicate that the individual

defendants were the plaintiff's employers for FLSA purposes); *Maldonado Juarez v. Butterfield*

*Catering Inc.*, 2020 WL 6945944 (S.D.N.Y. Nov. 25, 2020) (deeming insufficient the "threadbare"

allegations that the individual defendants were plaintiff's employers for FLSA purposes).  This is

an additional reason to dismiss the FLSA claims against the Individual Defendants.

### e. State and Municipal Law Claims Should Be Dismissed Against the BOE and its Officers for Failure to Provide a Notice of Claims

Plaintiff asserts several causes of action under state and municipal law against all

Defendants.  Specifically, the SAC alleges violations of the NYSHRL, the NYCHRL, N.Y.C.

Administrative Code § 8-101 et seq; the NYLL §§ 740, 741, 215, and 650; and CSL § 75-b, as well

as claims for defamation and fraud.

Section 3813(1) of the New York Education Law requires a plaintiff bringing any claim

against a school district, board of education, or any officer thereof to present a written notice

of the claim to the governing body of the school board within three months of the accrual of

the claim.  N.Y. Educ. Law § 3813(1).[10]  This notice requirement applies to all state and

_____

[10] The parties at times conflate the requirements of § 3813(1) with those of § 3813(2).  Section 3813(2) provides
that the notice of claims requirement also applies to any claims sounding in tort that are brought against teachers

municipal claims, including "to causes of action sounding in discrimination, retaliation, and defamation." *Smith v. N.Y.C. Dep't of Educ.*, 808 F. Supp. 2d 569, 578 (S.D.N.Y. 2011) (collecting cases); *see also United States*, 2017 WL 435940, at *6 (notice of claim requirement applies to "claims against school districts and their officers under the NYSHRL and NYCHRL").[11]  Under Section 3813(1), the presentment of a written claim to the governing body of a school board within three months of the accrual of a claim is a condition precedent to commencement of any action under New York law against that school board or any officer thereof.  *Id*.  The notice must state "the nature of the claim" and "the time when, the place where and the manner in which the claim arose."  *Rettino v. N.Y.C. Dep't of Educ.*, 2020 WL 4735299, at *5 (S.D.N.Y. Aug. 14, 2020).  The notice must be "presented to the governing body of said district or school within three months after the accrual of such claim."  *Id.* (citing N.Y. Educ. Law § 3813).  The requirement does not include federal claims.  *Courtemanche v. Enlarged City Sch. Dist. of City of Middletown, N.Y.*, 686 F. Supp. 1025, 1032 (S.D.N.Y. 1988).  Section 3813(1) also does not require that a notice of claim be filed on employees of school districts or boards who are not

---

and administrative staff of the school board where the tort was committed by that person in the scope of her employment.  N.Y. Educ. Law § 3813(2).  Section 3813(1) is narrower than section 3813(2) in that it only applies to claims against school districts and their officers, whereas section 3813(2) also applies to teachers and staff; but section 3813(1) is broader than section 3813(2) in that it is not limited to claims founded upon tort.  *See United States v. N.Y. Dep't of Educ.*, 2017 WL 435940, at *6 (S.D.N.Y. Jan. 31, 2017), *report and recommendation adopted*, 2017 WL 1319695 (S.D.N.Y. Apr. 4, 2017).

[11] Plaintiff notes that the New Jersey notice of claims requirement does not apply to civil and human rights actions. (Pl. Opp. Br. at 12).  The New Jersey statute is not at issue here, and it is well settled that the relevant New York provision applies to civil and human rights actions.  *Id.* at *6 (collecting cases).  Plaintiff also argues that the notice of claims requirement does not apply to claims sounding in tort.  This is not correct.  *See Smith*, 808 F. Supp. 2d at 578 (collecting cases); *cf. Tyrrell v. Seaford Union Free Sch. Dist.*, 792 F. Supp. 2d 601, 635-36 (E.D.N.Y. 2011) (holding that tort claims are "excepted from" § 3813(1)'s requirements but must instead comply with the identical notice requirements of N.Y. Gen. Municipal Law § 50–e).  Plaintiff also cites *Felder v. Casey*, 487 U.S. 131 (1988) for the proposition that the notice of claims requirement is preempted.  However, that case is inapposite because it considered a different law (a Wisconsin notice-of-claim statute) and an entirely different situation (preemption as to Section 1983 actions brought in state court).

officers thereof. *Spencer v. City of New York*, 2007 WL 1573871 at *3 (S.D.N.Y. May 30, 2007). The Law not only requires that the notice of claims be provided, but also that it appear from the face of the complaint that the plaintiff filed a timely notice of claim. *Id.*; *Santiago v. Newburgh Enlarged City Sch. Dist.*, 434 F. Supp. 2d 193, 196 (S.D.N.Y. 2006).

"An EEOC charge can suffice as a substitute for a notice of claim 'only under the rare and limited circumstance where the EEOC charge puts the school district on notice of the precise claims alleged, is served on the governing board of the district (and not a different arm of the district), and is served within the statutory time period." *Rettino*, 2020 WL 4735299, at *5 (citation omitted).

Here, the SAC does not allege that Plaintiff filed a timely notice of claims. To the contrary, the SAC dismisses the notice requirement as a "scam." (SAC ¶ 98.) The SAC asserts that Plaintiff's EEOC charge fulfilled any notice requirement, (*id.* ¶ 92), but the SAC does not allege that the EEOC charge was sufficient to put the school district on notice of the precise claims alleged. Indeed, none of Plaintiff's state or municipal law causes of action were raised in the EEOC charge, (ECF No. 188-1), and the EEOC charge was thus insufficient to put Defendants on notice of the precise state and municipal claims alleged in the SAC. *See Grenzig v. Sachem Sch. Dist.*, 2014 WL 11191093, at *3 (E.D.N.Y. Feb. 11, 2014) (finding plaintiff's EEOC charge, which asserted only NYSHRL and NYCHRL claims, did not provide notice as to plaintiff's other claims and could not act as a substitute to the notice of claims as to those claims).

Even if Plaintiff's EEOC charge was sufficient to constitute a notice of claims, it would not constitute a timely notice of claims. The notice must be "presented to the governing body of said district or school within three months after the accrual of such claim." N.Y. Educ. Law

§ 3813(1). It is not sufficient for a litigant to "serve[] a notice of claim at some point before filing a lawsuit. . . . Rather, the test is whether she did so within ninety days of the date when a particular claim accrued." *Williams v. N.Y.C. Dep't of Educ.,* 2019 WL 4393546, at *18 (S.D.N.Y. Aug. 28, 2019). The SAC asserts that Plaintiff served the BOE with the EEOC charge on or about April 2020. (SAC ¶ 121.) Therefore, if Plaintiff's EEOC charge constituted a substitute for a notice of claims, it would only provide notice for claims accruing in the three months preceding April 2020. In other words, assuming Plaintiff served the BOE on April 1, 2020, the EEOC charge would only constitute notice as to claims accruing on or after January 2, 2020. There are no allegations in the SAC that could give rise to state or municipal claims accruing on or after January 2, 2020.[12] Therefore, even if the EEOC filing constituted a notice of claims, the notice would be untimely because the charge was filed more than three months after Plaintiff's claims accrued.

Because Plaintiff did not present a timely notice of claims as required by state law, Defendants' motion to dismiss Plaintiff's state and municipal claims should be granted as to the BOE and any officers thereof.

The Court must determine which of the Individual Defendants constitute "officers" of a school district or board such that a notice of claims was required as to them. The term "school officer" is defined in the New York Education Law as:

---

[12] The only allegation in the SAC occurring after January 2020 is that Defendants used "false" reports in their submissions to the EEOC in May 2020. (*Id.* ¶ 231.) As discussed below, this cannot form the basis of a defamation claim, because statements to the EEOC are made "in the course of a . . . quasi-judicial proceeding" and are "under the protection of absolute immunity." *Bernstein v. Seeman*, 593 F. Supp. 2d 630, 636 (S.D.N.Y. 2009); *see also Allen v. St. Cabrini Nursing Home, Inc.*, 2001 WL 286788, at *6 (S.D.N.Y. Mar. 9, 2001). The incident also cannot form the basis of a fraud claim because Plaintiff did not allege that these statements were made to her or that she relied on them. *See Cummings v. City of New York*, 2020 WL 882335, at *13-14 (S.D.N.Y. Feb. 24, 2020) (holding the plaintiff failed to plead a fraud claim as to statements made to OSI).

> [A] clerk, collector, or treasurer of any school district; a trustee; a member of a board of education or other body in control of the schools by whatever name known in a . . . city school district; a superintendent of schools; a district superintendent; a supervisor of attendance or attendance officer; or other elective or appointive officer in a school district whose duties generally relate to the administration of affairs connected with the public school system."

N.Y. Educ. Law § 2(13).

Under this definition, Defendants Lantzounis (district-wide OT Supervisor), Lees (OSI Director), Rodi (Director at DOE's Office of Employee Relations), Epstein (Director at DOE's ORS), and Van Biema (Director at DOE's ORS) are clearly "school officers" subject to the notice of claims requirement. *See Bertuzzi v. Copiague Union Free Sch. Dist.*, 2020 WL 5899949, at *21 (E.D.N.Y. Mar. 9, 2020), *report and recommendation adopted as modified*, 2020 WL 3989493 (E.D.N.Y. July 15, 2020) (district Foreign Language Coordinator was a "school officer" subject to the notice of claims requirement); *Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.*, 690 F. Supp. 2d 115, 127 (W.D.N.Y. 2010) (Director of Human Resources for the district is "school officer" subject to the notice of claims requirement); *Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355 (W.D.N.Y. 2010) (Sexual Harassment Complaint Officer was "school officer" subject to the notice of claims requirement because he held a district-wide position). Accordingly, Plaintiff's state and municipal claims should be dismissed with prejudice against the BOE and Defendants Epstein, Van Biema, Rodi, Lantzounis, and Lees for failure to provide a timely notice of claims.

By contrast, Defendants Witzke (school principal) and Cullen (teacher) are not "school officers" and no notice of claims was required for them. *See, Carlson*, 679 F. Supp. 2d at 367 (school principal is not a "school officer.") As to Defendants Smith, Baranello, and Busetti (all within DOE's OGC), and Defendants Coleman and Schlachet (SCI Commissioner and Deputy Commissioner), it is not clear without further information regarding these positions whether

they qualify as "school officers."  Since the parties have not briefed the issue, the Court

assumes without deciding that these individuals are not "school officers" and that no notice of

claims was required for them.  As to these defendants, Plaintiff's state and municipal claims

should not be dismissed for failure to provide a timely notice because no such notice was

required.  *Id.*  However, as discussed below, most of Plaintiff's state and municipal claims

should be dismissed as to these defendants for other reasons.

> **f.**  **Plaintiff's NYSHRL and NYCHRL Claims Should be Limited to Claims Brought against Non-School Officers for their Actual Participation in Alleged Acts of Retaliation**

The SAC asserts NYSHRL and NYCHRL claims for retaliation and retaliatory hostile work

environment based on the same allegations that form the basis of Plaintiff's ADA and

Rehabilitation Act claims, discussed above.  Like the ADA and Rehabilitation Act, the NYSHRL

and NYCHRL prohibit retaliation against an individual for opposing practices that are forbidden

by the statutes.  *See* N.Y. Exec. § 296(7) (NYSHRL); N.Y.C. Admin. Code § 8-107(7) (NYCHRL).

However, these statutes differ from their federal counterparts in certain ways, and the NYCHRL

in particular is construed more broadly in favor of plaintiffs and should be considered

separately from state and federal law.  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715

F.3d 102, 109 (2d Cir. 2013).  To state a claim for retaliation under either statute, the plaintiff

must, at the very least, allege that as a result of her engagement in protected activity, the

defendant engaged in conduct that was reasonably likely to deter a person from engaging in

the protected activity.  *Id.* (stating the more liberal NYCHRL standard).

The NYSHRL and NYCHRL anti-retaliation provisions impose liability on "any person," not

just employers.  *Id.*; *see also Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366

(S.D.N.Y. 2012).  Accordingly, individuals may be found directly liable under these provisions, but this is true only for acts of retaliation in which the individuals "actually participate[d]." *Malena*, 886 F. Supp. 2d at 366.  In addition, individuals may be found liable under a theory of aider-and-abettor liability, but only to the extent that direct liability is first established as to the principal.  *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 687-88 (S.D.N.Y. 2012) (citations omitted).

Here, as discussed above, Plaintiff cannot maintain claims under the NYSHRL or NYCHRL against the BOE or its officers because Plaintiff did not file a timely notice of claims as required by state law.  As to the non-school officers, Defendants Witzke, Cullen, Smith, Baranello, Busetti, Coleman, and Schlachet, Plaintiff can only maintain claims against these individuals to the extent they "actually participate[d]" in the alleged retaliatory conduct.  *Malena*, 886 F. Supp 2d at 366.  Plaintiff cannot maintain claims against them on an aider-and-abettor theory because, as discussed above, Plaintiff is not able to establish direct liability as to the principal actor—the BOE.  *Davis–Bell*, 851 F. Supp. 2d at 688.

The SAC alleges that Defendants Cullen and Witzke actually participated in retaliation following the 2018 Letter incident because it alleges that Cullen told Plaintiff's supervisors about the 2018 Letter, and that Witzke filed a complaint against Plaintiff as a result.  It also alleges Witzke created a hostile work environment during the 2017-2018 school year in retaliation for Plaintiff's past complaints.  The SAC additionally alleges that Defendant Witzke actually participated in retaliation by filing a complaint against Plaintiff to SCI in retaliation for Plaintiff's 2019 NYSED Complaint, that Defendants Coleman, Schlachet and Smith retaliated by

refusing to provide Plaintiff with whistleblower protection, and that Defendant Baranello obstructed Plaintiff from accessing information through the FOIL process.[13]

Accordingly, to the extent Plaintiff has asserted retaliation claims under the NYSHRL and NYCHRL, such claims should be limited to claims asserted against Defendants Witzke, Cullen, Coleman, Schlachet, Smith, and Baranello.

### g. Plaintiff's Defamation, CLS § 75-b, NYLL §§ 740 and 741, and FOIL-Related Claims are Time Barred as to All Defendants

Several of Plaintiff's state law causes of action are limited by a one-year statute of limitations. Specifically, a one-year statute of limitations applies to claims under New York state law for defamation, including libel and slander, *see* N.Y. C.P.L.R. § 215, and for claims brought pursuant to CLS § 75-b, *see Donas v. City of New York*, 62 A.D.3d 504, 505 (1st Dep't. 2009). Claims brought pursuant to NYLL §§ 740 and 741 were subject to a one-year statute of limitations at the time the Complaint was filed. The statutes were amended on January 26, 2022 to, inter alia, increase the limitations period to two years, however the amendments do not state that they should be applied retroactively, and "retroactive operation of statutes is not favored by" New York courts. *Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 144 (2d Cir. 2013) (citations omitted). Accordingly, the one-year limitations period applies to Plaintiff's NYLL §§ 740 and 741 claims as well. [14]

---

[13] As to Defendant Busetti, the SAC only alleges that she filed a response to Plaintiff's EEOC charge that included references to the allegedly defamatory and fraudulent OSI report about Plaintiff, but not that Busetti participated in any retaliatory acts against Plaintiff. (SAC ¶¶ 1197, 1359) Thus, no claim of retaliation is properly asserted against Busetti.

[14] The statute of limitations for state and local claims against the BOE and its officers is also one year. N.Y. Educ. Law § 3813(2-b).

Plaintiff initiated this proceeding on December 3, 2020.  (ECF No. 1.)  Thus, any claims

subject to a one-year statute of limitations must have accrued after December 3, 2019 to be

timely.[15]  Plaintiff has not alleged any facts that occurred after December 3, 2019 that would

give rise to claims for defamation or retaliation.  The SAC alleges Plaintiff received defamatory

letters as late as September 23, 2019, but it does not allege that she received any defamatory

letters after that date.  The SAC asserts that Defendants used portions of "false" reports made

against her in submissions to the EEOC in May, 2020.  (SAC ¶ 231.)  However, Defendants' EEOC

submissions cannot form the basis of a defamation claim, because statements made to the

EEOC are made "in the course of a . . . quasi-judicial proceeding" and are "under the protection

of absolute immunity."  *Bernstein*, 593 F. Supp. 2d at 636; *see also Allen*, 2001 WL 286788, at *6

(dismissing defamation claim based on submission to the EEOC); *Hinds v. Magna Fabrics, Inc.*,

1997 WL 309378, at *5 (S.D.N.Y. June 9, 1997) ("It is well settled in New York . . . that

statements made in quasi-judicial proceedings, including proceedings by agencies such as the

EEOC, are protected by an absolute privilege.").

Thus, Plaintiff's claims for defamation, including libel and slander, as well as her claims

pursuant to CLS § 75-b and NYLL §§ 740 and 741 should be dismissed against all Defendants as

time-barred.[16]

As to Plaintiff's claims regarding the allegedly deficient responses to her FOIL requests,

New York law provides a specific procedure for review of such claims: a person seeking review

---

[15] Plaintiff's EEOC filing does not toll the applicable statute of limitations because these claims do not include an exhaustion requirement and they were not raised in the EEOC charge.  *See Redman*, 2011 WL 5119574, at *4.

[16] Additionally, CLS § 75-b claims cannot be brought against individuals and thus should be dismissed against the Individual Defendants.  *Roddini v. City Univ. of N.Y.*, 2003 WL 435981, at *5 (S.D.N.Y. Feb. 21, 2003).

of a FOIL response must first file an appeal with the "head, chief executive, or governing body of" the entity or agency in possession of the documents, and "may then challenge the denial of the FOIL request on further appeal by commencing a proceeding under Article 78 of the New York Civil Practice Law and Rules." *Salahuddin v. N.Y.C. Dep't of Educ.*, 2016 WL 5477739, at *3 (S.D.N.Y. Sept. 29, 2016) (citing N.Y. Pub. Off. Law. § 89(4)). All Article 78 proceeding must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner. N.Y. C.P.L.R. § 217(1). Here, Plaintiff does not appear to have ever brought an Article 78 proceeding, but instead has improperly attempted to assert her FOIL claims for the first time in federal court. Because Plaintiff did not follow the necessary procedure, and because her time to do so has passed, claims challenging the FOIL responses should similarly be dismissed. *See Salahuddin*, 2016 WL 5477739, at *3; *see also Hayes v. Perotta*, 751 F. Supp. 2d 597, 602 (S.D.N.Y. 2010).

### h. Plaintiff's NYLL Minimum Wage and NYLL § 215 Claims Fail as a Matter of Law

Plaintiff purports to assert claims pursuant to NYLL § 651, which is the definition section of New York's Wage Law. NYLL § 652 provides for a minimum wage for employees in the State of New York and incorporates the definitions of Section 651. The Court construes the SAC as asserting a violation of Section 652. Plaintiff asserts that she was a DOE employee, and that DOE did not pay her the minimum wage. This claim fails because NYLL § 651 expressly excludes from the minimum wage law "those people employed 'by a federal, state or municipal government or political subdivision thereof.'" NYLL § 651(5)(n). It is well established that the DOE is a "political subdivision" of New York State. *See, e.g.*, *Rollins v. N.Y.C. Dep't of Educ.*, 2008 WL 2736018, at *7 (S.D.N.Y. July 8, 2008). Accordingly, NYLL's minimum wage law

(Section 652) does not apply to Plaintiff, and any claims for wage violations brought pursuant to the NYLL should be dismissed. *See, e.g.*, *Tongring v. Bronx Cmty. Coll. of City Univ. of N.Y. Sys.*, 2014 WL 463616, at *4 (S.D.N.Y. Feb. 4, 2014) (holding that Bronx Community College is a "political subdivision" of the City of New York and thus is exempt from the NYLL's wage requirements, and dismissing plaintiff's claims for wage violations under the NYLL); *Wetzel v. Town of Orangetown*, 2009 WL 690114, at *5 (S.D.N.Y. Mar. 16, 2009) (dismissing plaintiff's claim brought pursuant to NYLL's minimum wage law because plaintiff was employed by the Town of Orangetown, which is a municipal government, and therefore she was not covered by the wage and overtime requirements of the NYLL).

Defendants argue that Plaintiff's claims pursuant to NYLL §§ 215, 740, and 741 should fail for the same reason. (Def. Br. 18.) However, these sections do not have exemptions for "political subdivisions" such as the DOE. *See* NYLL § 215(c), 740, 751; *Humphreys v. N.Y.C. Health & Hosps. Corp.*, 2018 WL 3849836, at *6 (S.D.N.Y. Aug. 10, 2018) (explaining that New York City Health and Hospitals Corporation, which is a "political subdivision" within the meaning of NYLL § 651, is not exempt from liability for claims of retaliation under NYLL § 215). That said, as discussed above, Plaintiff's NYLL §§ 740 and 741 claims are time barred.

As to Plaintiff's NYLL § 215 claims, these fail for a different reason: the SAC has failed to state any such claims. NYLL § 215 provides in pertinent part that employers shall not discriminate or retaliate against any employee because such employee made a complaint "that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of [the NYLL]" or violates an order of the Commissioner of Labor. NYLL § 215(1). To state a claim of retaliation under NYLL § 215, a complaint must allege that "while

employed by the defendant," the plaintiff "made a complaint about the employer's violation of [the NYLL] and, as a result, was terminated or otherwise . . . discriminated against." *Copantitla v. Fiskardo Estiatorio Inc.*, 788 F. Supp. 2d 253, 302 (S.D.N.Y. 2011).

The SAC does not allege that Plaintiff made a complaint about a violation of the NYLL or an order of the Commissioner of Labor, nor that she was retaliated against for any such complaints. Rather, as discussed at length above, Plaintiff alleges she suffered retaliation based on her advocacy on behalf of special needs students. Such advocacy is not activity that is protected by NYLL § 215. Accordingly, Plaintiff's claims brought pursuant to NYLL § 215 should be dismissed. *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 100 (S.D.N.Y. 2020) (dismissing NYLL § 215 claims because the complaint did not allege that the plaintiff made a complaint about a violation of the NYLL or an order of the Commissioner of Labor); *Robledo v. No. 9 Parfume Leasehold*, 2013 WL 1718917, at *9 (S.D.N.Y. Apr. 9, 2013) (same).

Although Defendants did not argue that Plaintiff failed to state a claim under NYLL § 215, the Court may dismiss the claim sua sponte in light of the fact Plaintiff is given notice of the ground for dismissal by way of this Report and has an opportunity to be heard on the issue through any objection she submits to this Report. *E.A. Sween Co., Inc.*, 787 F. App'x at 782.

### i. Plaintiff Fails to State a Claim for Fraud

The SAC alleges that certain communications Plaintiff received from Defendants constitute fraud. Specifically, Plaintiff considers as fraudulent (1) the letter she received from Defendant Schlachet on May 30, 2019 informing her that she was not eligible for whistleblower protection; (2) the letter she received on June 27, 2019 from Defendant Smith stating her concerns were being addressed or had been addressed; (3) the July 10, 2019 Report by OSI

finding the complaint made against Plaintiff to be substantiated; and (4) statements Defendants made to the EEOC in May 2020. (SAC ¶¶ 1322-25.)

To state a claim for common law fraud in New York, a plaintiff must plead that the defendant "made a representation as to a material fact" that "was false" and was "intended to deceive" the plaintiff; that the plaintiff "believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct;" and "as a result of such reliance," the plaintiff "sustained pecuniary loss." *Stephenson v. PricewaterhouseCoopers, Ltd. Liab. P'ship*, 482 F. App'x 618, 622 (2d Cir. 2012) (citation omitted).

The SAC does not identify any course of conduct Plaintiff took as a result of her reliance on any statement, nor does it allege any pecuniary loss suffered as a result of Plaintiff's reliance on any false statement. Instead, the SAC asserts that various Individual Defendants made false statements about her to SCI and OSI investigators, and that those statements made their way into communications addressed to her. Plaintiff alleges that one letter from Defendant Smith included "improper legal advice," but not that Plaintiff relied on or followed the advice. (SAC ¶¶ 1547-59.) To the contrary, the SAC asserts that Plaintiff did not follow the advice, but rather informed Defendant Smith that his letter was inaccurate. (*Id.* ¶¶ 1560-63.) Such allegations do not give rise to claims for fraud. *Cummings*, 2020 WL 882335, at *13-14 (finding complaint did not state a claim for fraud based on statements the defendants made to OSI); *Karupaiyan v. Experis IT*, 2022 WL 4280529, at *4 (S.D.N.Y. Sept. 15, 2022) (Schofield, J.) (dismissing fraud claim on Rule 12(b)(6) motion because the complaint did not allege that the plaintiff relied on the alleged misrepresentations).

Although Defendants did not argue that Plaintiff failed to state a claim for fraud, the court may dismiss the claim sua sponte because Plaintiff is given notice of the ground for dismissal by way of this Report and will have an opportunity to be heard on the issue through any objection she submits to this Report. *E.A. Sween Co., Inc.*, 787 F. App'x at 782. Therefore, Plaintiff's fraud claims should be dismissed for failure to state a claim.

**CONCLUSION**

I respectfully recommend that the SAC be dismissed in its entirety for failure to comply with Rule 8. In the alternative, I respectfully recommend that all of Plaintiff's claims be dismissed with prejudice under Rule 12(b)(6) except for: (1) her claims of retaliation under Title II and V of the ADA and Section 504 of the Rehabilitation Act against the BOE for incidents of alleged retaliation that occurred on or after December 3, 2017; and (2) her claims of retaliation under the NYSHRL and NYCHRL against Defendants Witzke, Cullen, Coleman, Schlachet, Smith, and Baranello for incidents of alleged retaliation in which those individuals participated.

Dated: New York, New York
     January 6, 2023                 Respectfully Submitted,

                              _Katharine H. Parker_
                              KATHARINE H. PARKER
                              United States Magistrate Judge

**NOTICE**

**Defendants shall have fourteen days from this date, and Plaintiff shall have seventeen days from this date, to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).**

**If Defendants file written objections to this Report and Recommendation, Plaintiff may respond to Defendants' objections within seventeen days after being served with a copy.**

Fed. R. Civ. P. 72(b)(2). If Plaintiff files written objections, Defendants may respond to such objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2); *see* also Fed. R. Civ. P. 6(a), (d).

Objections and responses to objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Lorna Schofield at 40 Foley Square New York, NY 10007-1312, to the chambers of the undersigned magistrate judge, and to any opposing parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any request for an extension of time to file objections must be directed to Judge Schofield.  Failure to file timely objections will result in a waiver of those objections for purposes of appeal.  *See* 28 U.S.C.§ 636(b)(1); Fed. R.Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).